# EXHIBIT D

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LEBANON CHIROPRACTIC CLINIC, P.C.,
individually and on behalf of all others
similarly situated,

        Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA, and
SAFECO INSURANCE COMPANY OF
ILLINOIS,

        Defendants.

No. 14-L-521



FILED
ST. CLAIR COUNTY

JUN 2 5 2014

CIRCUIT CLERK
67

## CLASS ACTION COMPLAINT

Plaintiff Lebanon Chiropractic Clinic, P.C., individually and on behalf of all others similarly situated, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its attorneys, alleges:

### Nature of Action

1. This is a case about a scheme by Liberty Mutual and its group of Liberty Mutual insurance companies, including the Safeco companies (collectively "Liberty Mutual"), to mislead and improperly reduce payments to medical providers under its medical payments ("Medpay") coverage by using biased third-party bill audit software programs.

2. Under its property and casualty policies (the "Policies"), Liberty Mutual promises to pay all reasonable expenses incurred for necessary medical treatment

related to covered accidents. Liberty Mutual, however, systematically reduces its payments by "re-pricing" the submitted bills arbitrarily using biased computer software.

## Jurisdiction & Venue

3.     Jurisdiction is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209(a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(a)(1), (a)(7), (b)(4) and (c).

4.     Venue is proper in this County pursuant to 735 ILCS 5/2-102 because all or a substantial part of the transaction occurred in St. Clair County, Illinois, and under Section 10a(b) of the Illinois Consumer Fraud and Deceptive Business Practices Act, as Defendants are doing business in this County.  815 ILCS 505/10a(b).

## Parties

5.   - Plaintiff.  Plaintiff Lebanon Chiropractic Clinic, P.C. is an Illinois professional corporation owed by Dale Fischer, D.C., which operates in St. Clair County. At all times relevant hereto, Plaintiff was an assignee and/or third-party beneficiary of a Liberty Mutual Policy under which covered Medpay claims were made.

6.     Defendants.  Defendants consist of the following:

      a.  Defendant Liberty Mutual Insurance Company is a mutual insurance company organized under the laws of Massachusetts in 1912, with its principal place of business in Boston, Massachusetts. At all times relevant hereto, Liberty Mutual was licensed to write insurance in every state and in the District of Columbia.

No.                                             Page 2 of 18

b. Defendant Liberty Mutual Fire Insurance Company is a mutual insurance company organized under the laws of Massachusetts in 1908, with its principal place of business in Boston, Massachusetts. At all times relevant hereto, Liberty Fire was licensed to write insurance in every state and in the District of Columbia. Liberty Fire is.

c. Safeco Insurance Company of America is a Washington corporation doing business in St. Clair County, Illinois and throughout the United States.

d. Safeco Insurance Company of Illinois is an Illinois corporation doing business in St. Clair County, Illinois and throughout the United States.

7. Defendant Safeco Insurance Company of America carries out all of the activities for the Safeco companies including, but not limited to, adjusting and paying all losses under Safeco policies. Through an intercompany reinsurance agreement, Safeco Insurance Company of America intermingles funds of the companies, acts on behalf of the other Safeco companies during the claims process, and distributes costs to the Safeco companies on a pro-rata basis. In fact, the explanations of review ("EORs") often state "SAFECO AUTO."

8. In 2008, the Safeco companies became part of the Liberty Mutual companies. In fact, the Safeco companies use the trade name Safeco Insurance, which is identified as "A Liberty Mutual Company."

9. Each of the Liberty Mutual Group companies, including Defendants herein, does business as "Liberty" or "Liberty Mutual," an association-in-fact in which

No.

each defendant participates, which formed a single enterprise with responsibility for the wrongdoing alleged herein.  Liberty Mutual's activities, including its claims adjusting and bill payment functions, are standardized and implemented for all Liberty-Mutual entities.

