# EXHIBIT E

NOTICE

Decision filed 02/09/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150111-U

NO. 5-15-0111

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| LEBANON CHIROPRACTIC CLINIC, P.C., Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, ) ) | |
| v. ) ) | No. 14-L-521 |
| LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, and SAFECO INSURANCE COMPANY OF ILLINOIS, ) ) ) ) ) ) ) | |
| Defendants-Appellees ) ) | Honorable Vincent J. Lopinot, |
| (DR. DAVID KERBS, Objector-Appellant). ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Schwarm and Justice Moore concurred in the judgment.

## ORDER

¶ 1    *Held*: The circuit court had jurisdiction to approve the nationwide class settlement. The court did not abuse its discretion in certifying the settlement class, which included health care providers located in the State of Washington, and finding that the proposed settlement was fair, reasonable, and adequate.

¶ 2    The plaintiff, Lebanon Chiropractic Clinic (Lebanon), filed a class action complaint against the defendants, Liberty Mutual Insurance Company (Liberty), and its subsidiary, Safeco Insurance Company (Safeco), challenging the method as to how the defendants have determined the amounts payable for treatments covered by Medical Payment (MedPay) and Personal Injury Protection (PIP) coverage under personal automobile insurance policies. Thereafter, the parties entered into a nationwide class settlement. Dr. David Kerbs, a health care provider in the State of Washington, filed an objection to the class settlement, asking the trial court to deny approval of the settlement or, in the alternative, to exclude all Washington providers, on the basis that the Lebanon settlement conflicted with a prior class settlement in *Kerbs v. Safeco*, a Washington class action case in which Kerbs was the class representative. After conducting an approval hearing on the class settlement, the trial court entered a final order approving the settlement. For the reasons which follow, we affirm the decision of the circuit court.

¶ 3    Liberty issues automobile policies with MedPay or PIP coverage, forms of no-fault automobile-insurance coverage, which promises to pay "reasonable expenses" to treat an insured's injuries caused by an accident. "Reasonable expenses" are defined as follows: the actual charge of the treatment; the charge negotiated with the provider; or the charge determined by the insurance company based on a methodology using a computerized database designed to reflect amounts charged by providers of medical services within the same or similar geographic region.

¶ 4    This appeal concerns the insurers' use of computerized databases to reduce medical bills submitted by health care providers. The computer databases operated as

2

follows. Providers were required to submit claims using standardized forms and standardized coding. A third-party bill reviewer would then compare the submitted medical bills against the computerized database to determine the usual, customary, and reasonable (UCR) charge for the medical treatment. The database generated a predetermined percentile benchmark for specific treatments in defined geographical areas and capped a charge to an amount equivalent to the selected percentile. As an example, the 80th percentile benchmark means that the computerized database has determined that 80% of the charges for a given treatment in the relevant geographic area are likely to fall at or below that amount. After conducting this computerized review of the medical bill, the defendants would then send an explanation of review that sets forth the charge, the reduction, and the basis for the reduced payment to the providers.

¶ 5    For several years, the defendants used the health care industry's database of choice, the Ingenix database. However, following an investigation by the New York Attorney General into allegations that the Ingenix database had been improperly manipulated, a new database, the FAIR Health database, was funded. In 2011, the defendants switched to the FAIR Health database to analyze medical bills.

¶ 6    There has been extensive litigation over the reasonableness of insurers' MedPay and PIP reimbursement reductions in Illinois and in other states. In 2003, class counsel initiated a class action lawsuit against Liberty for improper reductions on medical bills. Thereafter, class counsel became co-counsel in *Froeber v. Liberty Mutual Insurance Co.*, 193 P.3d 999 (Or. Ct. App. 2008), a similar case pending in Oregon state court. Although the Oregon circuit court had denied class certification in the case, the parties

3

later agreed to settle the action between defendants and a proposed nationwide settlement class. *Id.* at 1001. In the settlement, the class members, who submitted a valid claim, received 25% of the UCR reductions taken by Liberty. *Id.* at 1002. In exchange, plaintiffs, on behalf of themselves and members of the proposed settlement class, agreed to release defendants from all claims arising from payment or reimbursement of the costs of covered treatment under the PIP and/or MedPay coverage. *Id.* The circuit court approved the settlement as fair, which was affirmed by the Oregon Court of Appeals. *Id.* at 1001.

¶ 7  In 2005, a similar class action suit was filed against Safeco, alleging that Safeco had breached its contractual obligation to pay the UCR charge for reasonable and necessary services by making these reductions. *Bemis v. Safeco Insurance of America*, 407 Ill. App. 3d 1164, 1165 (2011). The trial court entered an order certifying the class. *Id.* at 1166. However, the granting of class certification was reversed by this court on the basis that the commonality requirement for maintenance of class certification was not met. *Id.* at 1169. In particular, this court found that evidence would be required on an individualized basis to determine whether Safeco breached its' contract to pay the usual and customary charge for reasonable and necessary medical services for each class member. *Id.* at 1168-69.

