# EXHIBIT F

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LEBANON CHIROPRACTIC CLINIC, P.C.,
Individually and on behalf of all others similarly
situated,

     Plaintiff,

vs.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA, and
SAFECO INSURANCE COMPANY OF
ILLINOIS,

     Defendants.

No. 14-L-521

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is made by and between (a) the named plaintiff, Lebanon Chiropractic Clinic, P.C. ("Plaintiff"), on behalf of itself and on behalf of all others similarly situated, and (b) defendants Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Safeco Insurance Company of America, and Safeco Insurance Company of Illinois, and several of their affiliates (collectively, "Liberty").

## RECITALS

WHEREAS Plaintiff has filed a putative class action before the Circuit Court of St. Clair County, Illinois (the "Court") in Case No. 14-L-521 (the "Action");

WHEREAS the Action alleges, among other things, that Liberty improperly used an undisclosed cost-containment program involving computerized bill-review systems to cap the amounts paid to medical providers and/or reimbursed to injured parties for medical treatments

covered by the Medical Payments ("MedPay") coverage and/or Personal Injury Protection ("PIP") coverage provided by certain automobile policies issued by Liberty;

WHEREAS, the Action further asserts that Liberty's use of computerized bill-review systems to determine the usual, customary, or reasonable charge payable under the PIP and/or MedPay coverage provided by Liberty's personal automobile policies breached the terms of those policies, violated various consumer-protection statutes, and unjustly enriched Liberty;

WHEREAS Liberty has denied that it has acted improperly or fraudulently and has raised several affirmative defenses, including but not limited to defenses based on (1) applicable statutes of limitations, (2) a prior class settlement of similar claims in a lawsuit styled *Froeber v. Liberty Mutual Insurance Company*, No. 00C15234 in the Circuit Court of Marion County, Oregon ("*Froeber*"); (3) a prior class settlement of similar claims in *Kerbs v. Safeco Insurance Company of America*, No. 10-2-17373-1 SEA in the Superior Court of King County, Washington ("*Kerbs*"); and (4) settlements and judgments reached in individual disputes presenting similar claims in Illinois and other states ("Individual Disputes").

WHEREAS Plaintiff, while believing that the claims asserted in the Action have substantial merit, has considered the risks associated with the continued prosecution and possible appeal of this complex and time-consuming litigation, as well as the likelihood of success on the merits of the Action, and believes that, in consideration of all the circumstances, the Settlement embodied in this Stipulation is fair, reasonable, adequate and in the best interests of Potential Class Members; and

WHEREAS Liberty, while denying wrongdoing of any kind whatsoever, and without admitting liability, nevertheless has agreed to enter into this Stipulation to avoid further burden

2

and expense of protracted litigation and to be completely free of any further controversy with respect to the claims which have been asserted or could have been asserted in the Action.

NOW, THEREFORE, IT IS HEREBY AGREED by and between the parties, through their respective counsel, that the Action be settled and compromised by Plaintiff, the Settlement Class, and Liberty on the following terms and conditions, subject to the approval of the Court after hearing as provided in this Stipulation:

I.    ADDITIONAL DEFINITIONS

In addition to terms defined elsewhere in this Stipulation, the following terms shall be defined as follows:

1.    "Administrator" means the third-party settlement administrator described in paragraph 32, below.

2.    "Claim Form" means the documentation that a Class Member must submit to be eligible to receive a payment under the Settlement as provided in paragraphs 44-53, below.

3.    "Class Counsel" means the attorneys approved by the Court to represent the Settlement Class and the Class Members as provided in paragraphs 30-31, below.

4.    "Class Member" means any Person who (a) is included within the definition of the Settlement Class (or succeeds to the interests of such a Person as an heir, executor, administrator, or assignee) and (b) does not timely and properly request exclusion from the Settlement Class as provided in paragraph 70, below.

5.    "Class Notice" means the notice of the preliminary approval of this Stipulation and the Settlement to be given under paragraphs 33-35, below.

3

6.      "Class Period" means the following:

A.      for Class Members residing in Alaska, California, Colorado, District of Columbia, Maryland, Michigan, New Hampshire, North Carolina, South Carolina, and Texas, "Class Period" means June 25, 2010, through October 31, 2014;

B.      for Class Members residing in Arkansas, Idaho, Kansas, Missouri, Nebraska, and Virginia, "Class Period" means June 25, 2009, through October 31, 2014;

C.      for Class Members residing in Alabama, Arizona, Connecticut, Georgia, Maine, Massachusetts, Minnesota, Mississippi, Nevada, New Mexico, North Dakota, South Dakota, Tennessee, Vermont, Washington, and Wisconsin, "Class Period" means June 25, 2008, through October 31, 2014;

D.      for Class Members residing in Montana and Ohio, "Class Period" means June 25, 2006, through October 31, 2014; and

E.      for Class Members residing in Illinois, Indiana, Iowa, Louisiana, and Wyoming, "Class Period" means June 25, 2004, through October 31, 2014.

7.      "Covered Treatment" means any medical treatment, medical service, medication, or prosthesis covered by the MedPay and/or PIP coverage provided by a Subject Policy.

8.      "Detailed Notice" means a detailed Class Notice made available to Potential Class Members as provided in paragraph 35, below.

9.      "Effective Date" means the later of (a) the date defined in paragraph 81, below, or (b) the thirtieth day after the entry of the Final Judgment.

10.     "Fairness Hearing" means the hearing to be held to consider approval of the Settlement as provided in paragraphs 38-40, below.

4

11.    "Final Judgment" means the order and judgment finally approving the Settlement as reasonable, fair, adequate, and in the best interests of the Settlement Class and fully and finally disposing of all claims asserted in the Action, as provided in paragraph 38, below.

12.    "Future Claim" means any insurance claim submitted to Liberty or any of its agents for payment or reimbursement of charges for Covered Treatment rendered after October 31, 2014.

13.    "Individual Notice" means a summary Class Notice mailed to Potential Class Members as provided in paragraphs 33-34, below.

