# EXHIBIT K

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LEBANON CHIROPRACTIC CLINIC, P.C.,
on behalf of herself and all others similarly
situated,

        Plaintiff,

    vs.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA, and
SAFECO INSURANCE COMPANY OF
ILLINOIS,

        Defendants.

CASE NO. 14-L-521

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AGREEMENT

The proposed settlement agreement should not be approved by this Honorable Court. The proposed settlement agreement violates several Massachusetts insurance law and it unilaterally alters material terms to the pre-existing insurance contracts of Massachusetts residents. Further, the class representative—an Illinois chiropractor—does not adequately represent the interests of Massachusetts policyholders and to the extend class counsel disagrees with this statement, class counsel has an irresolvable conflict of interest and thus should be barred from proceeding in this action. For this and all of the foregoing reasons, the proposed class action settlement agreement should be **DENIED.**

> A. *All policies issued to Massachusetts residents must be approved by the Commissioner of Insurance and the proposed class action settlement unlawfully attempts to rewrite the policy of insurance Liberty Mutual has with Massachusetts policy holders.*

All auto insurance policies written in Massachusetts must be first approved by the Massachusetts Commissioner of Insurance. Massachusetts General Laws Ch. 175, § 108 provides: "No policy of accident and sickness insurance shall be delivered or issued for delivery to any person in this commonwealth; until a copy of the policy and the table of rates or manual of risks of the company has been on file with the commissioner for at least thirty days, unless before the expiration of said thirty days the commissioner shall have approved the policy in writing; nor if the commissioner notifies the company in writing that in his opinion the form of said policy does not comply with the laws of the commonwealth, specifying the reasons for his opinion, provided that such action of the commissioner shall be subject to review by the supreme judicial court[.]" A policy for "Accident and sickness insurance" includes any policy or contract issued "[t]o insure, ... (c) against loss or damage to, or loss of use of, motor vehicles ...." M.G.L. c. 175, § 47, ¶ 6, subsection (c). Thus, an insurer may not unilateral alter the terms of an automobile insurance policy in Massachusetts.

The proposed settlement agreement attempts to modify all existing automobile insurance plans between Liberty Mutual ("Liberty") insureds and Liberty in the following way:

> By allowing Liberty to reimburse a provider at the lowest of several different indices (either the billed charge, 80th percentile of the Fair Health database, a possible state fee schedule, or a PPO) for five years into the future.[1]

---

[1] Settlement proposal ¶ 28.A.(i).

Such an allowance will mean Massachusetts providers will **balance-bill** Massachusetts policy holders for the remaining amount on unpaid balances.  Meaning, that whatever amount Liberty Mutual does not pay to the provider for the policy holder's treatment (in their mind, the larger amount the better), that amount will fall to the policy holder to pay. Mass. Medical Society v. Dukakis, 815 F.2d 790 (1st Cir. 1987) (holding that the Massachusetts statutory prohibition on balance billing (M.G.L. c. 112, § 2) only applies to providers in the Medicare context).  The requirement that a provider take 50% of UCR reductions translates into a contractual requirement for patients to pay the remaining 50% via balance billing; this alteration materially changes the terms of already existing policies solely to the detriment of Massachusetts policyholders.

Each policyholder in Massachusetts has an existing policy with Liberty which states that: "We[, Liberty,] will pay **all reasonable expenses** incurred as a result of the accident for necessary medical, surgical, X-ray and dental services." Massachusetts Standard Automobile Insurance Policy Part 2.A.  There is extensive case law in Massachusetts which has found that not only are Fair Health UCR reductions unreasonable, but also that such reductions are likely a consumer protection violation. Hartunian v. Pilgrim Ins. Co., 86 Mass. App. Ct. 670 (2014) ("In any event, use of a computer program does not excuse failure to comply with the clear requirements of [the PIP statute]; on the contrary, its use as a substitute for a practitioner's review of billing statements and underlying services provides **an additional basis for an inference of [the insurers] lack of good faith under [the consumer protection statute].**  Further, courts have found that the data possessed by Fair Health is not even reliable enough to pass the bare bones threshold for the admissibility of evidence! Lomibo, LLC d/b/a All State Pain Treatment and Therapy Center (Soto, Alba) v. Vermont Mutual Insurance Group, Mass. Super. Ct. No. 13-36CV-0201 (Dec. 5, 2014) ("Here, the Court finds that the FairHealth

database does not have the indicia of reliability necessary to be admissible"). Thus, by limiting its obligation to the lowest of the four indices listed above, Liberty is altering an existing contract to the detriment of Massachusetts policy holders who will be exposed to balance-billing for the remainder of a provider's unpaid bills should this Settlement be approved.

B. *The short time frame for providers to submit payments to Liberty for consideration means that providers will necessarily balance-bill policyholders on a frequent basis.*

The timeframe set for submitting payments for non-opt out providers is 60 days from the date of the Fairness Hearing. That means that providers will need to take time out of their full-time professions to cull through **10 years'** worth of PIP files to find ones where (1) Liberty rejected certain bills, and (2) the rejection was based solely on a UCR reduction. Such an unconscionable time frame will mean that even the best-intentioned provider will not be able to identify and submit every one of its possible claims nad thus will need to seek the remaining 50% reimbursement from the policyholder.

