# EXHIBIT L

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LEBANON CHIROPRACTIC, P.C.,
Individually and on behalf of all others similarly
situated,

        Plaintiff,

vs.

LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA, and
SAFECO INSURANCE COMPANY OF
ILLINOIS,

        Defendants.

No. 14-L-521

## NOTICE OF INTENTION TO OBJECT
## OF DR. GREGORY GORDON, D.C.

Dr. Gregory Gordon, D.C., ("Dr. Gordon" or "Objector") hereby files this Notice of Intention to Object to the "Stipulation of Settlement" ("Stipulation") made between the above-captioned parties in this action and respectfully urges this Court to disapprove the final settlement or, in the alternative, remove all Massachusetts providers from final settlement class. Dr. Gregory Gordon, D.C. ("Dr. Gordon") files this Notice of Intention to Object pursuant to section XVI of the Stipulation.

Copies of all extra-jurisdictional opinions, rulings, statutes and rules referenced in this objection are attached hereto in the Appendix to this Objection.

## I.   DETAILED STATEMENT OF THE SPECIFIC LEGAL AND FACTUAL BASIS FOR EACH AND EVERY OBJECTION

Dr. Gordon is a Massachusetts Chiropractor that meets the criteria as a Provider Class Member, and hereby objects to the Stipulation.[1]  Like most Massachusetts providers, Dr. Gordon is well aware of the practice of automobile insurers using a computerized bill-review system to reduce the amount to be paid for medical treatment out of applicable insurance benefits; and like many other Massachusetts providers, Dr. Gordon has routinely recovered the full balance owed to him.

This class action involves the use of computerized bill-review systems by Liberty Mutual Insurance Company and several of its affiliates ("Liberty") to limit payments to medical providers and injured people for medical treatments covered under personal automobile policies.

The terms of the agreement of the Lebanon Chiropractic class action are not fair for Dr. Gordon or other Massachusetts medical providers.  Dr. Gordon objects to the Stipulations for the following five main reasons, summarized below and then discussed in further detail in the five following sections.

First, as discussed in **Section A**, the Stipulation does not meet the standard for settlement approval.  As an initial matter, the Stipulation is unfair to all Massachusetts providers. Massachusetts providers consistently obtain awards of 100% of their medical charges in cases where their bills were not paid based on computerized bill reviews, because the evidence gleaned from the bill review in inadmissible in state court.  The remaining factors necessary for approval have similarly not been met.

---

[1] The Provider Subclass is defined as every person who: provided Covered Treatment to a member of the Claimant Subclass; sought payment for that Covered Treatment under the MedPay and/or PIP coverage provided by a Subject Policy; and received from Liberty as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through the use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment.  Stipulation, ¶ 21, C (i-iii).

Second, as discussed in **Section B** of this Objection, the Stipulation is unjust because Massachusetts law entitles Dr. Gordon and other Massachusetts providers to far better relief than the Stipulation. The Stipulation prevents Dr. Gordon and other Massachusetts medical providers ("MA providers") from recovering the reasonable and necessary amounts they are owed for medical services provided to Personal Injury Protection ("PIP") claimants. **The Stipulation offers consideration of only 50% of an amount wrongfully withheld by Liberty** and due to a Massachusetts provider based on Ingenix data (and even this comes with multiple onerous conditions). Under Massachusetts law, Dr. Gordon and other Massachusetts providers are entitled to the full amount denied on the basis of Ingenix data. As explained in more detail below, under Massachusetts law, not only would the Stipulation fail to reimburse Dr. Gordon for all reasonable and necessary amounts owed to Dr. Gordon, but Massachusetts providers have successfully and affirmatively argued that Liberty is **statutorily prohibited** from using a computerized bill-review system for reducing payments to providers.

Third, as discussed in **Section C** of this Objection, the Stipulation does not comply with the Federal Rule of Civil Procedure 23(a)(4) or Illinois Civil code Art. II, Pt. 8. That is, the lone named class representative—an Illinois medical provider—does not adequately represent the interests of Dr. Gordon or Massachusetts providers. An Illinois medical provider is an inadequate representative in this case because Illinois does not have a mandatory no-fault insurance statute, or PIP statute. The Massachusetts Legislature has expressly enacted a law which prohibits the type of computerized bill review system which Liberty is trying to impose on Massachusetts providers through this class action. Liberty should not be permitted to circumvent Massachusetts Legislators or Massachusetts law by using a computerized bill review system to reduce reimbursements on reasonable and necessary medical treatment.

