# EXHIBIT Q1

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.893 Filed 05/30/18 Page 2 of 11

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)

40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

KeyCite Yellow Flag - Negative Treatment

Not Followed as Dicta In re Biery, Bankr.E.D.Ky., December 11, 2015

790 F.2d 524
United States Court of Appeals,
Sixth Circuit.

Clara R. KING, Plaintiff-Appellant,

v.

SOUTH CENTRAL BELL TELEPHONE AND
TELEGRAPH COMPANY and Communication
Workers, AFL–CIO, Defendants-Appellees.

No. 84–5186.
|
Argued Oct. 8, 1985.
|
Decided May 14, 1986.

**Synopsis**

Female employee brought sex discrimination action against employer and labor union, based on demotion when she returned from maternity leave. The United States District Court, Eastern District of Tennessee, Robert L. Taylor, J., entered summary judgment against employee, and she appealed. The Court of Appeals, DeMascio, District Judge, sitting by designation, held that: (1) doctrine of res judicata applied to employee's suit, based on earlier judgment entered in class action suit against employer; (2) notice mailed to employee regarding settlement of prior class action was not constitutionally deficient; and (3) any inadequacy in class representative's representation of employee was compensated for sufficiently by district court's knowledge of employee's objections to class settlement.

Affirmed.

Merritt, Circuit Judge, dissented and filed opinion.

West Headnotes (5)

**[1]**   **Judgment**
  Persons Represented by Parties

  Doctrine of res judicata applied to suit by employee against employer, arising out of employee's demotion when she returned

from maternity leave, where employee had previously participated in class action against employer which arose out of employer's delay in reinstating female employees after maternity leave, where judgment and class action was entered by court of competent jurisdiction, and where it purported to finally settle all claims arising out of said discriminatory practices. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

9 Cases that cite this headnote

**[2]**   **Compromise and Settlement**
  Notice and Communications

  Notice mailed to individual class member regarding proposed class action settlement was not constitutionally deficient, where notice informed member of pendency of settlement and that settlement related to all claims arising out of employer's delay in "reinstating" female employees, though class member interpreted this to mean that claims arising out of her "demotion" when she returned from maternity leave were not covered. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

3 Cases that cite this headnote

**[3]**   **Federal Civil Procedure**
  Hearing and Determination; Decertification;Effect

  Whether class representative has adequately represented individual member of class, so that judgment entered in class action will be binding on member, is factual finding for court before whom class action is pending. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

10 Cases that cite this headnote

**[4]**   **Compromise and Settlement**
  Particular Applications

  Any inadequacy in class representative's representation of individual member was compensated for sufficiently, so that judgment

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.894 Filed 05/30/18 Page 3 of 11

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)

40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

was binding on member, where district court received and was aware of member's objections to class settlement, and where member had retained own counsel in ample time to challenge settlement by appeal. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

3 Cases that cite this headnote

[5] **Judgment**
&#128073; Persons Represented by Parties

**Judgment**
&#128073; Identity of Subject-Matter

Employee's claim against labor union, which arose out of same discriminatory employment practices as those which gave rise to class action against employer, was barred by res judicata, where both employee and union participated as plaintiffs in prior class action. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

15 Cases that cite this headnote

**Attorneys and Law Firms**

**\*525** Edward G. Phillips (argued), John B. Rayson, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for plaintiff-appellant.

Rebecca M. Lough, Atty., Michael J. Passino, Barrett & Ray, P.C., Nashville, Tenn., Thomas W. Moore (argued), John C. Carey, Gen. Sol., Birmingham, Ala., Donald R. Livingston (argued), Adair & Goldthwaite, P.C., Atlanta, Ga., for defendants-appellees.

Before MERRITT and CONTIE, Circuit Judges, and DeMASCIO [*], District Judge.

**Opinion**

DeMASCIO, District Judge.