### Background

10.    Liberty Mutual has issued substantially similar Policies throughout the Class period.  Liberty Mutual's Policies contain uniform Medpay language obligating Liberty Mutual to pay all "usual and customary expenses," "usual and customary charges," and/or "reasonable charges" incurred for necessary medical services.

11.    Thousands of Liberty Mutual insureds have been injured in covered occurrences and incurred usual, customary and reasonable expenses for necessary medical treatment from licensed medical providers.

12.    Despite Liberty Mutual's uniform promise to pay all "reasonable expenses" to or on behalf of its insureds, Liberty Mutual has:

(a)    "re-priced" Medpay claims to pre-determined percentiles;

(b)    used a third party's biased computer software to reduce payments;

(c)    treated Medpay claims as adverse, third-party claims; and

(d)    used computer software as a subterfuge to reduce overall first-party Medpay claim payments.

13.    As part of its re-pricing scheme, Liberty Mutual required Class Members to submit claims using standardized forms and standardized coding (*e.g.*, a five-digit Current Procedural Terminology ("CPT") code) that would make the claims suitable for computer re-pricing.

No.

14. To implement its Medpay claims reduction scheme, Liberty Mutual used various software vendors, including Intracorp and Concentra. The software vendors used Ingenix MDR fee modules to re-price bills submitted by the class members.

15. Ingenix used a conversion factor time's relative value calculation methodology. A relative value was calculated for each CPT code, and a dollar value "conversion factor" was calculated for each zip-3 area. The insurance company (i.e., Liberty Mutual) then selected a "percentile"—which capped a charge for a particular CPT code to a theoretical amount equivalent to the selected percentile of local providers. Ingenix then supplied its customers with the modules or "fee schedules" based on the various percentiles.

16. By 2009, UnitedHealth Group Inc. (the parent company of Ingenix) had reached an agreement with the New York Attorney General to dismantle the Ingenix database.

17. In 2011, Liberty Mutual started using FAIR Health to analyze medical bills.

18. When Liberty Mutual used the computer software to review medical bills, it never compared the billed charges of the Class Members to actual, comparable provider charges from the same market.

19. Liberty Mutual unilaterally limited the amount of payment to Plaintiff (as it did to every Class Member) to a cap generated by the computer software, which as designed enabled Liberty Mutual to limit medical payments to a predetermined, maximum percentile.

20. Liberty Mutual reduced submitted medical bills to a pre-set percentile even though the charges were the usual medical charges that the medical providers charged their patients, visit after visit, on a customary basis.

No. Page 5 of 18

21. The re-pricing software was specifically designed to save Liberty Mutual money by reducing the amount of benefits paid under Liberty Mutual insurance policies, and by consistently generating computer reports (*i.e.*, EORs or Explanations of Review) that regularly recommend partial payment of submitted claims.

22. This retroactive, systematic reduction was never disclosed to Plaintiff or other Class Members in Liberty Mutual's Policies. Liberty Mutual has never disclosed that any claim for medical payments under a Liberty Mutual Policy may not exceed previously established mathematical limits for reasonable medical expenses, or fall outside pre-determined parameters or "rules" for necessary medical services.

23. To give the appearance of legitimacy, Liberty Mutual sent an EOR that set forth the "Charge" and "Reduction" along with particular codes identifying the purported basis for reduced payment.

24. The computer software consistently produced EORs that recommended partial reductions to Medpay claims within policy limits.

25. While Liberty Mutual used these biased computer reports as ostensible support for its position that covered medical expense claims were not usual, customary or reasonable, in reality the reports had no connection to what was UCR, but were designed solely to reduce payouts and increase Liberty Mutual's profit margins.

26. Liberty Mutual manufactured this bogus support so that the Class members would either: (1) not challenge Liberty Mutual's UCR; or (2) challenge Liberty Mutual's amount but then compromise the challenge (*i.e.*, accepting payment for an amount greater than Liberty Mutual's amount, but less than the submitted bills), all the while unaware the Liberty Mutual's conduct was unfair, biased and certainly not independent in the first place.