¶ 8  In 2008, Safeco became part of Liberty. Thereafter, Lebanon filed the present class action, which was a continuation of the previous *Safeco* litigation. The four-count class action complaint alleged that Liberty and Safeco had engaged in the systematic

reduction in payments for treatments covered under MedPay and PIP coverage even though the submitted charges were the usual and customary medical charges.

¶ 9     The complaint alleged the following causes of action against the defendants: (1) breach of contract, based on the allegation that the defendants breached their insurance policies, which required them to pay the UCR expenses for the medical services provided; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 2014)) and substantially similar laws of other states, based on the allegations that the defendants had committed unfair or deceptive acts by engaging in the acts and practices alleged in the complaint including, but not limited to, the regular and systematic denial or reduction of claims for payment of covered medical expenses and misrepresenting, concealing, suppressing, or omitting the material fact of and the reasons for such denials or reductions in medical payments; and (3) unjust enrichment, based on the allegation that the defendants had unjustly received and retained a benefit as a result of their acts and omissions to the detriment of Lebanon and the potential class members.

¶ 10     During the previously filed Safeco class action, the parties had engaged in settlement negotiations.  After Lebanon filed the present complaint, the parties reengaged in those discussions and were successful on reaching a settlement.  The pertinent terms of the settlement were as follows: (1) participating class members would receive 50% of the past UCR reductions upon submission of a valid claim form; (2) Liberty agreed to handle the payment of MedPay benefits for the next five years in a clear, transparent manner; (3) with regard to future claims, Liberty agreed to implement certain measures, such as the

continued use of the FAIR Health database to determine the UCR charges, the use of at least the 80th percentile for the covered treatment in the geographical area of the provider's location for a period of five years, and specifically identified written disclosures about these measures to its insureds; (4) Liberty agreed to pay the costs of notice and claims administration estimated at $1,300,000, class representative incentive awards in the amount of $3,000, and class counsel's attorney fees and expenses in the amount of $1,200,000; and (5) Lebanon waived any future claim challenging Liberty's reduction of provider bills in accordance with the agreement.

¶ 11 On October 31, 2014, the trial court held a preliminary approval hearing to consider the settlement. That same day, the court entered a written order, preliminarily approving the proposed settlement, finding it fair, reasonable, adequate and in the best interests of the class members. The court ordered that class members receive notice by first-class mail, approved the form of notice, approved the claim form, required that a toll-free phone number and website be established so that class members had access to pertinent information, and required certain steps to "ensure that these mailings provide the best notice practicable under the circumstances."

¶ 12 On December 22, 2014, the settlement administrator disseminated notice to the 2,953,505 potential class members. On January 21, 2015, Kerbs filed an objection to the proposed class settlement, asking the trial court to deny approval of the settlement or, in the alternative, to exclude all Washington providers from the settlement. The primary basis for this objection was that the proposed class action settlement conflicted with a prior class settlement in *Kerbs*. Liberty was not a party in that case.

6

¶ 13 *Kerbs* is a class action case filed in Washington against Safeco where the allegations were very similar to those in the current action, namely: that the use of computerized databases to determine whether a medical provider's charges were reasonable is improper. The complaint sought class certification for 3,500 Washington health care providers who had their bills reduced by Safeco using a computerized database. The case settled in 2012. The settlement provided, *inter alia*, that for five years after its effective date, Safeco would continue using the FAIR Health database to determine UCR charges for treatment covered by PIP benefits in Washington and that Safeco would use the 85th percentile for covered treatment. The settlement further provided that Safeco's payment of future claims in accordance with the settlement agreement did not, in and of itself, breach any duty under any applicable law or contract requiring Safeco to pay or reimburse UCR charges for covered treatment and also included a release of these claims. However, the agreement did not preclude any member from the settlement class from asserting an action on the basis that Safeco has breached the agreement by failing to pay future claims in accordance with the agreement or on the basis that Safeco's payment of a future claim in accordance with the agreement, while neither unfair, deceptive, nor unlawful in and of itself, resulted in a particular payment in a particular instance that was less than the UCR charge for a covered treatment and/or breached a duty under any applicable law or contract requiring Safeco to pay or reimburse the UCR charge for covered treatment.