14.    "Liberty" means Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, The First Liberty Insurance Corporation, Liberty Personal Insurance Company, Liberty Insurance Corporation, Liberty Lloyds of Texas Insurance Company, LM General Insurance Company, LM Personal Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company, General Insurance Company of America, First National Insurance Company of America, American States Insurance Company, American States Preferred Insurance Company, and American Economy Insurance Company.

15.    "Medical Provider" means any hospital, clinic, pharmacy, physician, physician's assistant, chiropractor, nurse, nurse practitioner, emergency medical technician, and/or any other person or entity who claims or claimed a right to payment under a Subject Policy for providing Covered Treatment.

16.    "Neutral Evaluator" means a person approved by the Court as provided in paragraph 39, below, to serve as an arbiter of any disagreements that arise concerning the amount, if any, due to any Class Member under the Settlement.

17.    "Policy Limit" means the amount stated in a Subject Policy as the maximum total amount that Liberty will pay for medical expenses covered by the MedPay and/or PIP coverage provided by that policy.

18.    "Potential Class Member" means any person who is included within the definition of the Settlement Class (or succeeds to the interests of such a person as an heir, executor, or administrator) before the deadline for seeking exclusion from the Settlement Class.

19.    "Released Claims" means and includes any and all claims, rights, demands, actions, causes of action, suits, debts, liens, contracts, liabilities, agreements, interest, costs, expenses or losses arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by the Plaintiff, the Settlement Class, and/or any Class Member concerning any Subject Claim, whether at law, in equity, or under any statute or regulation, including without limitation:

A.    any and all claims, demands, actions, causes of action, and/or suits for breach of contract, fraud, misrepresentation, consumer fraud, unfair trade practices, unfair insurance practices, unjust enrichment, and/or bad faith arising from or in any way relating to any Subject Claim,

B.    any and all claims, demands, actions, causes of action, and/or suits for direct damages, indirect damages, actual damages, consequential damages, punitive damages, and/or exemplary damages, declaratory or injunctive relief, prejudgment interest, post-judgment

6

interest, costs, expenses, and/or attorneys' fees, whether statutory or non-statutory, arising from or in any way relating to any Subject Claim, and

C.      any and all Unknown Claims arising from or in any way relating to any Subject Claim;

D.      provided, however, that the Released Claims do not include (i) any claim for enforcement of this Stipulation and/or the Final Judgment or (ii) any individual (i.e., non-class) claim pending before any court, administrative agency, or arbitration panel on October 31, 2014.

E.      Notwithstanding anything to the contrary in paragraph 19(D), the Released Claims include the individual claims alleged by the Plaintiff in the Action.

20.     "Released Persons" means:

A.      all of the insurers defined as "Liberty" in paragraph 14, above;

B.      all of the past and present officers, directors, agents, attorneys, employees, vendors, stockholders, divisions, subsidiaries, and parents of any of the insurers defined as "Liberty" in paragraph 14, above, including without limitation Liberty Mutual Holding Company, Inc., LMHC Massachusetts Holdings, Inc., Liberty Mutual Group, Inc., and Safeco Corporation; and

C.      all of the successors, assigns, and legal representatives of any of the entities listed in subparagraph(s) 20(A) and/or 20(B).

21.     "Settlement" means the settlement agreement described in this Stipulation.

22.     "Settlement Class" means the plaintiff class to be certified for settlement purposes only, as described in paragraphs 30-31, below, and consisting of the following Policyholder, Claimant, and Provider subclasses:

7

A.    The "Policyholder Subclass" is defined as every person who, on October 31, 2014, is/was named as an insured in a "Subject Policy" that is/was in force on that date;

B.    The "Claimant Subclass" is defined as every person who, at any time during the Class Period,

(i)    received Covered Treatment;

(ii)    submitted (or allowed another to submit on his or her behalf) a "Subject Claim;" and

(iii)    received from Liberty as payment or reimbursement for at least one Covered Treatment (through payments to himself, to herself, or to others on his or her behalf) an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through the use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment.

C.    The "Provider Subclass" is defined as every person who, during the Class Period,

(i)    provided Covered Treatment to a member of the Claimant Subclass,

(ii)    sought payment for that Covered Treatment under the MedPay and/or PIP coverage provided by a Subject Policy, and

(iii)    received from Liberty as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through the use of a computerized bill-review system that the

8

==charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment;==

D.      provided, however, that the Settlement Class excludes all Class Counsel, all Released Persons, all Neutral Evaluators, all Illinois judges, and all persons who timely opt out of the Settlement Class in accordance with the Court's orders.

23.      =="Settlement State" means and includes== Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, ==Michigan,== Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, Wisconsin and Wyoming.

24.      =="Subject Claim" means any insurance claim submitted to Liberty or any of its agents seeking payment under the MedPay and/or PIP coverage provided by a Subject Policy for Covered Treatment rendered during the Class Period.==

25.      "Subject Policy" means any personal automobile policy (a) issued by one of the insurers defined as "Liberty" in paragraph 14, above, (b) delivered to a policyholder in a Settlement State, and (c) providing MedPay and/or PIP coverage.

26.      "UCR Reduction" means the difference between (a) the amount billed by a Medical Provider for a Covered Treatment documented by a Subject Claim and (b) the amount actually paid or reimbursed by Liberty for that Covered Treatment because Liberty or one of its agents determined through the use of a medical-charge database that the amount billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment. "Ingenix UCR Reduction" means a UCR Reduction taken using a medical-charge database provided by

9

Ingenix. "FairHealth UCR Reduction" means a UCR Reduction taken using a medical-charge database provided by FAIRHealth.

27.     "Unknown Claim" means any claim arising out of newly discovered facts and/or facts found hereafter to be other than or different from the facts now believed to be true.  The Released Claims defined in paragraph 19, above, include all Unknown Claims arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by Plaintiff, by the Settlement Class, and/or by any Class Member concerning any Subject Claim.  Upon the entry of the Final Judgment, each Class Member shall be deemed to have expressly waived and released any and all Unknown Claims that he, she, or it has or might have arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by Plaintiff, by the Settlement Class, and/or by any Class Member concerning any Subject Claim.