Liberty's abuse of timing is further evidenced by Liberty's economic estimate of the proposed Common Fund. Liberty estimates that it will pay $3.6 million dollars to class members. This figure is calculated based on 50% of what Liberty actually owes to claimants, so in reality Liberty thinks that $7.2 million dollars' worth of claims will be submitted for reimbursement as part of this settlement. Compared with Liberty's national market share it is obvious that Liberty estimates (read: prays) that only a small portion of potential claimants will actually be able to file claims and seek reimbursement. Liberty clearly believes that not all of the providers will seek reimbursement based on this settlement. One of the reasons the providers will not seek reimbursement is due to the unfair structure of this settlement agreement. In the end, the policyholder will have to pay the rest of the provider's bills.

Liberty's economic estimate is grossly low. By contrast to Liberty's $7.2 million common fund estimate, Metropolitan Life Insurance Company ("MetLife") submitted the amount it saved based on UCR reductions to the Federal Court for the District of Massachusetts in a similar suit. MetLife—based solely on its business in Massachusetts—had saved over $18 Million dollars on UCR reductions in a three year time frame! McGovern Physical Therapy Assocs. v. Metro. Prop. & Casualty Ins. Co., 802 F. Supp. 2d 306 (D. Mass. 2011). Based on data from 2013, MetLife writes for less than 5% of the Massachusetts private passenger automobile insurance market. By contrast, Liberty's market share in Massachusetts is over 11%.[2]

It is safe to say that Liberty Mutual is saving an obscene amount of money by limiting its payout on all UCR reductions in 38 states to only $3.6 million dollars. The unconscionably short time frame set by the parties in this suit is just one way they set out to force costs onto policyholders.

### C. The Illinois class representative does not adequately represent the interests of Massachusetts policyholders.

Federal Rule of Civil Procedure 23(a)(4) provides as a *prerequisite* to filing a class action, "One or more members of a class may sue or be sued as representative parties on behalf of all members **only if**:... the representative parties will fairly and adequately protect the interests of the class." Similarly, Illinois Civil code Art. II, Pt. 8, states: "An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class **only if the court finds: (3) The representative parties will fairly and adequately protect the interest of the class.**" As explained in detail above, there is nothing about this class action which is fair to Massachusetts policyholders. Thus, the named class representative—of which there is

---

[2] http://www.mass.gov/ocabr/docs/doi/media/2013appendixforweb.pdf.

only ONE for a 38 state class action—does not adequately represent the interests of Massachusetts policyholders. As such the action should not be approved in its present form as it relates to Massachusetts policyholders.

D. *To the extent class counsel disagrees with or argues a contrary position to this brief, class counsel is in violation of Illinois Supreme Court Rules of Professional Conduct and the ABA's Model Rules of Professional Conduct.*

The Illinois Supreme Court Rules of Professional Conduct states:
RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) **the representation of one client will be directly adverse to another client**; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or **by a personal interest of the lawyer.**[3]

In the present matter, class counsel is in clear violation of Rule 1.7(a)(1) and (2).[4] As an initial matter the Massachusetts policyholder has a substantial interest in maintaining its current contract with Liberty as it presently reads. The Massachusetts policyholder will be substantially prejudiced if the language is changed to that suggested in the proposed settlement agreement. This puts the Massachusetts policy holder in a directly adverse position to another of class counsel's client's—Lebanon Chiropractic. As such, class counsel should be removed from representing either party in this case.

Further, class counsel seeks payment to the tune of $1.2 million dollars for pushing this class action through. On its face, such a fee request is absurd given how favorable the terms of the settlement proposal are to the defendant. The

---

[3] The ABA Model rules uses identical language.

[4] Class counsel cannot absolve itself of this violation by invoking Rule 1.7(b) since class counsel has not obtained informed consent from this Massachusetts policyholder.

proposal will allow Liberty, for **FIVE YEARS** into the future, to reimburse providers at the lowest possible rate that it can! Part of the settlement proposal would mandate that Liberty use the Fair Health database to calculate provider reimbursements, when the Fair Health database is so unreliable that its calculations are not even admissible in Massachusetts State courts.

This Massachusetts policyholder can't help but wonder if it was **Liberty's** attorneys who did the substantial amount of the work crafting this settlement proposal and not this policyholder's "class counsel."

The fees class counsel seeks to recover puts class counsel's "personal interest" in directly and materially in conflict with Massachusetts policyholders who would be far better off not having their existing contracts with Liberty destroyed.

## CONCLUSION

In sum, the Settlement proposal is not just a bad deal for Massachusetts policyholders, but its final approval would be a violation of Massachusetts insurance laws. Further, final approval of this settlement agreement would be effectively allow Liberty to alter a pre-existing and binding contract between itself and Massachusetts residents to the serious financial detriment of those residents, and to do so with the legal backing of an Illinois state court. Such a scheme should not be allowed, and this Court should **DENY** final approval, or in the alternative remove all Massachusetts policyholders entirely from the agreement.

The undersigned reserves his right to supplement this brief with witness lists and exhibits in anticipation of appearing at the Fairness Hearing.

Respectfully submitted,
Objector,

Brian P. McNiff, Esq. BBO# 691655
10 King Place, Suite B
Cambridge, MA 02139
Brian.mcniff@gmail.com

### Certificate of Service

I hereby certify that I have this date mailed, first class, an original and true copy of the foregoing on counsel listed below, this ___15___ day of ___January___,

2015.

Brian P. McNiff, Esq.

Robert W. Schmieder II
SL Chapman LLC
330 N 4th St,
St. Louis, MO 63102