Fourth, as discussed in **Section D** of this Objection, the Stipulation imposes far too onerous a burden on Massachusetts providers. As it stands now, a Massachusetts provider will obtain 100% of any bill that Liberty denied on the basis of Ingenix data, plus costs and fees, by presenting the same information and documentation required to opt in to this Stipulation. Additionally, Dr. Gordon expects that most auto insurers that write insurance in Massachusetts will comply with the law, and will not deny claims for PIP benefits on the basis of a computerized fee review system such as Fair Health. Therefore, by binding Dr. Gordon and all Massachusetts providers in this Stipulation to accept such reductions for 5 years going forward, is nothing but an unwarranted limitation on benefits rightfully due.

Finally, as discussed in **Section E** of this Objection, the Stipulation would materially and unlawfully alter the terms of all Liberty auto insurance policies, to the detriment of Massachusetts providers. Massachusetts law states that Dr. Gordon, and all PIP providers, are deemed "a party" to insurance contracts entered into between Liberty and its policyholders. Further, in Massachusetts, an insurer may not unilaterally alter the terms of its insurance contracts. Rather, the contracts of insurance must be approved by the Commissioner of Insurance. Thus, Liberty may not unilaterally change terms to the insurance contract to which Dr. Gordon and all Massachusetts PIP providers are a party. By doing so via the Stipulation, Liberty will violate Massachusetts law.

### A. The Stipulation fails to meet the standard required for settlement approval in Illinois.

In approving a class settlement, this Court's primary obligation is to the class. Thus, this Court must initially determine whether a settlement is fair to absent class members. Waters v. City of Chicago, 95 Ill. App. 3d 919, 924, 420 N.E.2d 599, 603 (Ill. App. Ct. 1981) (court must consider whether settlement is "fair, reasonable, and in the best interest of all affected"). In

determining whether a proposed settlement is fair, reasonable, and adequate, "the primary concern is with the substantive terms of the settlement: 'Basic to this ... is the need to compare the terms of the compromise with the likely rewards of litigation.' " Weinberger v. Kendrick, 698 F.2d at 73 (quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1324 (2d Cir. 1990).

In determining whether this Stipulation is fair, this Court must analyze the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching the settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and amount of discovery completed. City of Chicago v. Korshak, 206 Ill. App. 3d 968, 972 (Ill. App. Ct. 1990); Steinberg v. Sys. Software Assoc., Inc., 306 Ill. App. 3d 157, 163 (Ill. App. Ct. 1999). The first factor is the most important factor in this Court's analysis. Steinberg, 306 Ill. App. 3d at 170.

As discussed in more detail in **Section B** below, Massachusetts providers are virtually certain of recovering 100% of their medical charges when they bring cases in Massachusetts state courts. The reason for this outstanding success rate is, in part, the fact that the computerized bill review data (whether Ingenix or Fair Health) is inadmissible in state courts. The success of Massachusetts providers in these actions is the primary reason this court should not bind Massachusetts providers to a recovery of only 50% of their outstanding medical costs. Dr. Gordon's experience and prominence as a Massachusetts provider has enabled him to assert, upon information and belief, that most of the remaining factors also indicate that the Stipulation

5

should not be enforced against Massachusetts providers (for example, the reaction of class members in Massachusetts has been exceedingly negative. Dr. Gordon request that this Court conclude that the settlement agreement is not fair and not in the best interests of the Massachusetts providers because it does not confer enough value to those providers and that this Court deny final settlement approval, or in the alternative, remove Massachusetts providers from its scope.

### B. The Stipulation is unfair to Dr. Gordon and all Massachusetts providers.

Massachusetts law requires that all policies of automobile insurance issued to Massachusetts drivers contain a no-fault accident provision. This PIP provision covers medical payments and lost wages to the injured parties of an automobile accident regardless of who is at fault in accident. M.G.L. c. 90, § 34M; Malave v. Allstate Ins. Co., 24 Mass.App.Ct. 901 (1987). PIP benefits were instituted to provide injured parties with their "most pressing items of cost without the complication and time involved in determining the party at fault for the motor vehicle accident[.]" Fascione v. CNA Ins. Companies, 435 Mass. 88 (2001). Among other things, M.G.L. c. 90, § 34M (also referred to as "the PIP statute") creates a contractual relationship between an unpaid PIP provider and the insurance company. The contractual relationship allows a provider to submit its bills to an automobile insurer for the reasonable and necessary medical treatment provided to motor vehicle accident victims. See M.G.L. c. 90, § 34M. The PIP statute deems the unpaid provider "a party" to the contract between the insurer and the policy holder, and after 30 days from the date of service have passed, allows the provider to bring suit to seek all reasonable and necessary medical costs, the costs for bringing the action, and the costs of its attorney. Id.