On October 28, 1983, Clara R. King (King) filed this sex discrimination action in the United States District Court for the Eastern District of Tennessee against South Central Bell Telephone Company (Bell) and her union, the

Communication Workers of America, AFL–CIO (CWA). King alleged that Bell violated Title VII, 42 U.S.C. § 2000e et seq., by reinstating her to a lower paying job when she returned to work after a maternity leave in March 1977. She contends that CWA violated Title VII by acquiescing in Bell's discriminatory practices. Both Bell and CWA moved for summary judgment, contending that King's action was barred by the settlement of a prior class action entitled *Communication Workers of America, AFL–CIO v. South Central Bell Telephone Co.,* 515 F.Supp. 240 (D.C.La.1981). On January 31, 1984, the district court granted appellees' motions. King filed this timely appeal requiring us to consider whether the district court erred in holding that her claims were barred by the doctrine of *res judicata* due to the settlement of the prior class action; in holding that the class action notice was sufficient to advise King of her rights and comported with due process requirements; in holding that the class representatives adequately represented King; and in holding that King's claims against CWA were similarly barred.

For the reasons set forth below, we affirm.

Initially, we review the salient facts pertaining to the class action and the events leading up to this cause of action. On July 3, 1973, CWA and Harriett Wilhite brought a class action in the Eastern District of Louisiana, alleging that Bell's policies and practices with respect to maternity benefits discriminated against its female employees. The issue presented in that case was whether the disparity in treatment between male employees on disability leave under Bell's employee benefit plan and female employees on maternity leave imposed an unreasonable burden in violation of Title **\*526** VII. On October 21, 1976, the class was certified under Fed.R.Civ.P. 23(b)(2) as consisting of all female non-supervisory employees of Bell who allegedly suffered as a result of the benefit plan during a pregnancy-related absence that occurred, at least in part, after October 13, 1971. On April 1, 1981, the Louisiana district court held that Bell violated Title VII by denying guaranteed reinstatement to former or equal positions to its female employees on maternity leave. On December 9, 1982, a stipulation and a settlement agreement were reached between Bell, the class and CWA, settling all claims against Bell relating to maternity leave of absence policies subject to the class action.

On February 11, 1983, the court entered an order preliminarily approving the settlement, without prejudice

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.895 Filed 05/30/18 Page 4 of 11

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)

40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

to the rights of class members to object to the proposed stipulation and settlement agreement. A final order approving the settlement agreement was entered August 24, 1983.

### *King's Claim*

King was hired by Bell in August 1959. Prior to the incident giving rise to this litigation, she had been employed with Bell for 17½ years, the last 1½ years as a frame attendant. In 1976, King became pregnant. Rather than a maternity leave, she requested any other type of leave (i.e., vacation or sick leave) in order to be assured of returning to her former position. Under Bell's benefit plan, employees taking maternity leave were not guaranteed reinstatement to their former jobs. Bell denied King's request to take a non-maternity leave. On February 4, 1977 she took a maternity leave, giving birth to her child the next day.

On March 1, 1977, King advised Bell that she was ready to return to work. On March 14, 1977, she was returned, not as a frame attendant, but to a different job, resulting in a salary decrease of $45 per week. King claims that CWA denied her request to file a grievance against Bell. This is the basis for her claim that CWA acquiesced in Bell's discriminatory practices. On June 22, 1977, King filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC) against both appellees. The EEOC investigated and, on April 28, 1983, issued a determination finding reasonable cause to believe there was a Title VII violation. On August 2, 1983, the EEOC issued a right-to-sue letter. [1]

### *King's Notice of the Class Settlement*

King first became aware of the class action on March 10, 1983, when she received a packet of documents relating to the proposed class settlement from counsel representing the named plaintiffs. One of the documents, entitled "Important Notice," read as follows:

> IF YOU WERE A NON-SUPERVISORY FEMALE EMPLOYEE OF SOUTH CENTRAL BELL ON MATERNITY LEAVE BETWEEN OCTOBER 13, 1971 AND AUGUST 7, 1977, AND YOU WERE NOT REINSTATED TO YOUR JOB OR WERE

> DELAYED IN REINSTATEMENT TO YOUR JOB WHEN YOU REQUESTED TO RETURN TO WORK FROM YOUR MATERNITY LEAVE, YOU MAY BE OWED A SETTLEMENT FROM THE COMPANY.

> BE SURE TO READ THE ATTACHED MATERIALS. FAILURE TO FILE A CLAIM MAY RESULT IN YOUR LOSING YOUR RIGHT TO A SETTLEMENT FROM THE COMPANY.

Another document, entitled "Notice of Proposed Class Action Settlement," describes the class action, advises class members of the proposed settlement and their right to object, and explains the procedure for recovering part of the settlement. [2]

**\*527** The plaintiff class is described as being divided into two groups, with a notation that the proposed settlement provides monetary and reinstatement relief only to those employees in category (2):

> (1) Those who returned to work at South Central Bell directly from their maternity leaves or who voluntarily terminated their employment with South Central Bell following the expiration of their leaves; and

> (2) Those who requested to return from their maternity leaves and were delayed in such reinstatement.