No.

27. The amount by which Liberty Mutual reduces individual claims is sufficiently low — usually by less than $1,000 per claim — that there is no incentive for individuals to pursue action against Liberty Mutual, making a class action the only meaningful means of seeking relief.

28. As a result of Liberty Mutual's uniform reduction of Medpay claims as unreasonable, Plaintiff and the Class have been damaged and Liberty Mutual has saved millions of dollars on claims that should have been fully paid under the express terms of the policies under which they were insured.

### Facts as to Plaintiff

29. Plaintiff is a professional corporation owned by Dr. Dale Fischer, a doctor of chiropractic medicine licensed to practice in Illinois.

30. At all times relevant hereto, Plaintiff was an assignee of his patients' rights under the Medpay benefits of their Liberty Mutual Policies.

31. Plaintiff provided Liberty Mutual insureds with healthcare services.

32. Liberty Mutual did not dispute Medpay coverage for the healthcare services.

33. Liberty Mutual did not dispute that Plaintiff was a valid assignee.

34. In response to particular charges by Plaintiff, Liberty Mutual sent Plaintiff partial payment along with an EOR, which stated "UCR80."

35. According to the EOR, UCR80 means that Plaintiff was "Reimbursed according to UCR 80th percentile data."

36. Other EORs state "*Unless otherwise noted, all bill review reductions are due to charges exceeding amounts that would appear reasonable for the provider's geographical region."

No.

37. Notwithstanding its obligation to pay all "reasonable expenses" incurred for necessary medical treatment for its insureds, Liberty Mutual reduced several payments to Plaintiff pursuant to its computerized re-pricing scheme. For example, Liberty Mutual reduced payment to Plaintiff on the following dates by the following amounts:

| 12/11/03 | $26.14 |
| 2/2/04 | $11.11 |
| 8/20/05 | $19.72 |
| 8/17/07 | $64.05 |
| 10/2/09 | $22.45 |
| 10/2/09 | $22.45 |
| 11/5/09 | $22.45 |
| 11/5/09 | $22.45 |
| 12/3/09 | $22.45 |
| 12/3/09 | $22.45 |
| 12/31/09 | $10.77 |
| 1/4/10 | $22.87 |
| 1/4/10 | $22.87 |

To Plaintiff's knowledge, Liberty Mutual reduced payments to Plaintiff by at least $312.23.

### Class Action Allegations

38. This action is brought pursuant to 735 ILCS 5/2-801 *et seq.*, and satisfies the prerequisites set forth therein.

39. Plaintiff brings this action individually and on behalf of the following class (the "Class"):

> All insured persons and licensed medical providers who: (a) submitted first-party medical claims to a Liberty Mutual member company pursuant to a Liberty Mutual Policy; (b) had their claim submitted to computer review, (c) received or were tendered an amount less than the submitted medical expenses based upon a "reasonable" or "UCR" reduction, and (d) received or were tendered an amount less than the stated policy limits

No.

Excluded from the Class are persons whose claims were referred to Liberty Mutual's Special Investigative Unit and were found fraudulent. Also excluded from the Class are: (1) claims based on reductions pursuant to state-mandated fee schedules; (2) statutory fraud claims by persons who reside in the following states (because these state statutes expressly exclude insurance transactions from statutory coverage): Alabama, Alaska, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Missouri, New Hampshire, Rhode Island, South Carolina, Utah, Vermont, Virginia and Wisconsin; (3) claims for amounts that were denied because the submitted bills were duplicate bills, were not related to a covered occurrence, the treatment took place prior to the date of occurrence, or the claim contained coding errors; (4) members of the Illinois state judiciary, and (5) Liberty Mutual and any entity in which it has a controlling interest, including officers and directors and the members of their immediate families.

40. The members of the Class, being geographically dispersed and believed to number in the thousands, are so numerous that joinder of them in a single action is impracticable.