¶ 14 Kerbs's objection filed in the present case argued as follows. First, the objection argued that the trial court lacked jurisdiction to approve the proposed settlement in that

there was no connection between the claims of the Washington health care providers and Illinois. Next, the objection contended that the proposed settlement conflicted with the *Kerbs* settlement and therefore diminished the rights and benefits obtained by Washington providers in that settlement. Specifically, the objection identified the following conflicts between the two settlements: (1) the *Kerbs* settlement provided that Safeco would pay Washington providers at the 85th percentile where the Lebanon settlement provided for payment at the 80th percentile; (2) the *Kerbs* settlement did not waive any future claims concerning reductions in medical provider payments that are based on the FAIR Health database where the Lebanon proposed settlement waived future claims relating to the FAIR Health database from 2014 until 2019; (3) unlike the Lebanon proposed settlement, the *Kerbs* settlement did not waive any future claims relating to Safeco's practice of using the 85th percentile of the FAIR Health database; and (4) unlike the Lebanon proposed settlement, the Washington providers' reimbursement is not conditioned on their submitting a claim-reimbursement form.

¶ 15 In addition, the objection argued that the proposed settlement was unfair and inadequate for Washington providers in that the providers do not receive any payment of past reductions made using the Ingenix database because of the prior *Kerbs* settlement and that in any event, Washington providers would only receive 50% of the Ingenix database reductions and nothing for the FAIR Health database reductions. The objection also identified similar class action settlements where the defendant insurance companies had agreed to pay substantially more than 50% of past UCR reductions, where there was no waiver of future claims, and where reimbursement was not conditioned on the valid

submission of a claim form. The objection also argued that Lebanon was an inadequate representative of Washington providers in that it had a conflict of interest. Further, the objection argued that the future claims waiver was contrary to Washington public policy and Washington law, which required the payment of all reasonable and necessary medical expenses incurred as a result of a covered accident.

¶ 16 After Kerbs filed his objection in the trial court, he filed, on February 2, 2015, a substantively identical motion to reopen the *Kerbs* case in the Superior Court of King County, Washington. This motion sought an order from the Washington court enjoining the parties to this action, including Liberty, which was not a party in *Kerbs*, from seeking final approval of the settlement. The motion was brought to the attention of the trial court in this case, and it entered an order addressing Kerbs's Washington motion. The court noted that the primary argument in this court and the Washington court was that some of the relief requested by the settlement agreement in this case, if granted, conflicted with some of the relief previously ordered in the final judgment entered in *Kerbs*. The court disagreed that an alleged conflict existed between the two settlements and noted that the Lebanon settlement was intentionally drafted to ensure that there was no conflict between the relief requested in this case and the relief previously ordered in *Kerbs*. The court noted that the order was not intended to fully and finally resolve Kerbs's timely filed objections to the proposed settlement, recognizing that Kerbs had raised other objections that are unrelated to any alleged conflict. The court noted that it would consider those objections during the fairness hearing.

¶ 17   Furthermore, in an effort to ensure that no conflict existed between the Lebanon settlement and the *Kerbs* settlement, the court ordered the parties to submit a proposed final order that included specific language that the Lebanon settlement would not conflict in any way with the *Kerbs* settlement. The court indicated that it would not sign any final order lacking that language.

¶ 18   On February 17, 2015, a fairness hearing was held where the trial court heard evidence of testimony from Todd Hilsee, an expert in class notice issues, about the dissemination and adequacy of the class notice. In addition, the court reviewed affidavits, submissions, and objections, and heard arguments from those who attended. Kerbs did not attend the hearing. Thereafter, the court entered a final order and judgment approving settlement and dismissing the action with prejudice. The court found that the notice given was the best notice practicable under the circumstances, that it constituted valid, due, and sufficient notice to members of the settlement class, and that the parties had fully complied with the requirements of due process, the Illinois rules of civil procedure, and all other applicable laws. The court concluded that the proposed settlement was the result of good-faith, arms-length negotiations by the parties and that final approval of the proposed settlement would result in substantial savings in time and resources to the court and the litigants and would further the interests of justice. The court concluded that, for settlement purposes only, the settlement class met the four statutory prerequisites for the maintenance of a class action claim set forth by section 2-801 of the Code of Civil Procedure (735 ILCS 5/2-801 (West 2014)). In addition, the

10

court found that the proposed settlement was fair, reasonable, and adequate. Thus, the court entered a final order approving the class settlement. Kerbs appeals.

¶ 19    Initially, we have ordered taken with the case Kerbs's motion for supplemental citation to authority. In the motion, Kerbs is seeking to supplement the record on appeal with the following documents in accordance with Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006): (1) an excerpt of the transcript of an October 30, 2015, hearing in a Seattle, Washington, case called *Chan v. Safeco* (*Chan* transcript); and (2) a full transcript of the February 17, 2015, fairness hearing in this case (fairness hearing transcript). According to the motion, the circuit court in *Chan* had determined that the Lebanon class settlement cannot be applied to Washington providers and their claims for underpayment of their bills for the following reasons: (1) the Illinois court lacked subject matter jurisdiction to approve a nationwide class for consumer fraud or breach of contract in that there is no connection between Illinois and the insurers' acts and there is no evidence that the insurance policies were identical in every state; (2) Lebanon could not adequately represent Washington providers because it did not have any of the claims available under Washington law; (3) the Lebanon settlement was deficient in terms of the due process given to Washington providers; and (4) the Washington claims were undervalued in the Lebanon case given the disparity between the verdicts provided to provider classes under Washington law and the compensation Washington providers would receive under the Lebanon settlement.