## II.     SETTLEMENT CONSIDERATION.

28.     In exchange for the releases and other consideration described in paragraph 29, below, and on the terms set forth in this Stipulation, Liberty hereby agrees to:

A.     implement the following measures concerning Future Claims, except as otherwise required by a prior judicial order:

(i)     for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the charge billed by the Medical Provider (the "Billed Charge"), (b) the eightieth percentile charge for that Covered Treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth database or another similar database (the "Eightieth Percentile Charge"), (c) the amount authorized by a state

==mandated fee schedule or by another applicable law or regulation (the "Fee-Schedule Charge"), or (d) the amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party (the "PPO Charge");==

(ii)     for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall publish on the website libertymutual.com that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge;

(iii)    for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall inform Settlement State policyholders in writing at the time of their initial purchase or renewal of a personal auto policy that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge; and

(iv)    for a period beginning on the Effective Date and extending five years after the Effective Date, Liberty shall inform Medical Providers in Settlement States who contact Liberty to confirm coverage of medical treatment under a personal auto policy that Liberty will pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the Billed Charge, (b) the Eightieth Percentile Charge, (c) the Fee-Schedule Charge, or (d) the PPO Charge; and

      B.    pay the amounts described in paragraphs 37, 44-47, 55, 57, and 59-61 of this Stipulation, including (i) payments to Class Members who demonstrate financial loss due to Liberty's use of Ingenix databases to take Ingenix UCR Reductions on bills for Covered Treatment, (ii) attorneys' fees, costs, and expenses payable to Class Counsel, and (iii) incentive fees payable to the Class Representative.

      29.    In exchange for the consideration described in paragraph 28, above, and on the terms set forth in this Stipulation, Plaintiff, on behalf of itself and all members of the Settlement Class, hereby agrees to:

      A.    release the Released Parties from all of the Released Claims as described in paragraphs 19-20 and 41-43;

      B.    stipulate that Liberty's payment of Future Claims in accordance with paragraph 28(A)(i), above, does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or reasonable charges for Covered Treatments; and

      C.    refrain from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency, or arbitrator, any challenge of any kind to Liberty's payment of Future Claims in accordance with paragraph 28(A)(i), above; and

      D.    with regard to members of the Provider Subclass only:

      (i)    refrain from disparaging or criticizing as unlawful or unfair Liberty's conduct concerning Future Claims in accordance with paragraph 28(A), above; and

(ii)    refrain from discouraging any person from purchasing insurance from Liberty because of Liberty's conduct concerning Future Claims in accordance with paragraph 28(A), above.

III.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

30.    For settlement purposes only, the Court may enter an order preliminarily approving this Stipulation, preliminarily certifying the Settlement Class, preliminarily appointing Plaintiff as representatives of the Settlement Class, and preliminarily appointing the following attorneys as Class Counsel:

> Robert W. Schmieder II
> Bradley M. Lakin
> SL Chapman LLC
> 330 North Fourth Street, Suite 330
> St. Louis, MO 63102
> Phone: 314-588-9300

To facilitate such preliminary approval, certification, and appointment, Plaintiff will promptly file a motion asking the Court to enter an order substantially in the form attached hereto as Exhibit 1. Liberty will not oppose entry of such an order.

31.    Preliminary certification of the Settlement Class and appointment of the class representative and Class Counsel by the Court shall be binding only with respect to the Settlement. In the event that the Settlement is not consummated for any reason, whether due to a termination of this Stipulation in accordance with its terms, a failure or refusal of the Court to approve the Settlement, a reversal or modification of the Court's approval of the Settlement on appeal, or any other reason, then the Court shall vacate the certification of the Settlement Class and the parties shall litigate the Action as though the Stipulation had never been entered and the Settlement Class had never been certified.

13

32.     Upon the preliminary approval of this Stipulation and the Settlement as provided in paragraphs 30-31, above, all proceedings in the Action shall be stayed until further order of the Court; provided, however, that the parties may conduct such limited proceedings as may be necessary to implement the Settlement or to effectuate the terms of this Stipulation.

IV.    CLASS NOTICE

33.     As soon as practicable after the preliminary approval of this Stipulation and the Settlement as provided in paragraphs 30-31, above, Liberty shall make a reasonable search of its records to ascertain the name and last known address of each person included within the definition of the Claimant Subclass, each person included within the definition of the Provider Subclass, and each person included within the definition of the Policyholder Subclass.   Thereafter, a third-party administrator engaged by Liberty (the "Administrator") shall send a copy of an Individual Notice and Claim Form by first-class mail to each potential member of the Claimant Subclass and each potential member of the Provider Subclass for whom Liberty ascertains a name and an address through that search.   In addition, the Administrator shall send a copy of an Individual Notice by first-class mail to each potential member of the Policyholder Subclass for whom Liberty ascertains a name and an address through that search.   Liberty and the Administrator shall use their best efforts to complete the mailing of the Individual Notices and Claim Forms to those potential Class Members within 30 days after the preliminary approval of this Stipulation and the Settlement. The Individual Notices and the Claim Forms shall be in formats approved by the Court.  Liberty and the Administrator shall mail the Individual Notices and Claim Forms to the potential Class Members in mailings identifying those materials in a format approved by the Court.

34.     Liberty and the Administrator shall take the following steps to ensure that these mailings provide the best notice practicable under the circumstances:

A.      Within 10 days after the preliminary approval of this Stipulation and the Settlement, Liberty shall provide to the Administrator a listing of the last known addresses ("LKAs") of all Potential Class Members.  If possible, the listing shall segregate LKAs that were provided to Liberty within the last four years from those that were provided to Liberty more than four years ago.