The Stipulation reduces Dr. Gordon's ability to be reimbursed for reasonable and necessary medical treatment that Dr. Gordon has provided to Massachusetts motor vehicle accident victims, in direct contradiction to rights granted to Dr. Gordon under the PIP statute. The Stipulation would, for a period of five years into the future, allow Liberty to reduce my medical reimbursements to the lowest of four different indices (either the billed charge, 80th percentile of the Fair Health database, a possible state fee schedule, or a Preferred Provider Organization ("PPO") contract).[2]   Allowing Liberty to deny payments based on any of the proposed indices would essentially permit Liberty to violate Dr. Gordon's rights under the PIP statute.   The sanctioning of Liberty's use of a computerized bill review system such as Fair Health, Inc. would eviscerate Dr. Gordon's express statuary rights under Massachusetts PIP law.

The Massachusetts PIP statute provides that "no insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the [Provider Licensing Statute] if refusal [to pay PIP and MedPay benefits] is based solely on a medical review of the bill or of the medical services underlying the bill, …**unless the insurer has submitted for medical review, such bill or claim to at least one practitioner registered or licensed under [Provider Licensing Statute.]**" The terms of the statute require an insurer to submit each bill to a practitioner licensed under the licensing statute prior to reducing a provider's reimbursement. Therefore, a computerized bill review system, like the one utilized by Liberty, is not a permissible way to reduce a provider's bill in Massachusetts.

The Massachusetts Appeals Court has recently commented on an insurer's obligation to conduct a bill review using a practitioner licensed under the Provider Licensing Statute.  In Hartunian v. Pilgrim Ins. Co., 86 Mass. App. Ct. 670 (2014) (See Appendix), the Appeals Court

---

[2] Stipulation, ¶ 28.A(i).

7

held that an insurers reliance on a computerized bill review, on its own, could constitute a consumer protection violation since the computerized bill review would directly contradict the language of the PIP statute.  Specifically, the court stated:

> In any event, use of a computer program does not excuse failure to comply with the clear requirements of [the PIP statute]; on the contrary, its use as a substitute for a practitioner's review of billing statements and underlying services provides **an additional basis for an inference of [the insurers] lack of good faith under [the consumer protection statute]**.

Id. at 673.

As is clear from the PIP statute and the Massachusetts Appeals Courts[3], all bill reviews in Massachusetts must be conducted by one licensed under the Provider Licensing Statute.  Thus, in the present Stipulation, the mandate that a Massachusetts provider accept less than the full amount it is owed, based on a computerized bill review runs contrary to the law in Massachusetts, and may even constitute a consumer protection violation in and of itself.

Further, Massachusetts district appellate courts have addressed the reliability of computerized bill review data in the context of the admissibility of the data as evidence.  In Davekos v. Liberty Mutual Insurance Co., 2008 Mass.App.Div. 32 (App. Div. Dist. Ct. N.D. 2008) (**See Appendix**), the Massachusetts District Court Appellate Division for the Northern District concluded that the computerized bill review data was not admissible as evidence of the usual and customary rate being charged by chiropractors for a particular treatment.  Instead, the court barred the evidence and held that the computerized data lacked the necessary indicia of reliability to be admissible, failing as it did to "show that all persons in the chain of communication, from the observer to the preparer, reported the information as a matter of

---

[3] The Massachusetts Appeals Court is the second highest appellate court in the state system.

8

business duty or business routine." Similarly, in N.E. Physical Therapy v. Liberty Mutual Insurance Co., 2011 Mass. App. Div. 135 (App. Div. Dist. Ct. N.D. 2011) (**See Appendix**), the same court found that "the unverified voluntary contributions of raw data, statistically analyzed and manipulated and ultimately disclaimed by Ingenix, resulted in billing data founded on little more than conclusions or opinions, and certainly not objective facts."

Moreover, the most recent District Court decision on this issue found that the data possessed by Fair Health, Inc. was not sufficiently reliable to be admissible into evidence at trial. Lomibo, LLC d/b/a All State Pain Treatment and Therapy Center (Soto, Alba) v. Vermont Mutual Insurance Group, Mass. Dist. Ct. No. 13-36CV-0201 (Dec. 5, 2014) ("Here, the Court finds that the FairHealth database does not have the indicia of reliability necessary to be admissible.") (**See Appendix**). Judgment thus entered in favor of the plaintiff. The Stipulation attempts to hold FairHealth data as the standard for fee reductions, however such data is not reliable enough to be admitted as evidence in Massachusetts courts.