Accompanying the notice was a fill-in-the-blanks claim application, which contained the following note:

> UNLESS YOU INTEND TO CLAIM THAT SOUTH CENTRAL BELL DELAYED YOUR RETURNING TO WORK DURING OR AT THE END OF YOUR MATERNITY LEAVE, YOU CAN STOP HERE, AS YOU WILL NOT BE ELIGIBLE FOR ANY MONETARY OR REINSTATEMENT RELIEF.

### *King's Response to the Class Action Notice*

King filled out the claim application solely with respect to the 8-day delay between her request to return to work and

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.896 Filed 05/30/18 Page 5 of 11

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)
40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

the date on which Bell actually returned her. This claim amounted to approximately $400. King did not attempt to make claim for the wages she lost due to being returned to the lower-paying job. She estimates that this claim, with interest, presently totals over $13,000. Along with the completed claim application, King sent the court the following letter:

I am submitting the attached to be a part of the case no. 73–1771 providing that accepting the class action does not mean that I have given up my rights to claim for the following:

1. First and most important is the loss of 10 days of seniority ... One days [sic] seniority may at some time make the difference between my keeping or losing my job.

2. Losing my Frame Attendant position and having to accept an Assignment Clerks [sic] position in order to maintain my employment (from high on the promotion ladder to near the bottom. A significant salary reduction for 3 years.)

.. I do not want to relinquish that right for items 1 and 2 above.

King sent a separate letter to counsel for the class representatives, forwarding them copies of her claim application. That letter reads, in part:

I think you can appreciate my concern for at least two areas that do not appear to have been addressed to the court. I am sure that I am not the only one and would hope that additional litigation wouldn't be necessary to resolve these additional issues.

Counsel for the class responded to appellant's letter, however, not in terms of her wage loss claim.[3] King did not seek the advice of independent counsel until after entry of the final order approving the stipulation and settlement agreement.

*528 *The Final Class Action Settlement*

On June 15, 1983, the court entered a consent supplemental memorandum order that allowed for retroactive crediting of seniority for employees, such as King, who could establish that their request to return from a maternity leave of absence was delayed by Bell. On August 24, 1983, the court entered its final order approving the stipulation and settlement agreement. The court noted that:

Of approximately 1,600 claims filed with the Court, fewer than ten filed any objections at all to the settlement, the only objections of substance being contentions that the settlement did not specifically provide that net credited service (seniority) would be granted to claimants for the period between the time they should have been reinstated and the time they actually returned to work.

*General Principles of Res Judicata*

**[1]** We now separately examine each ground for appeal and in the order set forth above. King initially contends that the district court erred in dismissing her action on the basis of the *res judicata* effect of the class action. In the recent decision of *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224 (6th Cir.1981), this court spoke of the doctrine of *res judicata* in the following manner:

The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. A final judgment on a claim is res judicata and bars relitigation between the same parties or their privies on the same claim. It bars relitigation on every issue actually litigated or which could have been raised with respect to that claim. To constitute a bar, there must be an identity of the facts creating the right of action and of the evidence necessary to sustain each action.

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.897 Filed 05/30/18 Page 6 of 11
King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)
40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

*Id.* at 1227 (citations omitted).

In the context of class actions, these principles apply with equal and even greater force. For a prior judgment to bar an action on the basis of *res judicata,* the parties must have been identical in both actions; the prior judgment must have been rendered by a court of competent jurisdiction; there must be a final judgment on the merits and both cases must involve the same cause of action. *Kemp v. Birmingham News Co.,* 608 F.2d 1049 (5th Cir.1979). In *Kemp,* the Fifth Circuit held that a consent judgment entered in a class action barred, by *res judicata,* a member of that class from pursuing his own claim. Plaintiff Kemp brought a Title VII race discrimination action against his former employer. The district court granted defendant summary judgment on *res judicata* grounds because plaintiff was a class member in a prior class action against the employer based on race discrimination. Despite plaintiff's argument that his claim was not identical to those that were the subject of the class action, the Fifth Circuit affirmed, holding:

> The main purpose of a class action is to dispose of the claims of numerous parties in one proceeding. If the defendants in class action lawsuits for employment discrimination could not rely on the binding effect of consent decrees they would have no incentive to settle such cases.