41. There are questions of law and fact that are common to all class members, including *inter alia*:

> (a). Whether Liberty Mutual unilaterally re-priced, or re-valued, medical expense claims to a set percentile without disclosing this practice in its insurance policies;
>
> (b) Whether Liberty Mutual's Policies impose an obligation to pay reasonable expenses for necessary medical treatment;
>
> (c) Whether Liberty Mutual's conduct in processing and adjusting medical expense claims, as alleged, constitutes an unfair or deceptive practice;

No.                                          Page 9 of 18

(d) Whether Liberty Mutual's practice of retroactively reducing already incurred medical treatment and expense claims constitutes an unfair or deceptive practice;

(e) Whether Liberty Mutual breached its contract;

(f) Whether Liberty Mutual's conduct constitutes statutory fraud; and

(g) Whether Liberty Mutual has unjustly enriched itself at the expense of Class Members;

(h) Whether Plaintiff and the Class have been damaged, and if so, in what amount.

42. Plaintiff and proposed Class Counsel (SL Chapman LLC) can and will fairly and adequately represent and protect the interests of the Class.

43. The claims of Plaintiff are substantially similar, if not identical to, those of absent Class Members.

44. There are questions of law or fact that are common to the Class and that predominate over any individual issues.

45. Without the Class representation provided by Plaintiff, virtually no Class Members will receive legal representation or redress for their injuries.

46. Plaintiff and Class Counsel have the necessary financial resources to adequately and vigorously litigate this class action.

47. A class action is appropriate, if not superior, to any other available method for the fair and efficient adjudication of this controversy, given that:

(a) Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

No.

(b)   The size of each Class member's relatively small claim is too insignificant to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c)   Few Class members have any interest in individually controlling the prosecution of separate actions (any that do may opt out);

(d)   Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members;

(e)   Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this class action to be litigated on a cost-effective basis, especially when compared with repetitive individual litigations; and

(f)   No unusual difficulties are likely to be encountered in the management of this class action insofar as Defendant's liability turns on substantial questions of law or fact that are common to the Class and that predominate over any individual questions.

### Tolling of Statute of Limitations

48.   Throughout the Class period, Liberty Mutual affirmatively concealed from Plaintiff and other Class Members the foregoing wrongful scheme to reduce the amounts Liberty Mutual would pay on medical expense claims as provided in the Policies it issued.

49.   Liberty Mutual had a duty to inform claimants that their Medpay claims would be subject to the determination of claims evaluation software that undisclosed ceilings in benefits were being imposed, and that payments would be automatically capped and limited thereby. Notwithstanding its duty to Plaintiff and other Class Members, Liberty Mutual never disclosed its medical expense claims reduction scheme.

50.   Despite exercising reasonable diligence, Plaintiff and other Class Members

No.

could not have earlier discovered Liberty Mutual's wrongful scheme to reduce Medpay claims.

51. The running of the statute of limitations has been suspended with respect to any claims that Plaintiff or the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein. Liberty Mutual, through various devices of secrecy; affirmatively and fraudulently concealed its unlawful scheme and course of conduct from Plaintiff and the other members of the Class. Plaintiff and the Class were unable to earlier discover Liberty Mutual's scheme and unlawful conduct, or any of the facts which might have led to the discovery of its wrongdoing, with the exercise of due diligence.

52. Liberty Mutual is estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent concealment and by selling insurance policies under which it did not intend to perform. Liberty Mutual has actively concealed the conduct alleged herein by, inter alia, suppressing disclosure of this information through confidentiality agreements negotiated with third party vendors and by not disclosing in its insurance policies any of the conduct alleged herein.

53. In addition, any statutes of limitations were tolled by *Bernis v. Safeco Insurance Company of America et al.*, No. 05-L-0152 (Madison County, Illinois), and *Shipley v. American States Insurance Company of America et al.*, No. 03-L-0246 (Madison County, Illinois).