¶ 20    In response, the appellees objected to the submission of the *Chan* transcript as procedurally improper. The appellees argue that Rule 329 applies to supplementation of

11

the appellate record with materials that were before the circuit court. The *Chan* transcript was not before the circuit court in this case and therefore cannot be made a part of the record on appeal. Therefore, the appellees argue that it appears that Kerbs intends the *Chan* transcript to be supplemental legal authority, akin to new case law issued after the briefing in this appeal has closed. The appellees contend that as legal authority, the cited views expressed in the *Chan* transcript are neither binding nor persuasive. The appellees do not object to the submission of the fairness hearing transcript.

¶ 21 First, we agree with the appellees that Kerbs's submission of the *Chan* transcript is procedurally improper under Rule 329 where Kerbs has not shown that the transcript was actually before the trial court. See *In re Estate of Albergo*, 275 Ill. App. 3d 439, 444 (1995) (Rule 329 allows supplementation of the record on appeal only with documents that were actually before the trial court).

¶ 22 *Chan v. Safeco* collaterally attacks[1] the settlement that was approved in this case by seeking a judicial declaration that the Lebanon settlement is not entitled to full faith and credit in Washington and therefore does not apply to Washington providers. In support of this motion, Kerbs made the same arguments that he has made on appeal here. During the hearing on the motion for declaratory judgment, the Washington court noted that the Lebanon court "appears to have lacked the subject matter jurisdiction to approve

---

[1]The motion for declaratory judgment in *Chan* was filed after the circuit court approved the class settlement in this case and Kerbs filed his notice of appeal challenging that decision.

a nationwide class for consumer fraud, or breach of contract even under Illinois law." The court indicated that it was not an expert on Illinois law, but stated that "it looks to me like *Avery v. State Farm Mutual Ins. Co.* seems to require Illinois courts to show that the insurer's acts took place in Illinois and that the insurance policy had identical language in all states," requirements that cannot be met in the Lebanon case.

¶ 23    The court also made the following "observations" regarding the Lebanon case: that Illinois plaintiffs cannot adequately represent Washington providers because they do not have any of the claims available under Washington law; that it was not willing to opine on whether the terms of the Lebanon settlement were "grossly inadequate" for Washington providers, but noted that "80% is not 85%"; and that the Lebanon settlement was deficient in terms of the due process given to Washington providers.  The court also noted that it looked like the "Washington claims were undervalued in the Lebanon case given the disparity between the verdicts provided to provided classes in Washington law and the compensation Washington providers would receive under Lebanon."  Therefore, the court found that the Lebanon case did not have preclusive effect as to Washington providers and that it is "inapplicable" to the *Chan* case.

¶ 24    The appellees argue that the Washington order was an "advisory order," and therefore not binding or persuasive authority on this court, noting that the court's discussion about Illinois's lack of subject matter jurisdiction was "prefaced *** with the candid acknowledgment that [it was] 'not an expert on Illinois law' " and that the Washington court did not have the benefit of the full briefing by all parties of the present case as this appellate court does.  Accordingly, the appellees argue that "speculation

13

about how 'Illinois courts applying Illinois law' might rule in this case was clearly not meant as an authoritative statement of Illinois law or applicable federal law."

¶ 25    We agree with the appellees that the *Chan* transcript is not binding or persuasive authority on this court with regard to the issues of whether the Illinois circuit court had subject matter jurisdiction to approve this nationwide class settlement and whether it abused its discretion in approving the class settlement. In making this decision, we note that the Washington court did not have the benefit of the full briefing by all parties on these issues. Thus, we will not consider the *Chan* transcript in this appeal. As acknowledged by the appellees, the February 17, 2015, fairness hearing occurred before the trial court in this case and therefore would constitute a proper submission for supplementation of the appellate record under Rule 329. Therefore, we grant the motion to supplement the appellate record with regard to the fairness hearing transcript, but deny it with regard to the *Chan* transcript.

¶ 26    We now turn to the first issue raised on appeal: whether the circuit court lacked jurisdiction to approve a nationwide class settlement. Citing *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005), Kerbs argues that the circuit court lacked jurisdiction to approve the class settlement because there is no connection between Illinois and the class of Washington health care providers certified by the Washington court in *Kerbs* or the PIP claims of Washington health care providers generally. Kerbs does not make clear whether his jurisdictional argument concerns subject matter or personal jurisdiction.