B.      Within 20 days after the preliminary approval of this Stipulation and the Settlement, the Administrator shall (i) run all of the LKAs received from Liberty through the Postal Service's National Change of Address Database ("NCOA") to identify address changes within the last four years, (ii) set aside as ready to mail all addresses updated through the NCOA database, and (iii) run all addresses that were not updated by NCOA and not known to have been provided to Liberty within the past four years through a third-party lookup program such as LexisNexis Accurint.

C.      Within 30 days after the preliminary approval of this Stipulation and the Settlement, the Administrator shall mail the Individual Notices to Potential Class Members by first class mail, addressed to the most current address produced through the updating protocol described in paragraph 34(B).

D.      In the event that a Class Notice is returned by the postal service with a new address shown on a "yellow sticker" affixed to the Notice, the Administrator shall promptly (within 5 business days) re-mail the Notice to the address shown on the "yellow sticker".

E.      In the event that a Class Notice is returned by the postal service without a new address shown on a "yellow sticker" affixed to the Notice, the Administrator shall take the following steps to re-send the Notice:  (i) if the returned notice was originally sent to an address that was not generated by a third-party lookup program such as LexisNexis Accurint, the

Administrator shall run the LKA through the third-party lookup service and re-mail the Class Notice to the best address resulting from that research, or to the original LKA if no other address is found during that research; (ii) if the returned notice was originally sent to an address that was generated by a third-party lookup program such as LexisNexis Accurint, the Administrator shall re-mail the Notice to the next-best address resulting from that original research, or to the original LKA if no other address was found during that research.

      35.    In addition to the Individual Notices given in accordance with paragraphs 33-34, above, Liberty and the Administrator shall—within 30 days after the preliminary approval of this Stipulation and the Settlement—establish a website for Potential Class Members to access for additional information and post on that website for review and printing by Potential Class Members a copy of this Stipulation, a copy of the order preliminarily approving this Stipulation and the Settlement, a copy of the Individual Notice, a copy of the Claimant Subclass Claim Form, a copy of the Provider Subclass Claim Form, and a Detailed Notice substantially in the form approved by the Court. Liberty and the Administrator shall also establish and maintain a toll-free telephone number for Potential Class Members to call for additional information.

      36.    Upon request, Liberty and the Administrator shall provide Class Counsel with such reasonable access to the notice process as they may need to monitor compliance with paragraphs 33-35.

## V.    COSTS OF CLASS NOTICE

      37.    Liberty will pay all of the costs of providing Class Notice as described in paragraphs 33-36.

## VI.    FINAL APPROVAL OF THE SETTLEMENT

      38.    After the mailings described in paragraphs 33-34, the deadline for seeking exclusion from the Settlement Class as provided in paragraph 70, and the deadline for filing a

Notice of Objection to the Settlement as provided in paragraphs 72-74, Class Counsel will file a motion seeking the Court's final approval of the Settlement at a Fairness Hearing to be held approximately 75 days after the preliminary approval of this Stipulation and the Settlement, at a time, date, and location that will be stated in the Individual Notice, in the Detailed Notice, and in the order preliminarily approving the Settlement. The motion will ask the Court to enter a Final Judgment substantially in the form attached hereto as Exhibit 2. Liberty will not oppose entry of such an order.

39.    In addition to seeking approval of the Settlement, the motion described in paragraph 38 shall request the appointment of three Neutral Evaluators to serve as arbiters of any disagreements that arise in the claim-administration process, as provided in paragraph 54, below. To assist the Court in the appointment of the Neutral Evaluators, Class Counsel and Liberty will prepare a mutually acceptable list of candidates, and Class Counsel will attach that list as an exhibit to the motion described in paragraph 38, above.

40.    After the appointment of the Neutral Evaluators as provided in paragraph 39, above, Class Counsel shall maintain a list of the names and addresses of the Neutral Evaluators for distribution to Class Members upon request. Neither Liberty, nor Plaintiff, nor any of the parties' counsel shall be liable for any act or omission of any Neutral Evaluator.

VII.    DISMISSAL OF ACTION AND RELEASE OF CLAIMS

41.    The Final Judgment described in paragraphs 11 and 38 will provide for the dismissal of the Action with prejudice and without leave to amend and for the release by Plaintiff, individually and on behalf of the Settlement Class, of all the Released Persons from all of the Released Claims.

42.    As of the Effective Date, each and every Class Member will be bound by each and every term of the Final Judgment and conclusively deemed to have fully released and

17

discharged, to the fullest extent permitted by law, all of the Released Persons from all of the Released Claims.

43.     The provisions of any state, federal, municipal, local or territorial law or statute (including, but not limited to, that of the District of Columbia) providing in substance that releases shall not extend to claims, demands, injuries, and/or damages that are unknown or unsuspected to exist at the time a settlement agreement is executed and/or approved by a court are hereby expressly, knowingly, and voluntarily waived by and on behalf of Plaintiff and all members of the Settlement Class.  Without limiting the foregoing in any way, Plaintiff, on behalf of itself and all members of the Settlement Class, expressly waives all rights under Section 1542 of the California Civil Code, realizing and understanding that Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## VIII.   PAYMENTS TO MEMBERS OF THE SETTLEMENT CLASS

44.     To become eligible to receive a payment under the Settlement, a member of the Claimant Subclass must timely submit in accordance with paragraphs 48-53, below, a properly completed Claim Form documenting a financial loss resulting from an Ingenix UCR Reduction. To do so, the timely and properly completed Claim Form must demonstrate that the submitting Class Member paid a Medical Provider at least part of the difference between (a) the amount billed by the Medical Provider for a Covered Treatment documented by a Subject Claim and (b) a lesser amount paid by Liberty for that Covered Treatment because Liberty or one of its agents determined through the use of an Ingenix medical-charge database that the amount billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment. Subject to the limitations stated in paragraphs 46-47, below, each member of the Claimant

Subclass who timely submits a properly completed Claim Form demonstrating his or her payment of at least a portion of such a difference (each "Eligible Claimant") shall be eligible to receive through the claims-administration procedures described in paragraphs 54-55, below, a settlement payment equal to 50% of the portion of that difference that he or she paid.