Further, the Stipulation would allow Liberty to base reductions on the use of a PPO. Massachusetts providers are generally not subject to PPO reductions given the stringent standards to which insurance companies are held and arguably the PPO reduction would violate Massachusetts law. M.G.L. c. 176D, § 3A provides:

> The following shall be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance ... (iii) seeking to set the price to be paid to any health care facility or provider by reference to the price paid, or the average of prices paid, to that health care facility or provider under a contract or contracts with any other nonprofit hospital service corporation, medical service corporation, insurance company, health maintenance organization or preferred provider arrangement[.]

9

Dr. Gordon and other Massachusetts providers are generally not subject to PPO bill reductions given the strict statutory regulation of the practice. Thus, this court should not allow Liberty to base reductions on a model which is not sanctioned in Massachusetts.

Finally, the Massachusetts Legislature has further evidenced their intent to ease the burden on Massachusetts health care providers by enacting a statute which allows the provider to submit medical bills into the record as proof of the bills reasonableness. M.G.L. c. 79G provides, "In any proceeding commenced in any court, commission or agency, an itemized bill and reports, … relating to medical, dental, hospital services, prescriptions, or orthopedic appliances rendered to or prescribed for a person injured, or any report of any examination of said injured person, … shall be admissible as evidence of the fair and reasonable charge for such services or the necessity of such services or treatments[.]" It is clear from the statutory landscape that Massachusetts law gives providers substantial and robust rights to be compensated for their medical services. The rights given Massachusetts providers are substantially greater than the rights purportedly given to providers under the pending Stipulation.

### C. The Illinois class representative does not adequately represent the interests of Dr. Gordon or Massachusetts providers.

Federal Rule of Civil Procedure 23(a)(4) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if:… the representative parties will fairly and adequately protect the interests of the class." Similarly, Illinois Civil code Art. II, Pt. 8, states: "An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds: (3) The representative parties will fairly and adequately protect the interest of the class." The named representative from Illinois does not meet the requirements for adequate representation as it relates to Massachusetts providers.

Significantly, in Illinois, PIP benefits are an optional coverage, not required by state law. *See* Illinois Code of Insurance, Ch. 7, Art. VI; Foster v. Crum & Forster Ins. Cos., 36 Ill. App. 3d 595, 596 (App. 5th Dist. 1976) (explaining that "[i]In 1971, the General Assembly enacted the Compensation of Automobile Accident Victims Act (Ill. Rev. Stat. 1971, ch. 73, par. 1065.150 *et seq.*), commonly known as the 'no fault' insurance act[,]" but that "[a]fter significant portions of the Act were declared invalid by the Supreme Court (Grace v. Howlett, 51 Ill. 2d 478 (1972)), [] the Act was thereafter repealed[.]"). By contrast, PIP coverage is statutorily required of all policies issued to Massachusetts drivers.

Thus, for Illinois providers, the Stipulation's terms may be a permissible way to resolve the pending dispute. However, Massachusetts has had a PIP Statute since 1970[4], which specifically describes the rights and obligations of PIP providers and insurers. As such, the Stipulation is not fair to the Massachusetts parties who must adhere to the requirements of their PIP statute.

The named class representative---of which there is only 1 for a 38 state class action— does not share the same rights and remedies and therefore cannot adequately represent the interests of Massachusetts providers.

### D. *The Stipulation places onerous burdens on Dr. Gordon and Massachusetts providers, which burdens significantly limit their rights.*

The Stipulation requires that a provider attach all of the "Required Documentation" for each claim, which includes "any documents an MA provider received from Liberty regarding the claim, including Explanations of Benefits (EOBs), Explanations of Payments (EOPs) or Explanations of Reviews (EORs) and correspondence regarding the claim, and any documents

---

[4] Metropolitan Property & Casualty Ins. Co., v. Blue Cross and Blue Shield of Massachusetts, Inc., 451 Mass. 389, 391 (2008).

11

showing whether any person other than Liberty was billed for-or paid-any of the costs of any covered treatment." A Massachusetts provider would have to attach all of the Required Documents for every individual claim by the arbitrary deadline of April 6, 2015.

By contrast, in Massachusetts a provider's ability to seek reimbursement for PIP treatment will maintain for 6 years from the date of breach, based on the applicable statute of limitations. See, M.G.L. c. 260, § 2. Thus, the requirement that Massachusetts providers gather the requisite documents on each and every bill that Liberty denied on the basis of Ingenix, and submit such documents to Liberty by April 6, 2015 would substantially infringe on a providers statutory and common law right to reimbursement.[5]

Moreover, as mentioned above, a Massachusetts provider currently bears no obligation to accept any reductions for any time period going forward. The provision in the Stipulation placing such an obligation upon Massachusetts providers likely stands as the most offensive provision in the entire Stipulation.