*Id.* at 1053.

The court discussed the degree of scrutiny a district court should employ in deciding whether a prior class action has a *res judicata* effect:

> In applying the doctrine of *res judicata,* it is also important to keep in mind that *res judicata* is a principle of peace. Under its influence an end is put to controversies. Parties and their privies are made to abide definitive and final judgments and litigations are concluded. The rule of *res judicata* does not go on whether the judgment relied on was a right or a wrong decision. It rests on the finality of judgments in the interest of the end of litigation and it requires that the fact or issue adjudicated remain adjudicated.

*Id.* at 1052.

It is against this background that we examine King's contention that her action **\*529** should not have been barred on *res judicata* grounds. King admits she was a member of the prior class action against Bell. Therefore, with respect to her present claim against Bell, there is an exact identity of parties. The prior judgment was entered by the District Court for the Eastern District of Louisiana, a court of competent jurisdiction. The prior judgment was clearly a final one in that it adjudicated all claims or potential claims of Bell employees relating to discrimination based on its maternity leave policies. Finally, both the prior class action and this cause of action deal with a delay in reinstatement to a former job after a maternity leave.

We initially conclude, therefore, that unless there is merit to one of King's other assignments of error, the district court properly concluded that this claim is barred on *res judicata* grounds by the class settlement.

*Adequacy of Notice*

**[2]** King argues that the notice she received did not inform her that her claim for lost wages was included in the class action and, therefore, was constitutionally deficient.

In resolving this issue, we are guided by the Fifth Circuit decision of *Johnson v. General Motors Corp.,* 598 F.2d 432 (5th Cir.1979). In *Johnson,* the issue was whether *res judicata* barred the maintenance of a race discrimination action by an absent member of a previous class action challenging the same discriminatory practices. The class representatives sought solely injunctive relief and, in accordance with Fed.R.Civ.P. 23(b)(2), no notice was provided to absent class members. The district court held that plaintiff's claims were fully barred and that no notice was necessary to bind absent class members. On appeal, the Fifth Circuit held that the portion of plaintiff's cause of action, which sought monetary relief, was not barred by the class action. It is not difficult to understand why the

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.898 Filed 05/30/18 Page 7 of 11
King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)
40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

court reached this result, since plaintiff received no notice whatsoever of the pendency or resolution of the class action. Further, in reaching this result, the court discussed the degree of notice required in order for principles of *res judicata* to attach:

> Where [i]ndividual monetary claims are at stake, the balance swings in favor of the provisions of some form of notice. It will not always be necessary for the notice in such cases to be equivalent to that required in (b)(3) actions. In some cases it may be proper to delay notice until a more advanced stage of the litigation; for example, until after class-wide liability is proven. Before an absent class member may be forever barred from pursuing an individual damage claim, however, due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it.

*Id.* at 438 (citations omitted).

We conclude that the notice of the proposed class action settlement was sufficient to put King on notice of the pendency of that action. The notice also sufficiently apprised King that her claims arising out of Bell's maternity leave policies were properly adjudicated in that action. King received personal notice through the mail and was afforded an opportunity to make a claim, file objections or do both. King chose to do both, filling out the claim application and sending objections in letter form to the court.

The district court properly resolved the adequacy of notice holding that:

> Although the notification of the proposed settlement received by plaintiff may have been subject to some misinterpretation, a review of the entire record makes clear that the class action adjudicated all claims presented in this case.

---

Although plaintiff was uncertain of the full scope of the class action, she filed an objection to the settlement in the event that the class action did fully cover her claim. This objection was considered and apparently rejected by the Louisiana Court.

**\*530** The "Important Notice" unambiguously states that "if you were ... delayed in reinstatement to your job when you requested to return to work from your maternity leave, you may be owed a settlement from the company." King's claim that Bell failed to reinstate her to her former job as frame attendant clearly falls within this language. Moreover, the notices and proposed settlement agreement are replete with warnings that failure to file a claim may result in the loss of a right of action. Even if it can be argued that the notice was somewhat ambiguous, King could not opt out because the action did not include that privilege. The most she could do was object to the decree and she did.

King understood the notice to the extent that she took advantage of the opportunity to file objections, in the form of a letter to the court. Proof that the trial court considered King's letter is the fact that the proposed settlement agreement was revised to include the seniority claim that King, along with other class members, brought to the court's attention by way of objections.