### COUNT I
#### (BREACH OF CONTRACT)

54. <mark>Plaintiff re-alleges the general allegations as if fully stated herein.</mark>

No.

55. Liberty Mutual's Policies required Liberty Mutual to pay the usual, customary, and/or reasonable expenses for the medical services provided.

56. At all times, Plaintiff and Class Members complied with and performed all material obligations owed under the Liberty Mutual Policies.

57. Liberty Mutual breached its Policies by arbitrarily refusing to pay portions of Plaintiff's and Class Members' Medpay charges purportedly due to "UCR80" or other "reasonableness" codes.

58. As a result of the foregoing breach, Plaintiff and the Class were damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, pray for an Order of this Court as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and SL Chapman LLC as Class counsel;

C. Entering final judgment in favor of Plaintiff and the Class and against Defendants;

D. Awarding Plaintiff and the Class their damages, reasonable attorneys' fees and costs, including interest thereon; and

E. Granting such further relief as the Court deems just.

## COUNT II
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.) and the Substantially Similar Laws of Other States)

No.

59. Plaintiff re-alleges the general allegations as if fully stated herein.

60. At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. and substantially similar state consumer protection statutes (collectively, "Consumer Fraud Acts"). The claims of Illinois class members (such as Plaintiff) are brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. The claims of nonresident class members are brought under the consumer protection statute(s) of their respective states of residence, which are incorporated by reference herein, excluding those states identified in paragraph 31 (collectively, the "Consumer Fraud Acts").[1]

61. Under the Consumer Fraud Acts, the use or employment of any practice described in, for example, Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2) in the conduct of any trade or commerce is unlawful whether any person has in fact been misled, deceived or damaged thereby.

62. Plaintiff and the Class are consumers within the meaning of Consumer Fraud Acts given that Defendants' business activities with them involve trade or

---

[1] The claims of Illinois insureds (such as Plaintiff) are brought under the Illinois Consumer Fraud Act. The claims of non-Illinois insureds are brought under the consumer protection statute(s) of their respective states. See Ariz. Rev. Stat. Ann. § 44-1521 et seq. (Arizona); Ark. Code Ann. § 4-88-101 et seq. (Arkansas); Cal. Bus. & Prof. Code § 17200 et seq., and Cal. Bus. & Prof. Code § 17500 et seq. (California); Colo. Rev. Stat. § 6-1-105 et seq. (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 et seq. (Delaware); D.C. Code Ann. § 28-3901 et seq. (District of Columbia); Haw. Rev. Stat. § 481A-1 et seq. and Haw. Rev. Stat. § 480-1 et seq. (Hawaii); Ky. Rev. Stat. § 367.110 et seq. (Kentucky); Mass Gen. L. Ch. 93A, § 1 et seq. (Massachusetts); Mich. Stat. Ann § 445.901 et seq., Mich. Stat. Ann. § 19.418(1) et seq. (Michigan); Minn. Stat. § 325F.68 et seq., Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 et seq. (Mississippi); Mont. Code Ann. § 30-14-101 et seq. (Montana); Neb. Rev. Stat. § 59-1601 et seq. (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 et seq. (Nevada); N.J. Rev. Stat. § 56:8-1 et seq., N.J. Rev. Stat. § 56:12-1 et seq. (New Jersey); N.M. Stat. Ann. § 57-12-1 et seq. (New Mexico); N.Y. Gen. Bus. Law. § 349 et seq. (New York); N.C. Gen. Stat. § 75-1 et seq. (North Carolina); N. D. Cent. Code § 51-15-01 et seq. (North Dakota); Ohio Rev. Code Ann. § 1345.01 et seq. (Ohio); Okla. Stat. Tit. 15, § 751 et seq. (Oklahoma); Ore. Rev. Stat. § 646.605 et seq. (Oregon); Penn. Stat. § 201-1 et seq. (Pennsylvania); S.D. Codified Laws Ann. § 37-24-1 et seq. (South Dakota); Tenn. Code Ann. § 47-18-101 et seq. (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41 et seq. (Texas); Wash. Rev. Code § 19.86.010 et seq. (Washington); W. Va. Code § 46A-6-101 et seq. (West Virginia); and Wyo. Stat. § 40-12-101 et seq. (Wyoming).

commerce and are addressed to the market generally and/or otherwise implicate consumer protection concerns.