14

¶ 27    In *Avery*, our supreme court addressed the issue of whether a nonresident plaintiff could pursue a private cause of action under the Consumer Fraud Act. 216 Ill. 2d at 179-86. The court concluded that the Consumer Fraud Act did not have extraterritorial effect, in that the legislature did not intend for the Act to apply to fraudulent transactions that occurred outside Illinois. *Id.* at 185-87. In determining whether transactions occurred within this state, the court held that a nonresident plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois. *Id.* at 187.

¶ 28    Here, Kerbs argues that *Avery* stands for the proposition that an Illinois court lacks jurisdiction to certify a nationwide class where there is no connection between Illinois and nonresident plaintiffs. We disagree. *Avery* dealt with the issue of whether the Consumer Fraud Act applied to nonresident consumers, not whether an Illinois court had jurisdiction over the claims of nonresident plaintiffs in a class action case. Despite Kerbs's repeated assertion to the contrary, the present class action did not seek to apply the Consumer Fraud Act to nonresident plaintiffs. Instead, the complaint specifically stated that the claims of Illinois class members, such as the plaintiff, were brought under the Consumer Fraud Act, and the claims of nonresident class members were brought under the consumer protection statute(s) of their respective states of residence.

¶ 29    Specifically, with regard to personal jurisdiction, the relevant question is whether the nonresident plaintiffs were afforded the procedural due process protections set forth in *Miner v. Gillette Co.*, 87 Ill. 2d 7, 12-14 (1981). In *Miner*, our supreme court addressed the due process concern of whether an Illinois court had jurisdiction to render a

15

binding judgment over nonresident plaintiffs who may lack "minimum contacts" with Illinois in a class action suit. *Id.* Plaintiff was an Illinois resident bringing a nationwide class action against defendant based on allegations of unfair and deceptive business practices within the meaning of the Consumer Fraud Act and of breach of contract. *Id.* at 10. The court concluded as follows with regard to jurisdiction: "The constitutionality of the present class action on behalf of nonresident members must be determined by asking (1) if plaintiff adequately represents the nonresident parties and (2) if notice can insure the class of its constitutional opportunity to be heard and protect each member's option to choose not to participate." *Id.* at 14. Thus, the court concluded that where the trial court determines that the due process requirements of notice and adequate representation have been met, the judgment rendered on behalf of the class members—resident and nonresident—will be binding on each and such judgment will be entitled to full faith and credit. *Id.* at 16.

¶ 30 Similarly, the United States Supreme Court held that a class representative may file a class action in a jurisdiction that would not otherwise have jurisdiction over absent class members as long as the absent plaintiffs are provided with minimal procedural due process protection. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985). The Court stated as follows:

> "Because States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter. *** In this case we hold that a forum State may exercise

16

jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection." *Id.* at 811-12.

¶ 31 Thus, the Court concluded that procedural due process would require the following: (1) the plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel; (2) the notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections; (3) the notice should describe the action and plaintiffs' rights in it; (4) an absent plaintiff must be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court; and (5) the named plaintiff must at all times adequately represent the interests of the absent class members. *Id.*

¶ 32 Initially, we note that Kerbs does not challenge the sufficiency of the class notice in his appellate briefs. At the preliminary approval hearing, the trial court ordered Liberty to make a reasonable search of its records to ascertain the name and last known address of each person in the various classes and to send individual notice and a claim form by first-class mail to each potential class member. The court approved the form of the notice and the claim form. The court also required that certain steps be taken to ensure that the individual mailings provided the best notice practicable under the

17

circumstances, such as identifying address changes with the post office. In addition, the court ordered Liberty to establish a website for potential class members to access additional information and establish and maintain a toll-free telephone number for potential class members to call for additional information. Potential class members were given the right to object or to opt out of the settlement and the procedures for both were set forth in the order.

¶ 33   The settlement administrator then disseminated notice to 2,953,505 potential class members.   At the final approval hearing, the trial court reviewed affidavits from the settlement administrator and heard testimony from Todd Hilsee, an expert in class notice issues, about the dissemination and adequacy of notice to the class members.  Thereafter, the court reaffirmed its finding that class notice in accordance with the terms of the preliminary order constituted the best notice practicable under the circumstances.  The court found that the evidence confirming dissemination and content of class notice demonstrated that the parties complied with the preliminary order regarding class notice; that the notice given informed members of the settlement class of the pendency and the terms of the proposed settlement, of their opportunity to request exclusion from the settlement class, and of their right to object to the terms of the proposed settlement; that the notice given was the best notice practicable under the circumstances; and that it constituted valid, due, and sufficient notice to members of the settlement class.

¶ 34   The trial court further found that the notice complied fully with the requirements of due process, the Illinois rules of civil procedure, and all other applicable laws.  Thus, having afforded the potential class members procedural due process as set forth in *Miner*,

18

the court had jurisdiction over all class members who did not opt out of this multistate settlement.