45.     To become eligible to receive a payment under the Settlement, a member of the Provider Subclass must timely submit in accordance with paragraphs 48-53, below, a properly completed Claim Form documenting a financial loss resulting from an Ingenix UCR Reduction. To do so, the timely and properly completed Claim Form must demonstrate (a) that the submitting Class Member received from Liberty as payment for a Covered Treatment an amount that was less than the amount charged for that treatment because Liberty or one of its agents determined through the use of an Ingenix medical-charge database that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment and (b) that he, she, or it did not collect (from a patient or any other source) the full amount of the difference between (i) the amount billed by the Medical Provider for that Covered Treatment and (ii) the lesser amount paid by Liberty. Subject to the limitations stated in paragraphs 46-47, below, each member of the Provider Subclass who timely submits a properly completed Claim Form demonstrating such an uncollected difference (each "Eligible Provider") shall be eligible to receive through the claim-administration procedures described in paragraphs 54-55, below, a settlement payment equal to 50% of the uncollected portion of that difference.

46.     Payments to Class Members will be subject to the Claim Limitation Periods defined in paragraph 2, above, and to prior awards, judgments, and settlements, as follows:

        A.     No payments will be made regarding any Covered Treatment rendered outside the Class Period; and

B.    No payments will be made regarding any claims or UCR Reductions that were adjudicated, released, or approved by an award, judgment, or settlement in any prior arbitration, litigation or administrative proceeding, including without limitation the final judgment approving the class settlement of the *Kerbs* case or the final judgment approving the class settlement of the *Froeber* case.

Further, no payments will be made to Class Members under the Settlement regarding any FAIRHealth UCR Reductions taken by Liberty, and all payments to Class Members under the Settlement will be subject to the terms, conditions, deductibles, and Policy Limits of the Subject Policies.

47.    The payments described in paragraphs 44-46, above, are the only payments to which any Class Members will be entitled under the Settlement.  Although there is no cap on the total amount of such payments, Liberty estimates that the total payable to Class Members in accordance with paragraphs 44-46 is approximately $3.6 million.

IX.    SUBMISSION OF CLAIMS BY CLASS MEMBERS

48.    Potential Class Members who do not timely request exclusion from the Settlement Class as provided in paragraph 70, below, will be provided an opportunity to submit Claim Forms requesting payments calculated in accordance with paragraphs 44-47, above.  Blank Claim Forms shall be included with the Individual Notices mailed to Potential Class Members and made available on the website, as provided in paragraphs 33-35, above.  In addition, the Administrator will provide blank Claim Forms to Potential Class Members upon request.  Claim Forms may be submitted on behalf of deceased or incapacitated Class Members by their legally authorized representatives.

49.    To be considered for payment, a Claim Form must be completed and documented in accordance with paragraphs 50-53, below, mailed to the address specified in the Claim Form,

20

and postmarked no later than 60 days after the Fairness Hearing.  Claim Forms will not be considered for payment if they are mailed to an incorrect address or postmarked more than 60 days after the date of the Fairness Hearing.  The claim of a Class Member may be denied if the Class Member's Claim Form does not demonstrate that the claimant satisfies the eligibility requirements stated in paragraph 44 or in paragraph 45.  In addition, a claim may be denied if it does not substantially conform to Liberty's records or if it reasonably can be suspected to be fraudulent.

50.   To be considered for payment, a Claim Form must supply all information requested on the face of the Claim Form, including the name and current address of the claimant, the approximate date of the Subject Claim to which it relates, the approximate date of the accident underlying the Subject Claim, the approximate dollar amount of the Subject Claim, the approximate dollar amount that Liberty paid in response to the Subject Claim, and a signed declaration affirming the claim under penalty of perjury.

51.   Claim Forms submitted by members of the Claimant Subclass must (a) provide the name and address of the person who received the Covered Treatment, (b) state separately for each Covered Treatment for which the claimant seeks a payment under the Settlement:  the approximate date of the Covered Treatment, the nature of the Covered Treatment, the amount billed by the Medical Provider for the Covered Treatment, and the amount paid or reimbursed by Liberty for the Covered Treatment, and (c) include a signed declaration by the Claimant Subclass Member submitting the Claim Form, stating under penalty of perjury (i) the amount, if any, that he or she paid to his or her Medical Provider to satisfy any balance unpaid by Liberty for the Covered Treatment and (ii) the portion, if any, of that amount that was paid or reimbursed by another insurance company.

21

52.     Claim Forms submitted by members of the Provider Subclass must (a) provide the name, address, and Tax Payer ID Number of the Medical Provider submitting the Claim Form, (b) state separately for each Covered Treatment for which the claimant seeks payment under the Settlement: the name and address of the person who received the Covered Treatment, the date of the Covered Treatment, the nature of the Covered Treatment (including CPT code), the amount billed by the Medical Provider for the Covered Treatment, and the amount paid by Liberty for the Covered Treatment, and (c) include a signed declaration by the Provider Subclass Member submitting the Claim Form, stating under penalty of perjury whether he, she, or it sent a bill to a member of the Claimant Class or any other person for the balance unpaid by Liberty for the Covered Treatment and the amount, if any, that the member of the Provider Subclass received in response to such a bill.  In lieu of the information required by subparagraph 52(b), the member of the Provider Subclass may submit separately for each Covered Treatment for which the claimant seeks payment under the Settlement a copy of an EOR or EOB stating the name and address of the person who received the Covered Treatment, the date of the Covered Treatment, the nature of the Covered Treatment (including CPT code), the amount billed by the Medical Provider for the Covered Treatment, and the amount paid by Liberty for the Covered Treatment.