This Court should deny final approval of this Stipulation, or in the alternative exclude Massachusetts providers from its purview, so that Massachusetts provider can pursue their claims against Liberty and seek 100% of the money the provider is owed, plus all costs and fees.

For all of the reasons stated, the class action should not be approved in its present form as it relates to Massachusetts providers.

### E. All contracts of insurance issued in Massachusetts must be first approved by the Commissioner of Insurance and the Stipulation unlawfully attempts to rewrite the parties' contract of insurance.

---

[5] Additionally, Massachusetts law prohibits a PIP provider from balance-billing the accident victim; thus if the Stipulation is approved a provider would not be able to ever recoup 100% of the expenses it is owed. See In the Matter of Cataldo Ambulance Services, Inc., No. 09-5120 (Mass. Super. Ct. Dec. 3, 2009).

12

All automobile insurance policies written in Massachusetts must be first approved by the Massachusetts Commissioner of Insurance. Massachusetts General Laws Ch. 175, § 113A provides: "No motor vehicle liability policy ... shall be issued or delivered in the commonwealth until a copy of the form of the policy has been on file with the commissioner for at least thirty days... ." Thus, an insurer may not unilateral alter the terms of an automobile insurance policy in Massachusetts.

In Massachusetts, a PIP provider is deemed "a party" the contract of insurance with Liberty mutual in all cases where the provider is unpaid for a period of thirty days. M.G.L. c. 90, § 34M, fourth par. As such, the provider is bound by all the benefits and burdens to which the parties intended the third-party beneficiary be bound. Boehm v. Premier Ins. Co., 2003 Mass. App. Div. 121, 122 (App. Div. Dist. Ct. N.D. 2003) ("In this action, Boehm [a chiropractor] is seeking only money, clearly a remedy at law. [The PIP Statute creates for the provider]...the ability of a practitioner providing medical services to sue directly the insurance company with which it has no privity of contract. In this regard, Boehm's action is analogous to a suit by a third-party beneficiary.").

The Stipulation attempts to unlawfully modify all existing automobile insurance plans with Liberty by, among other things, allowing Liberty to reimburse a provider all existing claims and for a period of five years into the future at the lowest of the four indices mentioned above.

## II. STATEMENT OF WHETHER DR. GORDON INTENDS TO APPEAR AT THE FAIRNESS HEARING AND LIST OF ANY AND ALL WITNESSES TO WHOM DR. GORDON INTENDS TO CALL AT THE FAIRNESS HEARING

Dr. Gordon does not intend to appear at the Fairness Hearing as the short notice, the cost, and the time commitment associated with traveling to Illinois bars such an appearance. However, Dr. Gordon's attorney, Ryan Alekman, Esq., will appear on Dr. Gordon's behalf.

13

Further, Attorney Alekman, on Dr. Gordon's behalf, does not intend to call any witnesses at the Fairness hearing.

## CONCLUSION

In sum, the Stipulation will not only harm Dr. Gordon, other Massachusetts providers, and Massachusetts policyholders, but in addition its final approval will constitute a violation of Massachusetts laws. Further, final approval of this settlement agreement would effectively condone Liberty to alter a pre-existing, mutually agreeable binding contract between itself and Massachusetts providers, to the serious financial detriment of those providers. As such, Dr. Gordon asks that this Honorable Court **DENY** final approval of the Stipulation, or in the alternative remove all Massachusetts providers entirely from the agreement.

Respectfully submitted,

Dr. Gregory Gordon, D.C.
Of Gordon Chiropractic, Inc.

Ryan Alekman, Esq.,
Attorney for Dr. Gordon

Alekman & DiTusa, LLC
1550 Main Street
Springfield, MA 01103
BBO# 636916

Date: 1/25/15

14

_____
Stephen Holstrom, Esq.,
Attorney for Dr. Gordon

Alekman & DiTusa, LLC
1550 Main Street
Springfield, MA 01103
(413) 781-0000
BBO# 682729

_____
Matthew T. LaMothe, Esq.,
Attorney for Dr. Gordon

The Law Office of PIP Collect, LLC
2 Salem Green
Salem, MA 01970
(978) 745-7950
BBO# 677656

## Certificate of Service

I hereby certify that I have served a copy of the foregoing document by UPS overnight mail, and first class mail, upon all counsel of record this 21st day of January, 2015.

_____
Matthew T. LaMothe, Esq.

15