We, therefore, conclude that the notice King received regarding the proposed class action settlement was not constitutionally deficient. It certainly advised her of her rights and comported with due process requirements.

*Adequacy of Class Representation*

In disposing of King's contention that the class representative did not adequately protect her interests, the district court concluded that:

> This Court must assume that the Louisiana Court considered the dollar amounts of the settlement as well as all objections to the settlement before approving the settlement. As in most settlements the plaintiff accepts less than she believes her claim is worth. The fact that plaintiff received less in

settlement than she would have received had the case gone to trial does not mean that she was inadequately represented.

*Nathan v. Rowan,* 651 F.2d 1223 (6th Cir.1981) was an appeal of a shareholder's derivative action dismissed by the district court on *res judicata* grounds on the basis of a prior shareholder's derivative action against the same corporation and directors. This court followed *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) holding that due process and full faith and credit mandate that absent class members are not bound by a judgment in a class action unless the class representative provided adequate and full representation.

**[3]** **[4]** The adequacy of representation is a factual finding for the court before whom the class action is pending. 651 F.2d at 1227–28. *See also Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir.1978), wherein the court discussed the adequacy of class representation on direct appeal of a class action. The record before us contains no findings by the Louisiana court with respect to the adequacy of representation. King has framed this issue in terms of the letters she sent to counsel, which went unanswered. The district court properly concluded that King's letters contained objections, rather than inquiries and, therefore, counsel's obligation was to present them to the court rather than respond to King and attempt to secure coverage for her claim in the settlement agreement. Although representation in this case may be somewhat wanting, the fact that the court received and was aware of King's objections compensates for this fact. Moreover, by September 2, 1983, King had retained her own counsel and there was ample time to challenge the class action settlement by appeal. She chose to attack the settlement collaterally and should not now complain of any inadequacy in representation.

### Claims Against the Union

**[5]** King's claim against CWA is facially different than the claims presented in the class action. King contends that CWA failed to file a grievance over Bell's failure to reinstate her to her former job and that CWA generally acquiesced in Bell's discriminatory **\*531** policies regarding maternity leaves. She further contends

that her first opportunity to sue CWA for a Title VII violation came after receiving the EEOC's right-to-sue-letter.

There is no dispute that CWA was a named plaintiff in the class action, although the Louisiana court would only allow it to represent the class for seeking injunctive, and not monetary, relief. CWA was signatory to the settlement agreement. CWA argues that King's claims against it arise out of the same set of circumstances giving rise to the class action and, therefore, are properly barred. We agree that general policy principles of *res judicata* dictate that all claims relating to Bell's maternity leave policies and practices, including any claim that may be directed against CWA, were resolved by the class action settlement.

Accordingly, the district court's grant of summary judgment in favor of appellees is AFFIRMED.

MERRITT, Circuit Judge, dissenting.
I do not agree that King's suit is barred by the res judicata effect of the settlement in the Louisiana class action against the telephone company.

King had four claims against South Central Bell that arose from Bell's alleged Title VII violations with regard to the company's maternity leave policy: (1) a monetary claim for Bell's delay in reemploying King when she requested return from maternity leave, (2) an injunctive claim seeking restoration of the seniority lost as a result, in principal part, of the above delay, (3) an injunctive claim seeking reinstatement to the job King had held before her leave, and (4) a monetary claim for wages lost during the three years that King worked in the lower paying job after her return from leave. All four of the claims were of types dealt with by the class action.

King submitted claim number one in the class action and received compensation for the claim under the settlement. King notified the court of her second claim but apparently did not submit it as a claim. As a result of her comments (and the comments of other class members) the settlement agreement was revised to provide a restoration of lost seniority to class members. The record does not disclose whether King's claim for lost seniority was satisfied by the settlement. By the time the class action neared settlement, King had already worked her way back up to her original job. Consequently, her third claim, for restoration to her

Case 2:17-cv-13815-SFC-DRG ECF No. 12-18, PageID.900 Filed 05/30/18 Page 9 of 11

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)

40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

original job, no longer existed. King's fourth claim, for wages lost during the three years while King worked at the lower paying job, is King's principal (and perhaps only) remaining claim. She estimates that with interest it amounts to approximately $13,000.