63. Defendants have committed unfair or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, the regular and systematic denial or reduction of claims for payment of covered medical expenses as described herein.

64. Defendants misrepresented, concealed, suppressed or omitted the material fact of and the reasons for such denials or reductions (i.e., because they exceeded limitations arbitrarily set by Defendants but not contained in the Policies themselves) with intent that Plaintiff and the Class so rely.

65. As a direct and proximate result of the foregoing deceptive acts and practices of Liberty Mutual, Plaintiff and the Class were damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, prays for an Order of this Court as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and SL Chapman LLC as Class counsel;

C. Entering final judgment in favor of Plaintiff and the Class and against Defendants;

D. Awarding Plaintiff and the Class their damages, reasonable attorneys' fees and costs, including interest thereon; and

No.                                                                    Page 15 of 18

E.    Granting such further relief as the Court deems just.

## COUNT III
### (Unjust Enrichment)

66.   This Count is brought based on the tortious allegations made generally herein, including those contained in Count II, supra.

67.   As a result of Defendants' acts and omissions alleged herein, Defendants have unjustly received and retained a benefit to the detriment of Plaintiff and the Class, and Defendants' retention of this benefit violates fundamental principles of justice, equity, and good conscience.  The specific sum of money unlawfully received and retained is readily identifiable from information and records in Defendants' possession or control.

68.   Plaintiff and other Class members, therefore, are entitled to the return of all such amounts owed them, plus statutory interest from the date such amounts were unlawfully received and retained, statutory interest on said amounts from the date the right to payment was acquired by Plaintiff and other members of the Class.

69.   As a direct and proximate result of Liberty Mutual's unjust enrichment, Plaintiff and Class members have suffered injury and seek relief restoring them to the positions they would be in had Liberty Mutual not been unjustly enriched, consistent with the limitations set forth infra.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, prays for an Order of this Court as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

No.                                                                 Page 16 of 18

B.  Designating Plaintiff as representative of the Class and SL Chapman LLC as Class counsel;

C.  Entering final judgment in favor of Plaintiff and the Class and against Defendants;

D.  Awarding Plaintiff and the Class equitable relief, including but not limited to the return of monies wrongfully obtained by Defendants; and

E.  Granting such further relief as the Court deems just.

## COUNT IV
### (Declaratory Relief)

70.  Plaintiff incorporates the general allegations as if fully stated herein.

71.  There is an actual controversy regarding the meaning, use, purpose, and implementation of the Policy language "usual and customary" and/or "reasonable" charges.

72.  Pursuant to 735 ILCS 5/2-701 and 735 ILCS 5/2-802(b), Plaintiff and the Class seek a declaration regarding the Liberty Mutual's Policy language and practices.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, prays for an Order of this Court as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B.  Designating Plaintiff as representative of the Class and SL Chapman LLC as Class counsel;

No.

C. Entering final judgment in favor of Plaintiff and the Class and against Defendants;

D. Awarding Plaintiff and the Class equitable relief, including but not limited to the return of monies wrongfully obtained by Defendants; and

E. Granting such further relief as the Court deems just.

DATED: June 25, 2014

Respectfully submitted,

LEBANON CHIROPRACTIC CLINIC, P.C.,
Class Plaintiff,

By: _____
Robert W. Schmieder II #6239631
Bradley M. Lakin #6243318
SL CHAPMAN LLC
330 North Fourth Street, Suite 330
St. Louis, MO 63102
Ph. 314.588.9300

Attorneys for Plaintiff
and Proposed Plaintiff Class

No.