¶ 35 The next issue on appeal is whether the trial court abused its discretion in certifying a settlement class that included Washington health care providers. A court's decision on class certification is reviewed for an abuse of discretion. *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006). In making its decision as to whether to certify a settlement class, the court should not judge the legal and factual questions by the same criteria applied in a trial on the merits, nor should the court turn the settlement approval hearing into a trial. *GMAC Mortgage Corp. of Pennsylvania v. Stapleton*, 236 Ill. App. 3d 486, 493 (1992). To do this would defeat the purposes of reaching a compromise, such as avoiding a determination on contested issues and dispensing with extensive and wasteful litigation. *Id.* Accordingly, a class that is suitable for settlement purposes might not be suitable for litigation purposes because the settlement might eliminate all of the contested issues that the court would have to resolve if the case went to trial. *Cohen v. Blockbuster Entertainment, Inc.*, 376 Ill. App. 3d 588, 598 (2007).

¶ 36 Here, Kerbs argues that the trial court abused its discretion when it certified a nationwide class action settlement that included Washington providers because there was no connection between Washington provider claims and Illinois. Kerbs again cites *Avery* in support of his position. Unlike the present case, *Avery* involved a class-certification motion in a case that was litigated to verdict. *Avery*, 216 Ill. 2d at 109. As we have already noted, *Avery*'s holding that the litigation class should not have been certified focused solely on plaintiff's attempts to apply the Illinois Consumer Fraud Act to class

19

members and transactions that had no connection with Illinois. *Avery* did not stand for the proposition that an Illinois class representative could not maintain a nationwide settlement class where the class included absent plaintiffs.

¶ 37   Kerbs also argues that the trial court abused its discretion in certifying a nationwide class that included Washington providers where Lebanon's claim did not arise from the identical factual predicate as the class claims being compromised. Kerbs noted that Lebanon's claims dealt with Liberty's failure to pay medical bills submitted under an Illinois insurance policy in Illinois. We disagree and conclude that the claims involve the same factual predicate; namely, Liberty's use of computerized databases to determine PIP and MedPay reimbursements. Further, we note that the classes were only certified for settlement purposes.   As we have previously explained, a class that is suitable for settlement purposes might not be suitable for litigation purposes. In addition, for the first time on appeal, Kerbs argues that *Avery* bars nationwide certification where the insurance contracts' language is not identical in all of the included states. In his reply brief, he argues that there was no showing that the contract language relied on by Lebanon for its breach of contract claim was identical to the language in other states.

¶ 38   In *Avery*, our supreme court concluded that the alleged breach of contract claims were unsuitable for class certification in light of the number of contracts implicated by the class claims and the material differences in the policy language of these contracts. *Avery*, 216 Ill. 2d at 128-33.   The court found that the insurer's automobile insurance contracts in 48 states could not be given uniform interpretation and, therefore, the commonality and predominance requirement for maintenance of a class action could not

20

be satisfied. *Id.* There was nothing in *Avery* that suggested that the certification of a settlement class must be subjected to the same rigorous scrutiny that a court applies when determining whether to certify a litigation class. Kerbs did not argue in his objection filed with the trial court that there were any material differences in the insurance policies, nor did he identify any of these alleged material differences. Because Kerbs failed to raise this issue in his objection filed with the trial court, he has forfeited the issue on appeal. See *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 644-45 (1996) ("To preserve an issue for review, a party must make the appropriate objections in the trial court or the issue will be waived."). Despite this, we note that the various insurance policies were filed in the record for the trial court to review when making its decision to certify the proposed class, which included Washington providers.

¶ 39 Kerbs also bases his argument on the differences between Illinois and Washington law. Specifically, in his appellate briefs, Kerbs notes that Illinois is an at-fault state where Washington is a no-fault state, Illinois has no comparable PIP statute requiring the payment of all reasonable medical expenses submitted, and Illinois has no comparable insurance regulation requiring insurers to investigate a PIP claim before refusing to pay a claim that is reasonable, even if the amount of the claim is above the 80th percentile of a database of charges. In his objection filed with the trial court, Kerbs noted the following differences between the two states' laws: "Washington providers have rights and causes of action for relief [namely, injunctive relief for future violations of the Insurance Code,] under the Washington Consumer Protection Act not possessed or available to Lebanon as

21

an Illinois provider" and that the "Washington Insurance Code" requires the payment of all reasonable and necessary medical expenses incurred as a result of a covered accident.