53.     In addition to the information required in paragraphs 50-52, the Claim Form must attach copies of any of the following that the Class Member has in his or her possession:

A.      documents that he or she received from Liberty regarding the claim, including EORs, EOBs, and/or correspondence regarding the claim; and

B.      documents showing whether any person other than Liberty was billed for—or paid for—any of the cost of any Covered Treatment with respect to which any

Class Member seeks payment under the Settlement, including EORs, EOBs, and/or correspondence with any other insurance company regarding the claim. To the extent that the Class Member has no such documents in his or her possession, he or she must submit in a space provided on the Claim Form a declaration stating under penalty of perjury that he or she conducted a reasonable search but was unable to locate any such documents.

**X.     CLAIMS ADMINISTRATION**

54.     Claim Forms that are timely mailed to the Administrator at the correct address shall be processed as follows:

A.     Within 180 days after the Effective Date, Liberty shall (i) make a determination of the payment, if any, due in response to each Claim Form timely mailed to the correct address and (ii) give written notice of each such determination to the affected claimant(s) and to Class Counsel. In making each such determination, Liberty shall be entitled to consider any information within its files that might refute or supplement the Claim Form documentation submitted by the claimant. If Liberty's determination of the payment, if any, due in response to a particular claim is based in whole or in part on any deficiency in the information originally provided with the Claim Form, then Liberty shall identify that deficiency in the written notice of its determination regarding that claim.

B.     A claimant who objects to Liberty's determination of the payment, if any, due in response to his, her, or its Claim Form must mail to the Administrator within 15 days after Liberty's mailing of that determination a written and signed statement setting forth the basis for that objection and curing any deficiencies in the information originally provided with the Claim Form. The Administrator shall log each such objection that it receives and forward a copy of the objection to Liberty within three business days after receipt.

C.    Upon the timely submission of an objection under paragraph 54(B), Liberty and the objecting claimant shall have 30 days to attempt to resolve the objection by agreement.

D.    A claimant who fails to resolve his, her, or its written and signed objection through agreement in accordance with paragraph 54(C) may request review of his or her claim by a Neutral Evaluator by mailing a signed request for such review to the Administrator within 60 days after Liberty's mailing of its initial determination under paragraph 54(A). The Administrator shall log each such request that it receives and forward a copy of that request (together with the associated Claim Form and written objection) to Liberty, to Class Counsel, and to one of the Neutral Evaluators within three business days after receipt.

E.    Liberty shall have 30 days to respond in writing to an objection submitted to a Neutral Evaluator in accordance with paragraph 54(D), with copies to the Administrator and Class Counsel. The Neutral Evaluator shall issue a decision with respect to each such objection within 30 days after his/her receipt of Liberty's response. The decision of the Neutral Evaluator shall be binding and not subject to appeal.

F.    Any objection that is not signed and postmarked within the 15 day period prescribed by paragraph 54(B), above, shall be waived. Similarly, any request for review by a Neutral Evaluator that is not signed and postmarked within the 60 day period prescribed by paragraph 54(D), above, shall be waived

55.    Liberty shall pay each claim that is due a payment under paragraphs 44-54 within 30 days after the latest of (a) the date on which the claimant agrees in writing to accept Liberty's determination of the claim, (b) the date on which the time for objecting to that determination under paragraph 54(B) expires, (c) the date on which the time for presenting such an objection to

a Neutral Evaluator under paragraph 54(D) expires, or (d) the date on which the Neutral Evaluator resolves such an objection under paragraph 54(E).

## XI.    COMMUNICATIONS WITH MEMBERS OF THE SETTLEMENT CLASS

56.    The Individual Notice and the Detailed Notice shall list the names, addresses, and telephone numbers of Class Counsel. Communications with Potential Class Members regarding the Settlement shall be handled through Class Counsel. In the event that Liberty or its counsel receive any communications from Potential Class Members regarding the Settlement, those communications shall be relayed to Class Counsel.

## XII.    COSTS OF SETTLEMENT ADMINISTRATION

57.    Liberty will pay the costs of printing, reproducing, and mailing the checks, forms, notices, and responses that it sends in connection with its administration of the claims process described in paragraphs 54(A)-54(E), above, and/or in connection with its determination of claims submitted in the course of the claims process. In addition, Liberty will pay the fees charged by the Neutral Evaluators to resolve disputes submitted to them under paragraphs 39-40 and 54(E).

## XIII.    ATTORNEYS' FEES AND COSTS

58.    Class Counsel's entitlement, if any, to an award of attorneys' fees, costs, and/or expenses will be determined by the Court. Liberty and Class Counsel did not negotiate the amount of any such fees, costs, or expenses until they resolved all other material elements of the Settlement.

59.    The motion described in paragraph 38 will request (a) an award of attorneys' fees, costs, and expenses to be paid to Class Counsel in a total amount not to exceed $1,200,000 and (b) an award of an incentive fee to be paid to the Class Representative in an amount not

to exceed $3,000.  At the Fairness Hearing, Class Counsel will ask the Court to award those amounts.

60.    Liberty will not object to an award of attorneys' fees, costs, and expenses to be paid to Class counsel in an amount not to exceed $1,200,000 or an award of an incentive fee to be paid to the Class Representative in an amount not to exceed $3,000.

61.    Liberty will pay, in addition to the amounts paid to Class Members in accordance with paragraphs 44-59, above, an award of attorneys' fees, costs, and expenses to Class Counsel in an amount not to exceed $1,200,000 and an award of an incentive fee to the Class Representative in an amount not to exceed $3,000.

## XIV.   REPRESENTATION OF OPT OUTS/CONFIDENTIALITY AGREEMENT

62.    Class Counsel agree that any representation, encouragement, or solicitation of any person seeking exclusion from the Settlement Class or any person seeking to litigate any Released Claims with Liberty might place Class Counsel in an untenable conflict of interest with the class.    Accordingly, Class Counsel will not engage in any such representation, encouragement, or solicitation.  This paragraph, however, shall not affect Class Counsel's ability to respond to inquiries from members of the Settlement Class about this Settlement and/or their options to participate.

63.    In discovery in this and other matters and in negotiation and review of the Stipulation, Class Counsel have received confidential information regarding Liberty's internal practices and procedures and Liberty's confidential financial information, including financial information compiled solely for purposes of negotiating and implementing the Stipulation and the Settlement.  Class Counsel agree to keep such information confidential and not to use it or, unless ordered by a court after notice to Liberty, allow it to be used in any other litigation.