The panel's holding that King's action seeking declaratory relief related to her remaining claim is barred under res judicata by the settlement of the class action depends on the conclusion that the class action was binding on King as to this claim for lost wages. The question is, should the Louisiana class action, certified only under rule 23(b)(2), Fed.R.Civ.P., be interpreted to include lost wages claims arising from reemployment in a job paying less than the one to which a claimant is entitled?

According to rule 23, certification under 23(b)(2) is proper when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Advisory Committee's notes to rule 23(b)(2) make clear that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."

The Fifth Circuit has developed a mechanism to deal with class action representatives who wish to assert both claims for injunctive relief and claims for substantial monetary relief. Under Fifth Circuit precedent an action brought by such a class may be certified under rule 23(b)(2) and is referred to as a "hybrid" (b)(2) class action. *See Johnson v. General Motors* **\*532** *Corp.,* 598 F.2d 432 (5th Cir.1979). The Louisiana action was such a "hybrid" class action. Under this so-called "hybrid" action, an absent class member who wishes to assert substantial claims for monetary relief will be bound by the judgment or settlement in the class action and has no right to opt out of the class (although the trial judge has discretion to provide class members with opt-out rights, which he did not do in the case at bar).

The courts of this circuit have never embraced the Fifth Circuit's "hybrid" (b)(2) class action scheme. In my opinion, the procedure violates the due process rights of absent class members who possess claims for substantial monetary relief. If the parties to a class action wish to include in the class the claims of potential individual class members who mainly have large monetary claims,

due process requires that such class members be afforded all the protection that would be present in a rule 23(b)(3) action—including the right to opt out of the class. *Accord Greenspan v. Automobile Club,* 22 FEP Cas (BNA) 180 (E.D.Mich.1977) (employment discrimination suit certified under rule 23(b)(2) for equitable relief and rule 23(b)(3) for back pay). Because King could not, consistent with due process, have been bound in regard to her lost wages claim by a judgment in the "hybrid" class action, this Court should not hold that the Louisiana class action settlement barred King's suit.

Even if the "hybrid" (b)(2) class action scheme were acceptable, it does not appear that King received adequate notice as required in such actions under the Fifth Circuit's opinion in *Johnson v. General Motors Corp. Johnson* holds that in a "hybrid" (b)(2) class action, due process requires that absent class members receive notice that the "hybrid" action is pending and that damage claims may be barred if not submitted. 598 F.2d at 438. If proper notice is not given, the class action does not bar a subsequent suit on the monetary claims. 598 F.2d at 437.

The notice King received told her, "You may be owed a settlement" if "you were not reinstated to your job or were delayed in reinstatement to your job when you requested to return to work from your maternity leave." *Supra* p. 526. Further, the notice stated that the only class members who were entitled to monetary relief were "[t]hose who requested to return from their maternity leaves and were delayed in such reinstatement." *Supra* p. 527. The notice continued, "Unless you intend to claim that South Central Bell delayed your returning to work during or at the end of your maternity leave, you can stop here, as you will not be eligible for any monetary or reinstatement relief." *Supra* p. 527.

The notice of settlement in the Louisiana class action is ambiguous and led King, she says, to believe that the settlement covered only claims arising from Bell's refusal to promptly reemploy a worker returning from maternity leave. The notice gave the impression that if a returning worker were immediately reemployed but to a lesser job, that worker's claim was not included in the settlement. Thus, King believed that her claim for Bell's 8-day delay in reemploying her was covered by the settlement, and she submitted the claim. However, King's main claim—seeking lost wages equaling the difference in pay between her original job and the lower paying job to which she was

King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)
40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

returned—did not appear to be included in the settlement. King, therefore, did not submit this claim, but raised the question of lost seniority resulting from delay in reemployment, and, because the notice referred to the fact that certain claims might be barred, she notified the court and counsel that she was not waiving other claims. Her response indicates that she did not understand what the settlement included. Her lack of understanding was reasonable, and perhaps inescapable, in light of the notice.

The notice did not make King aware, and would not make a reasonable person aware, that her back pay claim would be barred if not submitted for satisfaction by the settlement. It left King with the justified belief that the settlement did not reach **\*533** claims for wages lost as a result of reemployment in a lower paying job. Thus, the notice did not do what Fifth Circuit precedent requires notice in a "hybrid" 23(b)(2) class action to do. According to *Johnson,* the settlement cannot, consistent with due process, bar King's subsequent suit by which she asserts this unsubmitted claim.