¶ 40    Initially, we note that Kerbs has failed to identify any outcome-determinative differences in Washington law and Illinois law.  Although Kerbs argues that Washington law provides for payment of all "reasonable" charges incurred as a result of a covered accident, that does not necessarily mean that the provider will automatically recover more than what was provided for under the terms of this settlement.  As noted by the Washington court in *Kerbs*, the determination of what constitutes a reasonable charge is for the finder of fact.  In addition, the settlement does not purport to adjudicate any claim under any state's law.  Instead, it sets forth a negotiated settlement that will apply to all claimants who do not opt out.  Furthermore, it is well-settled law in Illinois that a class action may still be maintained despite conflicting or differing state laws.  See *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1003 (2004) (the fact that the laws of 17 states are potentially implicated here is not necessarily problematic as the trial court may simply divide the class into subclasses); see also *Purcell or Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1074-75 (1988) (a class action may still be maintained despite conflicting or differing state laws as the court may simply choose to divide the class into subclasses).

¶ 41    The next issue raised on appeal is whether the circuit court abused its discretion by approving the class settlement.  There exists a strong public policy in favor of settlement and the avoidance of costly and time-consuming litigation.  *Security Pacific Financial Services v. Jefferson*, 259 Ill. App. 3d 914, 919 (1994).  The circuit court's approval of

22

the class settlement is reviewed for an abuse of discretion. *Steinberg v. System Software Associates, Inc.*, 306 Ill. App. 3d 157, 169 (1999). A reviewing court should not overturn the circuit court's approval of a class settlement unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval. *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1990). The standard used in evaluating a class settlement is whether the settlement was fair, reasonable, and adequate. *Steinberg*, 306 Ill. App. 3d at 169.

¶ 42    The circuit court should consider the following factors when evaluating the fairness of a class settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Korshak*, 206 Ill. App. 3d at 972. Where the procedural factors support approval of a class settlement, there is a presumption that the settlement is fair, reasonable, and adequate. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3rd Cir. 2004).

¶ 43    Kerbs argues that the trial court abused its discretion in finding that the class settlement was fair, reasonable, and adequate. He argues as follows: (1) Washington providers are paid nothing under the Lebanon settlement; (2) Washington providers will suffer a detriment from the defendants' use of the 80th percentile of the FAIR Health database to pay provider bills; (3) the inclusion of a waiver of future claims was unfair

23

and improper; (4) payments to Washington class members for past reductions using the Ingenix database are too low in light of other UCR settlements; and (5) Washington class members should be paid for past reductions using the FAIR Health database.

¶ 44   In the trial court's preliminary settlement approval order, it concluded that the settlement was within the range of possible approval as fair, reasonable, and adequate, and in the best interests of the class members.  In making this decision, the court noted that there were several important differences between the relief provided to members of the settlement class under the proposed settlement and relief sought in similar cases in which class certification had been denied or reversed.  In particular, the court noted that the proposed settlement included an agreement by Liberty to make payments to certain members of the settlement class without any finding that Liberty breached any duty owed to any member of the settlement class or that any member of the settlement class suffered any legally cognizable injury as a result of any such breach.  Thus, the court concluded that the stipulation eliminated the need to resolve the individualized issues of fact and law that led this appellate court to reverse the certification of a litigation class in a similar case in Madison County.  See *Bemis v. Safeco Insurance Co. of America*, 407 Ill. App. 3d 1164 (2011).

¶ 45   In addition, the trial court noted that the stipulation provided for prospective relief in the form of an agreed injunction that would allow Liberty to continue to use its computerized bill-review system and require Liberty to make certain disclosures concerning its use of that system.  The court found that these terms eliminated the potential conflict of interest cited by an Oregon court, a case that found the medical

24

provider had failed to establish its adequacy to represent the proposed litigation class. See *Froeber v. Liberty Mutual Insurance Co.*, 193 P.3d 999 (Or. Ct. App. 2008).

¶ 46    Thus, the trial court made a final determination that the class settlement was fair, reasonable, and adequate.  In making this decision, the court reviewed the parties' written submissions to the court, the four objections to the settlement, which included the objection filed by Kerbs, and heard arguments and additional evidence regarding the substantive fairness, reasonableness, and adequacy of the settlement terms.  We note that there were 2,953,505 potential class members and around 798 elected to opt out.  The court concluded that the proposed settlement was the result of good-faith arms-length negotiations by the parties, a finding that was not challenged by Kerbs until this appeal, and that approval of the settlement would result in substantial savings of time and resources to the court and the litigants and would further the interests of justice.  Thus, the procedural *Korshak* factors weighed in favor of approving the class settlement.

¶ 47    As for the particular terms of the settlement provision, Illinois law is clear that a trial court must evaluate a settlement as a whole, as it is the product of extensive and complex negotiations:

> "In litigation as complex as that involved in this case and with the many divergent interests it is inescapable that reasonable minds may differ as to the wisdom of certain provisions of the settlement agreement.  That some alteration in the agreement may have been more beneficial to certain interests is not the test."
> *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 319 (1975).