64.     The names, addresses, policy numbers, and other data concerning Potential Class Members compiled by Liberty in effectuating the Settlement, the electronic data processing and other record keeping procedures and materials to be utilized by Liberty in identifying the Potential Class Members and performing Liberty's other obligations under the Stipulation and/or the Settlement, and all documents produced by Liberty to the Settlement Administrator or to Class Counsel and/or other attorneys for plaintiff in this Action and/or in any similar action constitute highly confidential and proprietary business information.  The confidentiality of all such information (the "Proprietary Information") shall be protected from disclosure as provided in paragraphs 65-66, below.

65.     No persons shall be allowed access to any Proprietary Information except Liberty's counsel and clerical personnel employed by Liberty's counsel, the Settlement Administrator and clerical personnel employed by the Settlement Administrator, Class Counsel and clerical personnel employed by Class Counsel, and such other persons as the Court may order after hearing on notice to all counsel of record.

66.     Within 30 days after the Effective Date, the Settlement Administrator and Class Counsel shall return to Liberty all Proprietary Information in their possession, custody, or control and any other documents (exclusive of documents filed with the Court) provided by Liberty to Class Counsel or anyone they employed or retained in this Action or any other similar action. Within 45 days after the Effective Date, the Settlement Administrator and Class Counsel shall deliver a letter to Liberty confirming their compliance with this paragraph.  In the event that any Proprietary Information or documents have already been destroyed, the Settlement Administrator and Class Counsel will include in their respective letters the name(s) and address(es) of the person(s) who destroyed the Proprietary Information and/or documents.

27

67.     Paragraphs 62-66 are of the essence of the agreement stated herein.  In the event that any of those provisions is stricken or modified by the Court, Liberty may terminate the Stipulation and the Settlement.

## XV.     DISAPPROVAL OR TERMINATION OF THE SETTLEMENT

68.     Liberty, in its sole discretion, may terminate this Stipulation and the Settlement if:

A.     the Court refuses to enter a preliminary approval order in the form attached hereto as Exhibit 1;

B.     the Court refuses to enter a final judgment in the form attached hereto as Exhibit 2;

C.     the Court modifies or strikes any provision of this Stipulation;

D.     the Final Judgment is reversed or modified on appeal;

E.     any financial obligation is imposed upon Liberty in addition to and/or greater than those specifically accepted by Liberty in paragraphs 37, 44-47, 55, 57, and 59-61 of this Stipulation; or

F.     the number of Potential Class Members who file timely requests for exclusion exceeds two percent (2%) of any of the following:

(i)     all Potential Class Members in the aggregate;

(ii)     Potential Class Members with LKAs in any one of the Settlement States;

(iii)     Potential Members of the Claimant Subclass with LKAs in any one Settlement State; and/or

(iv)     Potential Members of the Provider Subclass with LKAs in any one Settlement State.

28

In the event of a termination under this paragraph, Liberty shall not receive a refund of any amounts paid under paragraph 37 or paragraph 57.

69.   Liberty may agree in writing to waive its rights under paragraph 68, above, or any of its subparts.

## XVI.   OBJECTIONS TO THE SETTLEMENT AND REQUESTS FOR EXCLUSION

70.   Potential Class Members who wish to exclude themselves from the Settlement Class must submit written requests for exclusion. To be effective, such a request must include the Potential Class Member's name and address, a clear and unequivocal statement that the Potential Class Member wishes to be excluded from the Settlement Class, and the signature of the Potential Class Member or, in the case of a Potential Class Member who is deceased or incapacitated only, the signature of the legal representative of the Potential Class Member. The request must be mailed to the Administrator at the address provided in the Class Notice and must be postmarked no later than 14 days before the date set for the Fairness Hearing.

71.   The Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Liberty and Class Counsel as requested.

72.   Class Members who do not request exclusion from the Settlement Class may object to the Settlement. A Class Member who chooses to object to the Settlement must file a written notice of intent to object (a "Notice of Intention to Object"). The right to object to the Settlement must be exercised individually by an individual Class Member, not as a member of a group or subclass and, except in the case of a deceased or incapacitated Class Member, not by the act of another person acting or purporting to act in a representative capacity.

73.   To be effective, a Notice of Intent to Object must be:

29

A. filed with the Clerk of the Court not later than 14 days before the date set in the Class Notice for the Fairness Hearing; and

B. sent to Class Counsel by first-class mail, postmarked no later than 14 days before the date set in the Class Notice for the Fairness Hearing.

74. In addition, a Notice of Intent to Object must contain:

A. a heading which refers to the Action;

B. a statement whether the objector intends to appear at the Fairness Hearing, either in person or through counsel, and, if through counsel, a statement identifying that counsel by name, address, bar number and telephone number;

C. a detailed statement of the specific legal and factual basis for each and every objection;

D. a list of any and all witnesses whom the objector intends to call at the Fairness Hearing, with the address of each witness and a summary of his or her proposed testimony; and

E. photocopies of any and all exhibits which the objector intends to introduce at the Fairness Hearing.

75. Any Class Member who does not file a timely Notice of Intent to Object in accordance with paragraphs 72-74 shall waive the right to do so and shall be forever barred from making any objection to the Settlement.

76. At least 7 days before the Fairness Hearing, Class Counsel shall provide Liberty a copy of each Notice of Intent to Object received by Class Counsel.

XVII. DENIAL OF LIABILITY

77. Liberty has vigorously contested each and every claim in the Action.  Liberty maintains that it has consistently acted in accordance with the governing laws and

30

regulations of each State in which it does business, at all times. Liberty denies all the material allegations in the Action. Liberty nonetheless has concluded that it is in its best interest that the Action be settled on the terms and conditions set forth in this Stipulation. Liberty reached this conclusion after considering the factual and legal issues in the Action, the substantial benefits of a final resolution of the Action, and the expense that would be necessary to defend the Action through trial and through any appeals that might be taken.