The panel's opinion does not squarely address the obvious shortcomings of the notice. The panel quotes the District Court stating:

> Although the notification of the proposed settlement received by plaintiff may have been subject to some misinterpretation, a review of the entire record makes clear that the class action adjudicated all claims presented in this case.

*Supra* p. 529. In so doing, the panel repeats the District Court's error. The fact that the class action adjudicated King's claims is irrelevant because due process requires that King's suit not be barred by a previous "hybrid" (b)(2) class action of which she did not receive adequate notice. The panel continues, "[e]ven if it can be argued that the notice was somewhat ambiguous, King could not opt out because the action did not include that privilege. The most she could do was object to the decree and she did." *Supra* p. 530. As discussed above, I believe denial of the "privilege" of opting out of the class denied King due process. However, putting aside that argument, King had another option. If proper notice had informed King that her lost wages claim was included in the class action, she could have intervened in the class action, being represented by counsel, in order to protect her claim.

Because the inadequate notice failed to inform her that her monetary claim was part of the action, she would have had no thought of intervening to protect that claim.

Additionally, the panel quotes the District Court:

> Although plaintiff was uncertain of the full scope of the class action, she filed an objection to the settlement in the event that the class action did fully cover her claim. This objection was considered and apparently rejected by the Louisiana Court.

*Supra* p. 529. King did not file any objection indicating that she wished to have the settlement revised to include her lost wages claim. The fact that she commented about the seniority question does not indicate that she knowingly decided not to submit her monetary claim.

Fifth Circuit case law does not require that the required notice in a "hybrid" (b)(2) action be given at any particular stage of the litigation. Here no notice was given until 1983, almost seven years after the Louisiana class was certified. It appears that the only notice that King received was the notice of compromise or settlement of a class action as required by rule 23(e). Logically, it seems that if *Johnson* requires that notice be given to the absent members of a "hybrid"(b)(2) class, the notice must be different from or give more information than the notice of settlement required by rule 23(e). If the notice required by rule 23(e) is enough, then the "hybrid" class action concept is nothing more than a 23(b)(3) class action stripped of the notice and opt out privilege.

Suffice it is to say that the notice King received was inadequate for purposes of the Fifth Circuit's "hybrid" (b)(2) class action precedent. To give only scant notice of settlement in a class action that should properly have been divided into a (b)(2) class seeking injunctive relief and a (b)(3) class seeking monetary relief, and then to use the res judicata effect of the settlement to bar King's subsequent action, is a violation of King's right to due process. The class action settlement was therefore not a valid judgment as against King's lost wages claim, and should not be held to bar her action.

**King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524 (1986)**

40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137...

**All Citations**

790 F.2d 524, 40 Fair Empl.Prac.Cas. (BNA) 1355, 40 Empl. Prac. Dec. P 36,137, 4 Fed.R.Serv.3d 1166

Footnotes

\*      Hon. Robert E. DeMascio, United States District Judge, Eastern District of Michigan.

1      King contends that her receipt of the EEOC's right-to-sue letter was her first opportunity to maintain a Title VII claim against CWA.

2      The notice provided, in pertinent part:

> The purpose of this Notice is to describe a class action lawsuit, to advise you of the Proposed Settlement of that class action, to inform you of your right to object to the Proposed Settlement, and to explain the procedure for recovery under the Proposed Settlement. Based upon South Central Bell's records, it appears that you are a class member. YOU ARE THEREFORE URGED TO READ THIS NOTICE CAREFULLY.

3      The response was dated May 9, 1983 and read as follows:

> I have received your letter of April 28, 1983, regarding the above-referenced case. I do not know whether in addition to your letter of objection, you have filled out and filed the Claim Application that you received in the mail. If the Court should decide to accept the proposed settlement on behalf of the entire class, then we will need to know the amount of damages you would be entitled to.
>
> If you have not done so already, please file the Claim Application form directly with the Clerk of the Court. This can be done up until May 31, 1983, the new deadline established by the Court. I have enclosed a copy of the form in case you no longer have your copy.

While this letter did not directly address whether King's specific claim is included in the proposed settlement, it urged her to file her claim. King made a conscious choice to limit her claim to the eight days between the date of her request to return to work and the date Bell actually reinstated her.

---

**End of Document**           © 2018 Thomson Reuters. No claim to original U.S. Government Works.