Thus, a reviewing court cannot rewrite the parties' settlement to eliminate unfair provisions; it can only approve or disapprove of the entire agreement. *Waters v. City of Chicago*, 95 Ill. App. 3d 919, 925 (1981). The essence of a settlement is compromise and the court cannot reject a settlement solely because it does not provide a complete victory to plaintiffs. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996).

¶ 48   Kerbs argues that the trial court abused its discretion in approving the settlement where Lebanon did not fairly and adequately protect the interests of the class members. As a prerequisite for maintenance of a class action, the court must find that the representative parties will fairly and adequately protect the interests of the class. *Client Follow-Up Co. v. Hynes*, 105 Ill. App. 3d 619, 624-25 (1982). When evaluating whether the class representative can provide fair and adequate representation, the court must determine that the representative party is not seeking relief which is potentially antagonistic to the members of the class as, in that situation, due process prohibits a judgment from being binding on class members. *Id.* However, a class representative may not be disqualified merely because his claim is not exactly the same as the claims of other potential class members. *Carrao v. Health Care Service Corp.*, 118 Ill. App. 3d 417, 428 (1983).

¶ 49   Here, in support of his objection filed with the trial court, Kerbs identified the following relief that was sought by Lebanon that was antagonistic to the interests of the Washington providers: that there was no consideration paid for the future waiver provision; that the future waiver was contrary to Washington public policy; that Washington law requires payment of all reasonable charges; and that Washington

providers receive nothing under the Lebanon settlement for reductions made based on the FAIR Health database. In essence, Kerbs is arguing that the Washington providers might be more successful if the suit was brought in a Washington court. Kerbs points to his attorney's previous class action results in support of his argument that Washington providers "would clearly have fared better in a Washington state court action."

¶ 50    The standard for class settlement approval is not whether the parties could have done better—the standard is whether the compromise was fair, reasonable, and adequate. *Wilcox*, 61 Ill. 2d at 317, 319. As we have previously explained, a trial court cannot reject a settlement solely because it does not provide a complete victory to the class members. See *Isby*, 75 F.3d at 1200. The trial court was presented with evidence of other class settlements and awards reached in similar cases litigated to verdict, some more favorable and others less favorable than the present settlement.

¶ 51    Further, Lebanon's complaint attacked the use of both the Ingenix and the FAIR Health database. The settlement controls Liberty's use of the FAIR Health database by requiring the fully disclosed use of the 80th percentile charge as opposed to a lower benchmark. The agreement provided that use of the FAIR Health database at the 80th percentile did not breach any duty owed to settlement class members. There was consideration to support a waiver of future claims as Liberty agreed to use the FAIR Health database for future claims, a provision that was also included in the *Kerbs* settlement, and also agreed to use the 80th percentile benchmark in paying future medical claims. Before approving the class settlement, the trial court was presented with evidence concerning the accuracy and reliability of the FAIR Health database and that the

27

80th percentile was the industry standard for UCR charges in the health care and insurance market places. Thus, looking at the settlement as a whole, we cannot say that the court abused its discretion in approving the settlement on this basis.

¶ 52 Kerbs argues that the settlement was against the public policy of Washington. Specifically, he argues that the inclusion of the future claims was contrary to the Washington Insurance Code and the Washington Consumer Protection Act. A settlement agreement may include a waiver of future claim provision even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *Froeber*, 193 P.3d at 1005. Thus, claims not alleged in the underlying class action complaint can be properly released where those claims depended on the same set of facts as the claims that gave rise to the settlement.

¶ 53 Here, the future claims waiver provided that except as otherwise provided by the final judgment entered in *Kerbs* on August 24, 2012, Liberty's payment of future claims at the 80th percentile under the settlement does not breach any duty under any applicable law or contract requiring Liberty to pay or reimburse UCR charges for covered treatments. The future claims waiver in this provision involved the same factual predicate as those raised in the class action: Liberty's use of computerized databases to determine PIP and MedPay reimbursements. From the court's preliminary and final orders, it was clear that the court had considered this objection by Kerbs. We cannot say that the trial court abused its discretion in approving the settlement on this basis.

28

¶ 54    With regard to Kerbs's argument that this settlement showed "clear hallmarks of a collusive settlement and a 'sweetheart' deal for the insurers in exchange for a large fee paid to Lebanon and its counsel," we note that Kerbs failed to raise this argument in his objection filed in the trial court.  Thus, this argument is forfeited on appeal. *Ficken*, 291 Ill. App. 3d at 644-45 ("To preserve an issue for review, a party must make the appropriate objections in the trial court or the issue will be waived.").

¶ 55    In summary, we conclude that the trial court had jurisdiction to approve the nationwide class settlement entered in this case.  The trial court did not abuse its discretion in certifying the settlement class and in finding that the settlement was fair, reasonable, and adequate.

¶ 56    For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

¶ 57    Affirmed.