78.     As a result of the foregoing, Liberty enters into this Stipulation without in any way admitting, conceding or acknowledging any fault, liability, or wrongdoing of any kind. Neither this Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Liberty of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind on the part of Liberty. This Stipulation shall not be offered or received in evidence in any action or proceeding in any court, administrative panel or proceeding, or other tribunal, as an admission or concession of liability or wrongdoing of any nature on the part of Liberty or any other person.

79.     Neither this Stipulation, nor the negotiations of the Class Settlement, nor the Class Settlement procedures, nor any act, statement or document related in any way to the Class Settlement negotiations or settlement procedures, nor any pleadings, or other document or action related in any way to the Stipulation shall be (1) offered into evidence in the Action or in any other case or proceeding in support of or in opposition to a motion to certify a contested class or (2) otherwise used in any case or proceeding whatsoever in support of or in opposition to a motion to certify a contested class. In the event the Class Settlement is not finally approved for

any reason, Liberty shall retain the right to object to the maintenance of the Action and/or any other case as a class action and to contest the Action and/or any other case on any ground.

## XVIII. PROTECTION OF RELEASED PARTIES

80. If the Settlement Class or any Class Member obtain(s) a judgment against any person based on a Released Claim and the person against whom that judgment is obtained (the "Judgment Debtor") asserts any claim with respect to that judgment against any Released Party, whether for indemnification, contribution, reimbursement, or otherwise, then the Class Member(s) who obtain(s) that judgment (the "Judgment Creditor(s)") shall be obliged, jointly and severally, to protect the Released Party against that claim as follows:

A. The Judgment Creditor(s) shall satisfy the claim against the Released Party by giving the Judgment Debtor a credit against, or otherwise reducing, the judgment obtained against the Judgment Debtor. The amount of that credit or reduction shall be equal to the amount of the claim asserted by the Judgment Creditor against the Released Party, up to the full amount of the judgment obtained against the Judgment Debtor.

B. No Judgment Creditor may accept, distribute, pledge, or otherwise dispose of any proceeds of any such judgment obtained against a Judgment Debtor unless and until the Judgment Creditor has satisfied his, her, or its obligations under paragraph 80A.

## XIX. MISCELLANEOUS PROVISIONS

81. Unless a different Effective Date is specified by paragraph 9, above, the Effective Date of the Settlement shall be the first date on which all of the following statements are true:

A. all parties have executed this Stipulation;

B. no party has terminated the Stipulation;

C. the Court has preliminarily approved this Stipulation and the Settlement as provided in paragraphs 30-31, above;

32

D.   Class Notice has been given to Potential Class Members as provided in paragraphs 33-35, above;

E.   the Court has entered a Final Judgment substantially in the form of Exhibit 2 hereto, approving this Stipulation and the Settlement without material alteration, releasing all of the Released Persons from all of the Released Claims, and dismissing the Action with prejudice and without leave to amend; and

F.   (i) the time to file an appeal from the Final Judgment has expired without the filing of any appeal(s) or (ii) any appeal(s) from the Final Judgment has/have been dismissed or the Final Judgment has been affirmed without material alteration and (iii) the passage of time and/or a decision of a superior appellate court has/have made further appellate review unavailable.

82.   The parties hereto and their undersigned counsel agree to undertake their best efforts and to cooperate with each other to effectuate this Stipulation and the terms of the Settlement, including taking all steps and efforts contemplated by this Stipulation, and any other reasonable steps and efforts which may become necessary by order of the Court or otherwise.

83.   The undersigned counsel represent that they are fully authorized to execute and enter into the terms and conditions of this Stipulation on behalf of their respective clients.

84.   Neither Class Counsel nor Plaintiff shall make any statements to the media about the Action or the Settlement, except to refer media inquiries to the public record of the Action.

85.   Except as otherwise provided, this Stipulation contains the entire agreement of the parties hereto and supersedes any prior agreements or understandings between them.  All terms of this Stipulation are contractual and not mere recitals and shall be construed as if drafted by all parties hereto. The terms of this Stipulation are and shall be binding upon each of

33

the parties hereto, upon each of their agents, attorneys, employees, successors and assigns, and upon all other Persons claiming any interest in the subject matter hereof through any of the parties hereto, including any Class Member.

86.     This Stipulation may be amended or modified only by a written instrument signed by counsel for all parties. Amendments and modifications may be made without additional notice to the Potential Class Members and/or Class Members unless such notice is required by the Court.

87.     This Stipulation shall be subject to, governed by, construed in light of, and enforced pursuant to the laws of the State of Illinois.

88.     The exhibits to this Stipulation are integral parts of the Settlement and are hereby incorporated and made parts of this Stipulation,

89.     To the extent permitted by law, this Stipulation may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Stipulation.  The Court shall retain jurisdiction over the parties, the Settlement Class, and the subject matter of the Action to enforce this provision.

90.     This Stipulation shall be deemed to have been executed upon the last date of execution by all the undersigned parties and/or counsel.

91.     This Stipulation may be executed in counterparts, each of which shall constitute an original.

Dated this _30th_ day of October, 2014.    HUSCH BLACKWELL

Robyn Bieli

Dated this _30th_ day of October, 2014.    VINSON & ELKINS L.L.P.

Russell Yager

*Attorneys for Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, The First Liberty Insurance Corporation, Liberty Personal Insurance Company, Liberty Insurance Corporation, Liberty Lloyds of Texas Insurance Company, LM General Insurance Company, LM Personal Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Safeco Insurance Company of Oregon, Safeco National Insurance Company, Safeco Surplus Lines Insurance Company, General Insurance Company of America, First National Insurance Company of America, American States Insurance Company, American States Preferred Insurance Company, and American Economy Insurance Company*

Dated this _30_ day of October, 2014.    SL CHAPMAN LLC

Robert W. Schmieder II

*Attorneys for Lebanon Chiropractic Clinic, P.C.*

35

US.2879379v.9