# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MICHIGAN HEAD & SPINE INSTITUTE, P.C., | **DEMAND FOR JURY TRIAL** |
| Plaintiff, | Case No. 2:17-cv-13815-SFC-DRG |
| v. | |
| LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL FIRE INSURANCE COMPANY, | Hon. Sean F. Cox |
| | Magistrate David R. Grand |
| Defendants. | |

**DEFENDANTS LIBERTY MUTUAL INSURANCE COMPANY'S AND LIBERTY MUTUAL FIRE INSURANCE COMPANY'S ANSWER AND COUNTERCLAIM**

Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company ("Defendants") hereby answer Plaintiff Michigan Head & Spine Institute, P.C.'s ("MHSI") First Amended Complaint ("Amended Complaint") as follows:

1. Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 1. On that basis, Defendants deny the allegations in Paragraph 1.

2. Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 2. On that basis, Defendants deny the allegations in Paragraph 2.

1

2:17-cv-13815-SFC-DRG Doc #21 Filed 11/28/17 Pg 2 of 23 Pg ID 367

3.      Defendants admit that MHSI has purported to treat certain patients and sought reimbursement from Defendants. Otherwise, Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 3. On that basis, Defendants deny the allegations in Paragraph 3.

4.      Paragraph 4 states a conclusion of law to which no response is required. It further refers to the text of a statute, which is a written document that speaks for itself. On those bases, Defendants deny the allegations in Paragraph 4.

5.      Paragraph 5 states a conclusion of law to which no response is required. It further refers to the text of a statute, which is a written document that speaks for itself. On those bases, Defendants deny the allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants deny the allegations in Paragraph 7.

8.      Defendants admit that they did not pay the full amount billed on certain invoices. Otherwise, they deny the allegations in Paragraph 8.

9.      Paragraph 9 merely specifies the relief that MHSI is seeking. No response, therefore, is required. To the extent a further response is required, Defendants deny the allegations in Paragraph 9.

10.      Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 10. On that basis, Defendants deny the allegations in Paragraph 10.

11.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 11.  On that basis, Defendants deny the allegations in Paragraph 11.

12.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 12.  Paragraph 12, furthermore, states conclusions of law to which no response is required.  Finally, the assignments attached to the Amended Complaint are written documents, the contents of which speak for themselves.  On those bases, Defendants deny the allegations in Paragraph 12.

13.     Paragraph 13 states conclusions of law to which no response is required.  On that basis, Defendants deny the allegations in Paragraph 13.

14.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 14.  On that basis, Defendants deny the allegations in Paragraph 14.

15.     Defendants deny that they are organized under the laws of Michigan, as alleged in Paragraph 15.  Defendants admit that they conduct business in Michigan.

16.     Defendants admit the allegations in Paragraph 16.

17.     Paragraph 17 states conclusions of law to which no response is required.  On that basis, Defendants deny the allegations in Paragraph 17.

100887\000088\2840500.v1-11/28/17

18. Defendants incorporate their responses to Paragraphs 1-17 as if fully set forth herein.

19. Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 19. On that basis, Defendants deny the allegations in Paragraph 19.

20. Paragraph 20 states conclusions of law to which no response is required. On that basis, Defendants deny the allegations in Paragraph 20.

21. Defendants admit that MHSI submitted requests for payment to Liberty. Defendants are without knowledge or information sufficient to form a belief as to whether MHSI actually provided any medical services. To the extent a further response is required, Defendants deny the allegations in Paragraph 21.

22. Defendants admit that some of the patients identified were, at one time, insured by one or both of Defendants. The remainder of Paragraph 22 states conclusions of law to which no response is required. Furthermore, the patients' insurance policies are written documents, the contents of which speak for themselves. On those bases, Defendants deny the allegations in Paragraph 22.

23. Defendants admit that MHSI requested payment for services provided. Otherwise, Defendants deny the allegations in Paragraph 23.

24. Defendants admit that MHSI requested payment for services provided. Otherwise, Defendants deny the allegations in Paragraph 24.

4

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants admit that they determine usual and customary rates in accordance with Michigan law and that they use data provided by Mitchell Medical and Fair Health, Inc. to make that determination.  Defendants deny any remaining allegations in Paragraph 26.

27.     Defendants deny the allegation that Fair Health, Inc.'s attributes are "purported" as opposed to real.  They further deny that the database is used only for "consumer reimbursement."   Otherwise, Defendants admit the allegations in Paragraph 27.

28.     Paragraph 28 states conclusions of law to which no response is required.  On that basis, Defendants deny the allegations in Paragraph 28.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 31. On that basis, Defendants deny the allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34.

35.     Defendants deny the allegations in Paragraph 35.

5

36.  Defendants admit that an actual controversy exists.  Otherwise, they deny the allegations in Paragraph 36.

37.  Paragraph 37 merely specifies the relief that MHSI is seeking.  No response, therefore, is required.  To the extent a further response is required, Defendants deny the allegations in Paragraph 37.

38.  Paragraph 38 states a conclusion of law to which no response is required.  On that basis, Defendants deny the allegation in Paragraph 38.

39.  Defendants incorporate their responses to Paragraphs 1-38 as if fully set forth herein.

40.  Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 40.  Paragraph 40, furthermore, states conclusions of law to which no response is required.  Finally, the assignments referenced are written documents, the contents of which speak for themselves.  On those bases, Defendants deny the allegations in Paragraph 40.

41.  Paragraph 41 states conclusions of law to which no response is required.  On that basis, Defendants deny the allegations in Paragraph 41.

42.  Defendants admit that some of MHSI's patients were, at one time, insured by one or both of Defendants.  The remainder of Paragraph 42 states conclusions of law to which no response is required.  Furthermore, the relevant

6

insurance policies are written documents, the contents of which speak for themselves. On those bases, Defendants deny the remainder of Paragraph 42.

43. Paragraph 43 states conclusions of law to which no response is required. Furthermore, the relevant insurance policies are written documents, the contents of which speak for themselves. On those bases, Defendants deny the allegations in Paragraph 43.

44. Paragraph 44 states conclusions of law to which no response is required. Furthermore, the relevant insurance policies are written documents, the contents of which speak for themselves. On those bases, Defendants deny the allegations in Paragraph 44. To the extent a further response is required, Defendants deny the allegations in Paragraph 44.

45. Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 45. Paragraph 45, furthermore, states conclusions of law to which no response is required. On those bases, Defendants deny the allegations in Paragraph 45.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

MHSI has failed to state a claim upon which relief can be granted for each of the counts in the Amended Complaint.

7

## SECOND DEFENSE

The Amended Complaint is barred by the doctrines of res judicata and collateral estoppel, issue and claim preclusion, settlement and release, and accord and satisfaction.

## THIRD DEFENSE

Defendants acted at all times in good faith and in conformity with their contractual, statutory, and common law obligations.

## FOURTH DEFENSE

MHSI's claims fail because liability was not and is not reasonably clear.

## FIFTH DEFENSE

Some or all of MHSI's claims were waived, either expressly or implicitly.

## SIXTH DEFENSE

Defendants reserve their right to assert any and all further and other defenses that become known to them through discovery and the prosecution of this case.

## DEFENDANTS' COUNTERCLAIM

For their Counterclaim against Plaintiff, Defendants Liberty Mutual Insurance Company ("LMIC") and Liberty Mutual Fire Insurance Company ("LMFIC") (collectively referred to as "Liberty") state as follows:

8

2:17-cv-13815-SFC-DRG Doc # 2-4 Filed 11/28/17 Pg 9 of 23 Pg ID 374

### *Introduction*

1.     This counterclaim seeks money damages and a declaration that a final judgment from an Illinois court (affirmed on appeal) is enforceable in Michigan and bars the filing of cases like the one MHSI is currently prosecuting.  That judgment, rendered by the Illinois Circuit Court for St. Clair County, in a case captioned Lebanon Chiropractic Clinic, P.C., v. Liberty Mutual Insurance Company, et al., Civil Action No. 14-l-521 ("Lebanon"), resolved a 39-state class action involving claims related to the manner by which Liberty determined the "reasonableness" of amounts charged by medical providers for services covered by various states' no-fault automobile insurance regimes.  MHSI is a member of the Lebanon class.  MHSI was provided notice of the settlement and afforded an opportunity to opt out of the class, but it failed to do so.  Nonetheless, MHSI, in its present Amended Complaint, is seeking to re-litigate the manner by which Liberty calculates "reasonableness." The interests of the no-fault insurance system, judicial economy, interstate comity, finality of judgments and the full faith and credit clause of the United States Constitution would be well-served by the declaratory judgment sought by Liberty.

### *Jurisdiction and Venue*

2.     This Court has jurisdiction over this counterclaim under 28 U.S.C. § 1367 because the allegations in this counterclaim form part of the same case or controversy as the allegations raised in MHSI's Amended Complaint.

100887\000088\2840500.v1-11/28/17

3.     Venue is proper in this district under 28 U.S.C. § 1391 because MHSI is located in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

### *The PIP Claims Process*

4.     Liberty issues personal automobile insurance policies in Michigan and throughout the United States which provide no-fault Personal Injury Protection ("PIP") benefits as required by applicable state laws, including Mich. Comp. Laws § 500.3105.

5.     PIP benefits cover the cost of "reasonable charges incurred for reasonably necessary products, services and accommodation" incurred by persons who are injured in automobile accidents.  Mich. Comp. Laws § 500.3107; see also Mich. Comp. Laws § 500.3157.  Other states have similar no-fault statutes and policies.

6.     To assess the reasonableness of PIP charges in a cost effective manner, Liberty uses a computerized bill-review system which, among other things, compares the billed charges for medical treatment to a database of charges for similar services provided in the same geographic area.  If such a comparison reveals that a particular charge exceeds the 80th percentile of charges for the same treatment in the same geographic area, Liberty will usually pay the 80th percentile charge reflected in the medical-charge database.

100887\000088\2840500.v1-11/28/17

7. Since 2011, Liberty's computerized bill-review system has used medical-charge databases maintained and provided by a non-profit company called Fair Health, Inc. ("Fair Health").

8. Fair Health was established in October 2009 as part of a settlement of an investigation by the New York Attorney General into certain health insurance industry reimbursement practices which had been based on data compiled and controlled by a major insurer.

9. Fair Health provides data products and solutions to all stakeholders in the healthcare sector: consumers, health plans, policymakers, insurers, government officials, bill reviewers and administrators, healthcare systems, hospitals and other facilities, healthcare providers, pharmaceutical companies, researchers, and consultants.

### *Defendants' PIP Claims*

10. MHSI is a medical provider that treats Liberty insureds and submits bills to Liberty for payment under its patients' PIP coverage. In several instances, including at least some of those outlined in MHSI's Amended Complaint, Liberty (a) determined that the charges submitted by MHSI for certain treatment exceeded the reasonable amount for those services using the computerized bill-review process described above; and (b) paid MHSI at the 80th percentile charge reflected in the relevant Fair Health databases rather than the higher amounts billed.

11

100887\000088\2840500.v1-11/28/17

11.     MHSI is currently alleging that it is owed $442,150.05 just for the reductions taken since 2016 alone.

### The *Lebanon* Litigation, Settlement and Final Judgment

12.     On June 25, 2014, Lebanon Chiropractic Clinic, P.C. ("Lebanon Chiropractic") brought a class action against Liberty and others in the Illinois Circuit Court for St. Clair County, on behalf of insureds and medical providers throughout the United States.  The case was captioned Lebanon Chiropractic Clinic, P.C., v. Liberty Mutual Insurance Company, et al., Civil Action No. 14-l-521 ("Lebanon"). A copy of the Complaint ("Lebanon Complaint") is attached as Exhibit A.

13.     Lebanon Chiropractic, like MHSI, is a provider of medical services. Also like MHSI, Lebanon Chiropractic alleged, among other things, that Liberty failed to reimburse policyholders, claimants and providers for the full costs of medical care relating to injuries covered by the PIP coverage in Liberty's automobile insurance policies.  Lebanon Chiropractic contended that Liberty improperly relied on computer databases to determine the "usual and customary" rates charged in a given region.  *See* Lebanon Complaint at ¶¶ 10-28.

14.     On October 30, 2014, the parties to the Lebanon case filed a Stipulation of Settlement with the Illinois court, which provides for a 39-state class settlement. One of the states covered by the Stipulation of Settlement was Michigan.  A copy is attached as Exhibit B.

12

15.     The Stipulation of Settlement provides a procedure whereby qualified class members could seek monetary reimbursement for certain disputed PIP payments that arose due to treatments provided up until October 31, 2014 by submitting a claim form to a claims administrator.  Stipulation of Settlement at ¶¶ 44-53.

16.     The Stipulation of Settlement also sets forth the parties' agreement about how to determine the reasonableness of bills submitted for treatments during the five years after October 31, 2014 ("Future Claims").  Specifically, where no provider network agreement or fee schedule applies, the parties agreed (id. at ¶ 28 (a)(i)) that Liberty will reimburse PIP claims at the lowest of:

a)  The charge billed by the medical provider; or

b)  The eightieth percentile charged for the procedure at issue "in the geozip area where the provider is located, as determined using information derived from" the databases maintained by Fair Health.

17.     The "Settlement Class" includes subclasses of policyholders, claimants and medical providers in 39 states – including Michigan.  Id. at ¶¶ 22, 6, 7.  The provider subclass includes Michigan providers who provided Liberty policyholders with PIP-covered treatment between June 25, 2010 until October 31, 2014 and had their requests for reimbursement reduced as a result of the use of a computerized database.  Id. at ¶¶ 22(c), 6(A).

13

18. In exchange for Liberty's agreement to pay claims according to the negotiated procedures, the Provider and Claimant Subclasses provided two kinds of relief.

19. First, for claims that existed as of October 31, 2014 (with inapplicable exceptions) class members provided to the "Released Parties" (which was defined to include Liberty; id. ¶ 20) a broad release of all "Released Claims." *See* id. at ¶ 29(A). "Released Claims" is defined (in ¶ 19) to mean:

> . . . any and all claims, rights, demands, actions, causes of action, suits, debts, liens, contracts, liabilities, agreements, interest, costs, expenses or losses arising from or in any way related to any acts which have been alleged or which could have been alleged in the [Lebanon] Action by the Plaintiff, the Settlement Class, and/or any Class Member concerning any Subject Claim,[1] whether at law, in equity, or under any statute or regulation, including without limitation:
>
> A. any and all claims, demands, actions, causes of action, and/or suits for breach of contract, fraud, misrepresentation, consumer fraud, unfair trade practices, unfair insurance practices, unjust enrichment, and/or bad faith arising from or in any way relating to any Subject Claim,
>
> B. any and all claims, demands, actions, causes of action, and/or suits for direct damages, indirect damages, actual damages, consequential damages, punitive damages, and/or exemplary damages, declaratory or injunctive relief, prejudgment interest, post-judgment interest, costs, expenses, and/or attorneys' fees,

---

[1] The Stipulation of Settlement defines "Subject Claim" as "any insurance claim submitted to Liberty . . . seeking payment under the MedPay and/or PIP coverage provided by a Subject Policy for Covered Treatment rendered during the Class Period [defined as June 25, 2010, through October 31, 2014]." Id. at ¶¶ 6(A), 24. It defines "Covered Treatment" as "any medical treatment, medical service, medication, or prosthesis covered by MedPay and/or PIP coverage provided by a Subject Policy." *See* id. at ¶7.

14

100887\000088\2840500.v1-11/28/17

> whether statutory or non-statutory, arising from or in any way relating to any Subject Claim, and
>
> C.    any and all Unknown Claims[2] arising from or in any way relating to any Subject Claim . . . .

20.    Second, for the so-called "Future Claims," which arose for treatment after October 31, 2014, the Settlement Class "stipulate[ed] that Liberty's payment of Future Claims in accordance with paragraph 28(a)(1) above, does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or reasonable charges for Covered Treatments" id. at ¶ 29(B), and it agreed to "refrain from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind . . . any challenge of any kind to Liberty's payment of Future Claims . . . . " Id. at ¶ 29(C).

21.    On October 31, 2014, the Lebanon Court preliminarily approved the settlement as well as the parties' plan for distributing notice to the proposed class. *See* Order Preliminarily Approving Class Settlement ("Preliminary Order")

---

[2] "Unknown Claim" is defined to mean "any claim arising out of newly discovered facts and/or facts found hereafter to be other than or different from the facts now believed to be true." Id. at ¶ 27. The Stipulation of Settlement further specifies that:

> The Released Claims defined in Paragraph 19, above, include all Unknown Claims arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by Plaintiff, by the Settlement Class, and/or by any Class Member concerning any Subject Claim. Upon the entry of the Final Judgment, each Class Member shall be deemed to have expressly waived and released any and all Unknown Claims that he, she, or it has or might have arising from or in any way related to any acts which have been alleged or which could have been alleged in the Action by Plaintiff, by the Settlement Class, and/or by any Class Member concerning any Subject Claim.

Id.

15

100887\000088\2840500.v1-11/28/17

(attached as Exhibit C). Pursuant to the Preliminary Order and the Court's December 2, 2014 Order Modifying Class Settlement Schedule (attached as Exhibit D), potential class members wishing to object or opt out had to inform the class administrator by January 22, 2015. Id. at ¶¶ 5, 7.

22. The parties' counsel then caused notifications of the settlement to be sent to members of the proposed Settlement Class, informing them, among other things, of the terms of the settlement and their opportunity to object or opt out. *See* Final Order and Judgment Approving Settlement and Dismissing Action with Prejudice ("Final Order") (attached as Exhibit E) at ¶ 13.

23. On February 17, 2015, the Lebanon Court held a hearing to consider a motion for final approval of the proposed settlement and objections.

24. Following that hearing, on February 23, 2015, the Lebanon Court entered a Final Order in which it expressly overruled all objections, found that notice of the settlement had been appropriately disseminated, certified the class for purposes of settlement, and found that the settlement was fair and reasonable. Id. at ¶¶ 13-16.

25. The Final Order approved the claims settlement process described in the Stipulation of Settlement and approved in the Preliminary Order (id. at ¶13) and ordered that "[u]pon the entry of this Final Judgment, each **Settlement Class Member shall be conclusively deemed to have fully released and discharged, to**

16

**the fullest extent permitted by law, all of the Released Parties from all of the Released Claims**." Id. at ¶ 26 (emphasis added).

26.     The Final Order also provided that "Liberty's payment of Future Claims in accordance with paragraph 21(A)(i) . . . does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary or reasonable charges for Covered Treatments [;]" (id. at ¶ 22) and that "**each and every Settlement Class member is forever barred and permanently enjoined from asserting**, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency or arbitrator, **any challenge of any kind to Liberty's payment of Future Claims in accordance with paragraph 21(A)(i)** . . . ." Id. at ¶ 23 (emphasis added).

27.     Judgment entered on February 23, 2015. Id. at pg. 1.

28.     Certain objectors appealed the final judgment.

29.     On February 9, 2016, the Appellate Court of Illinois affirmed the judgment and the Final Order in all respects in a 29-page opinion, a copy of which is attached as Exhibit F. Among other things, the Appeals Court held that under Illinois, United States Supreme Court, and other applicable precedent:

- The Illinois trial court had jurisdiction over class members who received notice and failed to timely opt out (*see* Exhibit F at pgs. 15-17);
- Differences in the law and insurance policies in effect in various states did not preclude a multi-state settlement (*see* id. at pgs. 20-22);

17

100887\000088\2840500.v1-11/28/17

- The settlement was fair and reasonable even if, as the objectors argued, a particular class member might have received a better outcome pursuing an individualized claim (*see* id. at pgs. 23-35);
- Class members were adequately represented by the named plaintiff and class counsel (*see* id. at pgs. 26-28); and
- The settlement was not contrary to public policy (*see* id. at 27-28).

30. There have been no further appeals of the Final Order and none are pending.

### *Notice of the Lebanon Settlement*

31. MHSI submitted PIP bills to Liberty for medical services rendered between June 25, 2010 until October 31, 2014.

32. Liberty reduced some of those bills based on its use of the Fair Health databases. Thus, MHSI falls squarely within the definition of the "Provider Subclass" (providers who had provided Liberty policyholders with PIP-covered treatment from between June 25, 2010 until October 31, 2014 and had their requests for reimbursement reduced as a result of the use of a computerized database).

33. Following the Lebanon Court's Preliminary Order, Liberty caused the claims administrator to mail notice of the Settlement to MHSI as required by the Order.

34. The notice sent to MHSI informed it that if it wished to opt out of the settlement, it could do so by providing a request for exclusion by January 22, 2015.

35. MHSI did not provide a request for exclusion.

18

36.     Nonetheless, in the present suit, MHSI is challenging Liberty's payment of less than the full face amount of a PIP charge.  The declaratory judgment sought in this proceeding will affect similar cases brought by MHSI in the future.

## COUNT I

### Breach of Contract

37.     Liberty incorporates the allegations set forth in paragraphs 1-36 above as if set forth fully herein.

38.     The Lebanon Stipulation of Settlement contains a covenant not to sue whereby class members, like MHSI, agreed not to sue Liberty with respect to any Future Claims, as defined in the Stipulation of Settlement.

39.     In breach of that covenant, MHSI has sued Liberty with respect to Future Claims despite Liberty's compliance with the Stipulation of Settlement.

40.     As a result, Liberty is entitled to damages for harm proximately caused by MHSI's violation of the covenant including, but not limited to, the attorney's fees Liberty has been forced to incur as a result of litigation brought by MHSI.

## COUNT II

### Declaratory Judgment Regarding the Enforceability of the Lebanon Final Order.

41.     Liberty incorporates the allegations set forth in paragraphs 1-40 above as if set forth fully herein.

100887\000088\2840500.v1-11/28/17

42.     The Final Order was issued by a state court in Illinois which employed well-recognized procedures designed to ensure that the due process rights of all putative class members were protected.  Among other things, it held fairness hearings, heard and ruled on objections, ordered extensive notice to putative class members sent by a nationally-recognized expert on class notice, permitted opt outs, determined that the class was adequately represented, found that class certification was appropriate, and concluded that the settlement was fair and reasonable.  Those findings were all upheld in a thoroughly-reasoned appellate decision.

43.     MHSI received adequate representation in the Lebanon case, was on the list of class members to whom notice was sent, and had an opportunity to opt out.

44.     MHSI did not request exclusion from the Settlement Class.

45.     Because it did not opt out, MHSI is subject to the jurisdiction of the Lebanon Court and is fully bound by the Final Order.

46.     Thus, the Final Order represents a sister state judgment entitled to full faith and credit in the state of Michigan.

47.     Pursuant to the Final Order, MHSI has conclusively and finally released all Released Claims and is precluded from asserting litigation based on Future Claims, as those terms are used in the Order.

20

48.     The enforceability and effect of the <u>Lebanon</u> Final Order is a matter that is currently the subject of litigation in the present action and is likely to be the subject of future litigation brought by MHSI (and other class members who commence PIP litigation in courts throughout Michigan).  Therefore, an actual justiciable controversy exists between Liberty and MHSI.

**WHEREFORE,** Liberty prays that this Court:

1.     Award money damages to Liberty in an amount to be determined at trial;

2.     Enter judgment declaring, pursuant to 28 U.S.C. § 2201, that <u>Lebanon Chiropractic LLC v. Liberty Mutual Ins. Co., et al.</u>, Illinois Circuit Court for St. Clair County, C.A., No. 14-L-521: (1) bars MHSI from filing suits, like the one it has filed in this action, seeking to challenge Liberty's use of the Fair Health databases, (2) bars MHSI from asserting any "Released Claims" against Liberty, and (3) bars MHSI from suing Liberty with respect to any Future Claims; and

3.     Grant such other and further relief as the Court may deem just and proper.

21

Respectfully submitted,

Dated: November 28, 2017

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorney for Defendants
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com

/s/ Daniel P. Tighe
Daniel P. Tighe, Esq. (BBO# # 556583)
(Admission pending)
Thomas R. Sutcliffe, Esq. (BBO# 675379)
(Admission pending)
Attorneys for Defendants
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000
dtighe@princelobel.com
tsucliffe@princelobel.com

*Attorneys for Liberty Mutual Insurance*
*Company and Liberty Mutual Fire*
*Insurance Company*

22

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served by U.S. Mail, first-class postage pre-paid, and by electronic service on the following counsel on November 28, 2017:

Milea M. Vislosky
Miller & Tischler, P.C.
28470 W. 13 Mile Rd., Ste. 300
Farmington Hills, MI 48334

Dated: November 28, 2017 /s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Attorney for Defendants
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com

23

100887\000088\2840500.v1-11/28/17

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN HEAD &
SPINE INSTITUTE, P.C.,

        Case No. 2:17-cv-13815-SFC-DRG

     Plaintiff,

v.

LIBERTY MUTUAL INSURANCE        Hon. Sean F. Cox
COMPANY and LIBERTY MUTUAL
FIRE INSURANCE COMPANY,        Magistrate David R. Grand

     Defendants.

---

| Milea M. Vislosky (P69306) | Jennifer B. Salvatore (P66640) (Local Counsel) |
|---|---|
| MILLER & TISCHLER, P.C. | SALVATORE PRESCOTT & PORTER, PLLC |
| Attorney for Plaintiff | Attorney for Defendants |
| 28470 W. 13 Mile Rd., Ste. 300 | 105 East Main Street |
| Farmington Hills, MI 48334 | Northville, MI 48167 |
| (248) 945-1040 | (248) 679-8711/(248) 773-7280 Fax |
| (248) 773-7280 Fax | salvatore@spplawyers.com |
| mvislosky@msapc.net | |

Daniel P. Tighe
PRINCE LOBEL TYE LLP
Attorney for Defendants
One International Place
Boston, MA 02110
(617) 456-8000
dtighe@princelobel.com

---

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

JUN 0 4 2018

Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively, "Liberty") hereby respond to Plaintiff's First Requests for Admissions ("Requests") as follows:

## GENERAL OBJECTIONS

1.     Investigation and discovery by Liberty is continuing and is not complete.  As discovery proceeds, witnesses, facts, evidence, and documents may be discovered which are not set forth herein, but which might have been responsive to a request.  Facts and evidence not known may be imperfectly understood, or the relevance or consequence of such facts and evidence may be imperfectly understood, and, accordingly, such facts and evidence may, in good faith, not be included in the following responses.

2.     Liberty expressly reserves the right to amend or supplement its responses, if necessary, at a later date and to use subsequently discovered information, and information presently known, the specific relevance, significance, or applicability of which has not yet been ascertained.

3.     Nothing herein shall be construed as an admission by Liberty with respect to the admissibility or the relevance of any facts or documents, or the truth or accuracy of any characterization contained in any request.

4.     Whenever a Request seeks to impose on Liberty greater or broader obligations than those imposed by the Federal Rules of Civil Procedure or any

2

100887\000107\2960889.v1-5/29/18

other applicable Rules, Liberty will respond in conformance with those Rules.

5.      To the extent Liberty makes information available, Liberty does not intend to waive any objections which it may have regarding other parties' use of any information contained in any document, and expressly reserves: (i) all questions regarding competency, relevance, materiality, and admissibility of all information produced; (ii) the right to object to the parties' use of any information produced, in whole or in part, in any later stage or proceedings in this litigation on any and all proper grounds; and (iii) the right to object on any and all proper grounds, at any time, to other discovery procedures involving or relating to any information produced.

6.      Liberty undertakes to respond the Requests only to the extent required by the Federal Rules of Civil Procedure.

7.      Liberty objects to the Requests to the extent they seek information protected by the attorney-client or work-product privileges, the joint defense privilege, or as otherwise protected from discovery by law.

8.      Liberty objects to each request to the extent that it calls for information outside of Liberty's custody or control.

9.      Liberty objects to each request to the extent that it lacks any temporal limitation and requires Liberty to provide information that does not fall within the timeframe relevant to this action.

3

10. Liberty objects to the Requests to the extent they are overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant to any party's claims or defenses, or not proportional to the needs of the case.

11. Liberty objects to the Requests to the extent they call for confidential or proprietary information.

## SPECIFIC OBJECTIONS AND RESPONSES

Liberty incorporates each of the general objections stated above in response to each of the Requests propounded by MHSI.

Liberty further objects to the Requests on the grounds that they are all untimely. As this Court has previously held, "a party must serve discovery with enough lead time [prior to the close of discovery] to give the opposing party the rule-required amount of time to respond to the discovery request." Drahuse v. Fed. Home Loan Mortg. Corp., No. 10-CV-14117, 2011 WL 4088170, at *1 (E.D. Mich. Sept. 14, 2011); see also, e.g., Arnott v. Ashland Hosp. Corp., No. 0:15-CV-0032-DLB, 2016 WL 7974071, at *2 (E.D. Ky. Apr. 14, 2016) ("[A] party must serve his discovery requests at least thirty days before the court-ordered discovery deadline to be timely and to necessitate a response."). According the Scheduling Order dated February 7, 2018 (Dkt. No. 10), all discovery was due to be completed by May 7, 2018. Any requests for admission, therefore, had to be served by April

4

7, 2018 – i.e., 30 days prior.  Fed. R. Civ. P. 36(a)(3).  MHSI's Requests, however, were not served until April 23, 2018.  As a result, Liberty is under no obligation to respond.  *See* <u>Drahuse</u>, 2011 WL 4088170, at *1 (denying motion to compel where requests were served less than 30 days before discovery deadline); <u>Arnott</u>, 2016 WL 7974071, at *2 (same).

Respectfully submitted,

Daniel P. Tighe. (BBO# # 556583)
Thomas R. Sutcliffe (BBO# 675379)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA  02110
(617) 456-8000
dtighe@princelobel.com
<u>tsucliffe@princelobel.com</u>


Jennifer B. Salvatore (P66640)
SALVATORE  PRESCOTT  &  PORTER,
PLLC
105 East Main Street
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com


*Attorneys for Liberty Mutual Insurance
Company and Liberty Mutual Fire
Insurance Company*

Dated:        May 29, 2018

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served by U.S. Mail, first-class postage pre-paid, and by electronic service on the following counsel on May 29, 2018:

Milea M. Vislosky
Miller & Tischler, P.C.
28470 W. 13 Mile Rd.,Ste 300
Farmington Hills, MI 48334

_____
Thomas R. Sutcliffe

6

100887\000107\2960889.v1-5/29/18

# EXHIBIT C

## HCP AGREEMENT

THIS AGREEMENT made and entered into on this 1st day of November, 2013, by and between Cofinity, Inc., a Delaware corporation (hereinafter referred to as "COFINITY"), and **University Neurosurgical Associates, PC dba Michigan Head and Spine Institute, PC** a duly licensed health care provider in the State of Michigan, (hereinafter referred to as "HCP").

WITNESSETH:

This Agreement is based on the following recitals:

That COFINITY is an independent Delaware corporation which performs pre-processing and analysis services for hospitals and health care providers who provide health care services to persons who are covered under any insurance plan of an insurer, self-insured group, employee welfare benefit plan, or other third party payor which has contracted with COFINITY.

That HCP is desirous of providing health care services to those persons described above;

That both COFINITY and HCP are desirous of facilitating a health care service program which will encourage the private practice of health care, preserve existing patient/doctor relationships and provide an expedited method of reimbursement for services rendered.

NOW, THEREFORE, in consideration of the mutual covenants, representations, obligations and agreements contained herein, the parties hereto agree as follows:

1. DEFINITIONS.

The following terms as used in this Agreement shall have the meanings hereinafter set forth:

A. "COVERED SERVICES" shall mean those health care services provided by an HCP to a Patient.

B. "HCPs" shall include the party identified at the beginning of this Agreement and shall mean any and all health care providers duly licensed (where required to be licensed by law), in the State of Michigan and in all other States where such health care provider provides health care services, and any and all of their principals, shareholders, agents or employees (who shall also be duly licensed where required by law), including, but not limited to, physicians, hospitals, laboratories and/or physical therapists, which have executed a contract with COFINITY.

C. "HEALTH PLAN" shall mean any self funded health benefit plan, or group or individual health care insurance policy, auto insurance policy, or other indemnity plan under which an Insurer provides specific health benefits for a Patient.

D. "INSURER" shall mean any self-insured group, employee welfare benefit plan, insurance company (including but not limited to auto insurers) or other third party payor which pursuant to a contract between COFINITY and such third party payor has agreed to pay HCPs for health care services covered by its Health Plan provided to Patients.

E. "MASTER PAYMENT SCHEDULES" shall mean those fee schedules that are based upon the contracted location where services are performed as amended by COFINITY from time to time as it deems reasonably necessary in the exercise of its reasonable discretion, which set forth the maximum payment which HCP hereby agrees to accept as reimbursement in full for Covered Services.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

F.        "MEDICALLY NECESSARY" shall mean services or supplies which, under the provisions of a Health Plan, are determined by an Insurer or its agent to be: (i) appropriate and necessary for the symptoms, diagnosis or treatment of a Patient's medical condition; (ii) provided for the diagnosis or direct care and treatment of such medical condition; (iii) within standards of good medical practice within the organized medical community; (iv) not primarily for the convenience of the Patient, HCP, or another health care provider; and (v) the most appropriate supply or level of service which can safely be provided. For inpatient hospital services, this means that acute care as an inpatient is necessary due to the kind of services that the Patient is receiving or the severity of the Patient's condition, and that safe and adequate care cannot be received as an outpatient or in a less intensive medical setting.

G.        "PATIENT" shall mean any person and/or dependent that is covered under a Health Plan of an Insurer.

H.        "PEER REVIEW" shall mean that review of the methods, manners, operations, and costs of the health care provided by HCPs to Patients which review may be performed by COFINITY and/or its agents and/or such third parties with which COFINITY elects to contract to perform such tasks. The purpose of Peer Review shall be to promote quality health care , cost control and proper billing practices . PROVIDED HOWEVER, the review to be performed within this definition shall not be for the purpose of, nor result in, the approval or denial of a Patient's coverage for health care services or other benefits; that type of review shall remain the province of each Insurer (or its third party administrator or other assignee).

I.         "PRIMARY CARE PHYSICIAN" shall mean an HCP practicing in one or more of the following areas: family practice; general practice; internal medicine; obstetrics and gynecology; or pediatrics, and who has agreed to provide primary care services and to coordinate and manage all Covered Services for Patients who have selected or been assigned to such Participating Provider, if the applicable Health Plan provides for a Primary Care Physician.

J.         "QUALITY MANAGEMENT ACTIVITIES" shall mean those areas of concern relating to quality of care and quality of service for Patients. The purpose of quality management activities is to enhance the delivery of healthcare. Quality of care refers to the extent to which services provided by HCPs are consistent with current standards of care and contribute to optimum health outcomes. Quality of service refers to the extent to which services provided by HCPs meet the reasonable expectations of Patients for timely, efficient and courteous services.

K.        "RULES AND REGULATIONS" shall mean those provisions, standards, formats, methods, forms, and/or procedures, implemented by COFINITY from time to time, to effectuate the intent of this Agreement. Same shall include, but not be limited to, provisions, forms, procedures etc., with respect to: establishing or confirming HCP's eligibility to receive payment from any Insurer for Covered Services provided; the submission of proper claims; collecting any co-payments from Patients; and for the timely and orderly operation of Peer Review.

2. INDEPENDENT CONTRACTOR.

It is specifically agreed and understood that in performing the services herein specified, HCP is acting as an independent contractor and not as an agent or employee of COFINITY. The parties hereto further acknowledge that Patients to whom services are rendered by HCP, for which HCP is paid pursuant to this Agreement, shall not be third party beneficiaries of the obligations assumed by either party under this Agreement. Except as provided in paragraph 13 herein, nothing contained in this Agreement shall be construed to create the relationship of principal and agent, partnership, joint venture or any other relationship between the parties hereto other than the relationship of independent contractors.

3. TERM/BREACH.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

A.      This Agreement shall be effective as of the date of execution hereof and shall remain in effect for a period of one (1) year; provided however that either party may terminate this Agreement, without cause, at any time, effective thirty (30) days after tendering written notice to the other party. If termination is not so effectuated, then this Agreement shall automatically renew each and every year hereafter, for a period of one (1) year, commencing immediately upon expiration of the preceding term, upon the same terms and conditions contained herein.

B.      In the event of a breach of this Agreement:

(i) by HCP, or if an adverse determination is rendered against HCP after Peer Review, then COFINITY shall notify HCP in writing, of said breach or adverse determination, and HCP shall have ten (10) days after such notice has been served to cure same. If said breach or adverse determination is not cured within said ten (10) days, then COFINITY may immediately terminate this Agreement.

(ii) by COFINITY, then HCP shall notify COFINITY in writing of said breach and COFINITY shall have ten (10) days after such notice has been served to cure said breach. If said breach is not cured within said ten (10) days, then HCP may immediately terminate this Agreement.

C.      In the event HCP's license is suspended, restricted, limited, or terminated, or COFINITY otherwise determines in its sole discretion that HCP's continued participation in the COFINITY network may adversely affect the safety of Patients, then COFINITY may immediately terminate this Agreement.

Termination of this Agreement, as provided herein, shall be the sole and exclusive remedy of both parties hereto in the event of any breach of this Agreement; provided however, except as provided in subparagraph C hereinabove, COFINITY will comply with the terms of its intermediary disciplinary action program then in effect prior to terminating this Agreement for any such breach. In the event of any termination of this Agreement, until all claims for Covered Services provided prior to the expiration of the effective day of termination have been paid in full, COFINITY will continue using its best efforts to obtain collection from any Insurer and both parties shall continue to perform as reasonably necessary to wind-up their outstanding obligations.

4. HCP's SERVICES.

A.      In all States where COFINITY is doing business and HCP is providing health care services, HCP shall provide appropriate and/or Medically Necessary Covered Services to every Patient (i.e. regardless if the Covered Services are covered under a self funded health benefit plan, a group or individual health care insurance policy, an auto insurance policy, or any other indemnity plan under which an Insurer provides specific health benefits for the Patient).

B.      HCP shall contact the applicable Insurer (or its third party administrator, if any) to determine the eligibility status and extent of coverage of any prospective Patient.

C.      In an emergency situation wherein HCP seeks to admit a Patient for health care services, HCP shall call and inform COFINITY of such emergency admission: (i) if the admission occurs on a Monday-Thursday: no later than three (3) business days after the time of such admission; and (ii) if the admission occurs on a Friday-Sunday: no later than the ensuing Wednesday.

D.      HCP shall at all times render health care services in accordance with the recognized standards of acceptable professional medical practice in the community in which HCP is located.

E.      Each HCP who is a MD, DO, DDS, DPM, DC, shall provide twenty-four (24) hour, seven (7) day a week call coverage. COFINITY reserves the right to waive this obligation for HCPs who are not Primary Care Physicians.

F.      HCP shall not differentiate or discriminate in the treatment of Patients or in the quality of services delivered to Patients on the basis of race, sex, age, religion, place of residence, health status or source of payment.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

G.      COFINITY and/or an Insurer contracting with COFINITY has or may seek to contract to serve Medicare and Medicaid beneficiaries ("Government Programs"). To the extent COFINITY and/or an Insurer contracting with COFINITY participates in such Government Programs, HCP agrees, on behalf of itself and any subcontractors of HCP acting on behalf of HCP, to be bound by all rules and regulations of, and all requirements applicable to, such Government Programs. With respect to patients of Medicare Plans, Provider acknowledges that compensation under this Agreement for such Patients constitutes receipt of Federal funds.

H.      COFINITY reserves the right to introduce and designate HCP's participation in new Health Plans and products during the term of this Agreement and will provide HCP with written notice of such new Health Plans and products and the associated compensation. Nothing herein shall require that COFINITY identify, designate or include HCP as a preferred participant in any specific Health Plan or product; provided, however, HCP shall accept compensation in accordance with this Agreement for the provision of any Covered Services to Patients under a Health Plan or product in which HCP has agreed to participate hereunder.

5.  COFINITY'S SERVICES.

COFINITY shall provide pre-processing and analysis services to HCP which services shall include:

A.      Preprocessing and coordination of HCP's billing to all Insurers. Such preprocessing shall include, but not be limited to, adjusting HCP's billings in accordance with the terms and conditions of paragraph 11 but no such adjustment shall constitute, or be construed to constitute, a determination of the medical necessity or appropriateness of the Covered Services provided to a Patient, as all such determinations shall remain the province of the Insurers (or their third party administrators or other assignees). COFINITY shall use its best efforts to obtain payment for HCP from Insurers within twenty-one (21) business days of receipt of a properly and accurately prepared claim form.

B.      Compilation of statistical data.

6.  HCP's REPRESENTATIONS AND WARRANTIES.

HCP represents and warrants as follows:

A.      That HCP is a duly licensed health care provider in the State of Michigan and in all other States where HCP provides health care services (where any such license is required by law); that all of its licenses are unrestricted and in good standing; that it shall maintain such licenses without restriction and in good standing during all times while this Agreement is in effect; and that it shall not perform any health care services to or for the benefit of any Patient during any period any of its licenses is restricted or not in good standing.

B.      That in all situations where professionally proper, except for emergency services (including but not limited to emergency room care follow up) or if a referral is required by the Patient's Health Plan, to the extent permitted by law, and with the utmost regard for the care of any Patient, HCP shall use its best efforts to recommend/refer patients to other HCPs providing health care services to Patients pursuant to contracts with COFINITY, in order to promote quality health care services and to promote cost control in the service area in which the Patient resides. Except for an emergency, if a referral is required by the Patient's Health Plan, HCP shall provide Covered Services to Patients only upon prior referral of such patients by a Primary Care Physician to HCP on prescribed forms or by electronic means as instructed by the Insurer. Except for an emergency, payment for retroactive referrals shall be subject to adjustment or denial by Insurer in accordance with the applicable Health Plan. HCP agrees promptly to submit a report on the treatment of each Patient to the referring Primary Care Physician, if such Patient was referred to the HCP by a Primary Care Physician in accordance with the Patient's Health Plan.

C.      That HCP shall at all times cooperate with the Peer Review process and COFINITY's Quality Management Activities. Further, that HCP shall at all times abide by COFINITY's credentialing standards and policies in effect on this date, and any amendments thereto of which COFINITY tenders notice to HCP.

D.      That HCP currently maintains, and at all times while this Agreement is in effect shall maintain reasonable malpractice insurance with a recognized insurance carrier. HCP shall supply COFINITY with evidence of such

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

coverage upon demand.

E.     That HCP shall, at all times, maintain proper and legible Patient medical and billing records. HCP shall retain all Patient medical records for not less than seven (7) years. HCP shall, at all times, make medical records available to COFINITY, at no cost, and appropriate State and Federal authorities and their agents.

F.     That HCP shall cooperate with a Patient's Primary Care Physician, if applicable, including timely scheduling of appointments and appropriate communication after patient evaluation and treatment.

G.     That the Information Sheet, attached hereto as Exhibit "A", has been completed by HCP such that it only contains complete and truthful statements, and at all times hereafter, shall only contain complete and truthful statements. FROM AND AFTER THIS DATE, HCP shall immediately inform COFINITY of any change in facts or circumstances which may in any manner affect the completeness and truthfulness of the information contained on said Information Sheet, including but not limited to any change in address or telephone number; any change in status of any license; and any additions or deletions of physicians. Wherein HCP is a corporation, partnership, or other entity composed of or employing more than one (1) health care provider, each and every such individual health care provider shall complete an Information Sheet, and same shall be deemed to be a representation and warranty of and binding upon, the corporation, partnership, or other entity. HCP shall promptly complete and tender to COFINITY a separate Information Sheet for each State in which HCP provides health care services.

H.     That this Agreement and the execution and delivery hereof and the consummation of the transactions herein provided have been duly approved by HCP; do not violate any provision of HCP's charter, any license, or any agreement to which HCP is a party or is otherwise bound; and upon execution hereof will constitute valid and binding obligations of HCP in accordance with the terms hereof. Further, no consent or governmental approval is required in connection with the consummation of the transactions contemplated hereby, and the person executing this Agreement on behalf of HCP has the requisite authority to bind HCP.

## 7.  COFINITY'S REPRESENTATIONS AND WARRANTIES.

COFINITY represents and warrants as follows:

A.     That it is a duly qualified corporation, in good standing, in the State of Delaware, and that it is authorized to conduct business in this State.

B.     That this Agreement and the execution and delivery hereof and the consummation of the transactions herein provided have been duly approved by COFINITY; do not violate any provision of COFINITY's charter, any license, or any agreement to which COFINITY is a party or is otherwise bound; and upon execution hereof will constitute valid and binding obligations of COFINITY in accordance with the terms hereof. Further, no consent or governmental approval is required in connection with the consummation of the transactions contemplated hereby, and the person executing this Agreement on behalf of COFINITY has the requisite authority to bind COFINITY.

## 8.  DISCLAIMER OF LIABILITY.

Notwithstanding anything contained herein to the contrary, COFINITY shall not be liable and/or responsible for:

A.     Any failure of any Insurer to pay any submitted claim and/or billing. However, COFINITY agrees to assign to HCP any contractual rights to enforce payment which it may have against such Insurer.

B.     Any balance billing from Patients, or other responsible parties for any amounts owing.

C.     Any direct billing and collection of any payment from any other direct or indirect third party, and/or pursuant to any other contracted legal entitlements, including, but not limited to, a private group or indemnification program, for the same services covered under any agreement between COFINITY and any Insurer.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

D.      Any claim or cause of action for malpractice against HCP arising out of the health care services provided by HCP; and/or health care services provided by any other HCPs contracting with COFINITY which provide health care services pursuant to any Patient referral by HCP.

9. INSURER/PATIENT INFORMATION.

A.      As soon as reasonably possible, hereafter, COFINITY shall furnish to HCP a list of Insurers having a contract with COFINITY, and thereafter, reasonable updates of any additions and/or deletions thereto.

B.      Upon COFINITY's request, HCP shall promptly furnish to COFINITY during normal business hours, any requested information with respect to a Patient which COFINITY deems reasonably necessary for preprocessing of any claim pursuant to this Agreement.

C.      Upon COFINITY's request, HCP shall promptly furnish to COFINITY, during normal business hours, all information or data relating to the physical or psychological condition of any Patient, or the necessity, appropriateness, or the quality of health care rendered to any Patient, for the purposes of Peer Review; PROVIDED THAT prior to furnishing such requested information or data, HCP has received the written consent of the Patient; and/or HCP has received a valid order from a court of competent jurisdiction; and/or such disclosure is otherwise permitted by law. HCP covenants herein to use its best efforts to obtain such consent from each and every Patient prior to providing Covered Services to such Patient.

D.      COFINITY and HCP, respectively, shall maintain the confidentiality of all Patient information in their possession, and shall only disclose or communicate such information: (i) as necessary for the performance of such parties' obligations hereunder; (ii) as necessary for the processing of HCP's claims; (iii) as may be required or permitted by law; or (iv) pursuant to a written consent of the Patient.

10. PEER REVIEW/UTILIZATION MANAGEMENT.

A.      HCP hereby agrees to cooperate with the Peer Review process. Further HCP agrees that COFINITY shall be entitled to contract with a review entity and to release to such review entity, all Patient information provided by HCP pursuant to paragraph 9 hereinabove.

B.      HCP hereby agrees to comply with the terms and conditions of Insurers' utilization management programs. Such compliance shall include but not be limited to, calling for pre-authorization wherein required, and acceptance of any penalties for non-compliance assessed by an Insurer which have been approved by COFINITY.

C.      HCP shall comply with and accept policies of Insurers and AWCA regarding utilization management and claims payment logic, including, but not limited to re-bundling, inappropriate billing or coding.

11. PAYMENT FOR HCP SERVICES.

A.      HCP shall submit to COFINITY all claims for Covered Services within a reasonable time after the provision of such Covered Services. HCP shall submit same on its customary billing form and shall set forth therein its usual and customary charges for the Covered Services rendered. However, except as set forth in subparagraph C hereinbelow, HCP hereby agrees to accept as payment in full for all Covered Services rendered the lesser of:

1.      HCP's usual and customary charges for such services; or

2.      that amount set forth on the Master Payment Schedules.

HCP shall be entitled to recover from the applicable Insurer for Covered Services which are Medically Necessary and covered under a Patient's Health Plan, the amount determined hereinabove less any co-insurance or deductible specified in such Patient's Health Plan (which amounts HCP may recover from the Patient), and/or less any coordination of benefit

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

reimbursement for which another payor is prior obligated (which amounts HCP may recover from any other obligated third party payor). HCP shall not be entitled to collect any co-insurance or deductible from any Patient until HCP's bill has first been received and adjusted by COFINITY as set forth hereinabove. In the event the applicable Insurer fails to pay HCP for Covered Services which are Medically Necessary and covered under a Patient's Health Plan, after obtaining COFINITY's written consent, HCP may pursue the Patient (and any person legally responsible for the Patient) for payment. Except as specifically provided in the preceding sentence, HCP hereby agrees that the only Covered Services for which a Patient (and any person legally responsible for the Patient) may be liable, and be billed by HCP, are as follows:

    (i)    Covered Services for which prospective review is <u>not</u> required under the terms of the Patient's Health Plan, which are not covered by such Health Plan (e.g. elective plastic surgery), and for which the Patient (or any person legally responsible for the Patient) has agreed, in writing, to pay HCP prior to HCP providing such services; and

    (ii)    Covered Services for which prospective review is required under the terms of the Patient's Health Plan, which are determined by the Insurer or its agent to not be Medically Necessary, and for which HCP has satisfied the terms of subparagraph 11.D.3. hereinbelow; and

    (iii)    Co-payments, coinsurance, and deductible amounts required by the Patient's Health Plan

B.    HCP hereby acknowledges and agrees that COFINITY shall not be liable for payment of any charges for Covered Services; rather, COFINITY shall only be obligated to use its best efforts to obtain payment for HCP from any Insurer in an amount equal to that amount which HCP is entitled to receive from such Insurer as set forth in this Agreement.

C.    Except as specifically set forth in this subparagraph C, HCP shall not accept payment, or otherwise be compensated for services rendered, in an amount which exceeds that amount which HCP is entitled to receive as set forth hereinabove. In those situations, where coordination of benefits is applicable, other than when Medicare is primary and obligated to pay: (i) if another third party payor is prior obligated to pay HCP an amount equal to or in excess of the amount HCP is entitled to recover pursuant to the terms of this Agreement, then HCP shall not be entitled to recover from the Insurer or the Patient any monies for such Covered Services; (ii) if another third party payor is prior obligated to pay HCP an amount which is less than the amount HCP is entitled to recover pursuant to the terms of this Agreement, then HCP shall be entitled to recover from the Insurer or the Patient for such Covered Services, the difference between the amount payable by such other third party payor and the amount HCP is entitled to recover pursuant to the terms of this Agreement. In those situations where Medicare is primary and obligated to pay, Insurers shall pay HCP the amount of deductible, coinsurance and/or other plan benefits which are not covered services under Title XVIII of the Social Security Act, as amended, subject to the benefit limits and applicable rates of the applicable Health Plan. Further, NOTWITHSTANDING ANYTHING CONTAINED HEREINABOVE TO THE CONTRARY: HCP shall be entitled to, and shall use its best efforts to, collect any co-payment and/or deductible from each Patient wherein such co-payment is mandated by the terms of any contract between COFINITY and any Insurer and/or by the Rules and Regulations; HCP shall be entitled to pursue any other third party payor for any amount properly payable by such third party pursuant to this subparagraph C.

D.    Notwithstanding anything contained in this Agreement which can be construed to the contrary:

    1.    Wherein a Patient has commenced a course of treatment with HCP prior to midnight of the effective day of expiration or termination of this Agreement, until (i) the course of treatment is completed, or (ii) the Patient transfers his or her care to another provider, whichever occurs first, HCP shall accept as payment in full for all Covered Services rendered <u>after</u> the effective date of expiration or termination, that amount determined in accordance with the terms and conditions of this Agreement.

    2.    Claims not received by COFINITY within two (2) years of the date the Covered Services were rendered shall be deemed waived by HCP and HCP shall not be entitled to any reimbursement whatsoever from any person.

    3.    Wherein prospective review is required under an Insurer's Health Plan (including any utilization management program), and the services to be performed are prospectively denied after such review as not being Medically Necessary, then HCP shall not be entitled to any reimbursement whatsoever from the Patient (or any person legally responsible for the Patient) unless HCP obtains a written waiver from the Patient (or the person legally responsible for the Patient) which satisfies all of the following conditions, in all situations other than

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

emergency situations: (i) the waiver must be obtained prior to rendering such services; (ii) the waiver must specify those services which the Insurer or its agent denied as not being Medically Necessary; and (iii) the waiver must clearly state that the Patient (or the person legally responsible for the Patient) shall be responsible for payment of those services.

4.      Wherein an Insurer or its agent subsequently determines that a person who received Covered Services was (i) not a person and/or dependent of a person who is covered under a Health Plan of that Insurer or (ii) ineligible for coverage due to fraud, misrepresentation or non-disclosure on an application for coverage or enrollment form, then that Insurer shall not be liable for payment for the Covered Services rendered to such person, and HCP may directly collect its fee for such services from such person or anyone legally responsible for such person.

5.      Any appeal regarding the amount of compensation received by HCP for a claim must be made to the Insurer within one (1) year of receipt of payment, or denial, from such Insurer.

6.      HCP may freely communicate with Patients regarding their treatment regardless of benefit coverage limitations

E.      It is hereby acknowledged and agreed that the reimbursement amounts and/or rates set forth on the Master Payment Schedules prepared by COFINITY are the product of discussions with laymen, doctors, business advisors and individuals in the medical field and insurance business; that same were determined by COFINITY in its sole and exclusive judgment and not in combination with health care providers of any particular geographic area. The adoption of such reimbursement amounts and/or rates herein is the result of arms-length negotiation by and between COFINITY and HCP only. As such reimbursement amounts and/or rates were not compiled in combination with other health care providers, same only represent the determination and agreement of the parties to this Agreement. The parties hereto hereby further acknowledge and agree that these reimbursement amounts and/or rates which resulted from their independent bargaining are special and confidential such that the disclosure of such reimbursement amounts and/or rates to any other hospitals and/or health care providers, except as may be required or result as a matter of law and/or from the ordinary course of business of HCP or COFINITY respectively, will result in significant damage to both parties. Accordingly, the parties hereto hereby covenant not to disclose such reimbursement amounts and/or rates except as may be required or result as a matter of law and/or from the ordinary course of business of HCP or COFINITY respectively.

12. INFORMATIONAL LISTING/POSTING.

HCP hereby authorizes COFINITY to list its name, address and telephone number, and those of its professional agents or employees where applicable, in any COFINITY directory(ies) of participating hospitals and HCPs. Further, HCP shall, at all times post COFINITY's sign and/or logo provided to HCP by COFINITY, in a prominent place in its patient lobby (and/or emergency room where applicable). Hereafter, COFINITY shall include HCP's name in a directory of HCPs, which inclusion shall occur at the time of annual publication, or if same is past, then in the next scheduled update or revision to same. However, nothing contained herein shall be construed to require COFINITY to issue a special publication including HCP's name until such time as COFINITY deems any such publication necessary. Breach of this paragraph by COFINITY shall entitle HCP to terminate this Agreement as provided in Section 3 as its sole and exclusive remedy.

13. AUTHORIZATION TO NEGOTIATE.

HCP hereby authorizes COFINITY to negotiate with any Insurer for the limited purpose of obtaining a health care reimbursement contract between any such entity and COFINITY, which provides for reimbursement for charges in accordance with the Master Payment Schedules for specific health care services provided to Patients. Further, nothing contained herein shall be construed to limit HCP's right to participate in any alternative health care delivery system or otherwise contract with any other third party.

14. RULES AND REGULATIONS.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

HCP hereby agrees, accepts and consents to be bound by COFINITY's Rules and Regulations, including but not limited to those set forth in COFINITY's Provider Procedure Manual, and any additions and/or deletions and/or amendments thereto (collectively a "Modification"), without exception. Provided, however, no such Modification shall be effective as to HCP unless and until COFINITY has provided HCP with not less than thirty (30) day prior written notice of such Modification. Further, COFINITY shall abide by the Provider Complaint, Grievance and Appeal Process set forth in its Provider and/or Hospital Procedure Manual(s). COFINITY agrees that it will not unreasonably add, delete, amend, modify, and/or implement any Rules and Regulations (including but not limited to those set forth in its Provider Procedure Manual).

15. ADDITIONAL DOCUMENTS.

The parties hereto covenant, from time to time, to execute, acknowledge and deliver any and all additional instruments and/or documents that may be reasonably required to effectuate the intent of this Agreement.

16. NOTICES.

Except as otherwise specifically provided in any paragraph of this Agreement, wherever it is provided herein that notice, demand, request, consent, approval, or other communication ("Notice") shall or may be given, to either of the parties by the other, same shall be in writing, and, any law or statute to the contrary notwithstanding, shall not be effective for any purpose whatsoever unless same shall be given or served personally or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

COFINITY:     28588 Northwestern Highway, Ste 250          HCP: 29275 Northwestern Hwy, Ste 100
              Southfield, Michigan  48034                        Southfield, MI 48034

or at such other address as either party may from time to time designate by notice to the other as herein provided. Any Notice hereunder shall be deemed to have been given or served; when personally delivered; on the third business day following the time same is deposited in the United States Mail in the manner aforesaid; or upon actual receipt; whichever event occurs first. Any party hereto may change its address for the purposes of this paragraph by tendering notice of such change of address to the other party in the manner herein provided for giving notice.

17. WAIVER.

The failure of either party to this Agreement to insist upon strict performance of any of the terms, covenants, or conditions hereof shall not be deemed a waiver of any rights or remedies that party or any other such party may have and shall not be deemed a waiver of any subsequent breach or default in any of such terms, covenants, or conditions.

18. SEVERABILITY.

It is further understood and agreed by the parties hereto that if any of the provisions of this Agreement, or the application thereof to any person or circumstances shall, to any extent contravene, or be invalid or unenforceable under, the laws of the particular state, county, or jurisdiction where used, such contravention or invalidity shall not invalidate the whole Agreement; rather the Agreement shall be construed as if not containing the particular provision or provisions held to be invalid, and the rights and obligations of the parties shall be construed and enforced accordingly and the remainder of this Agreement shall not be affected thereby and each provision of the Agreement shall be valid and enforceable to the fullest extent permitted by the law.

19. ENTIRE AGREEMENT; COUNTERPARTS.

This Agreement sets forth all of the covenants, promises, agreements, conditions, and understandings between the parties hereto concerning the subject matter of this Agreement, and there are no covenants, promises, agreements, conditions, or understandings heretofore made, either oral or written, between the parties hereto, other than as herein set forth. This Agreement constitutes the entire agreement and supersedes any and all other prior understandings, both written and oral, between the parties hereto with respect to the subject matter hereof, and except as otherwise specifically provided in any paragraph of this Agreement, this Agreement may not be amended, waived, changed, modified, extended or discharged orally, but only by agreement in writing, signed by each party hereto. This Agreement may be executed simultaneously in several

counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

20. SUCCESSORS.

This Agreement is personal in the nature of the services performed by HCP and therefore may not be assigned by HCP, nor shall the benefits hereof inure to its heirs and/or successors in interest. COFINITY shall be entitled to assign this Agreement and/or the benefits hereof shall inure to its legal representatives, successors and/or assigns without limitation.

21. GOVERNING LAW.

This Agreement shall be governed by, and construed in accordance with the laws of the State of Michigan.

22. CAPTIONS.

The captions and section numbers appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe, or describe the scope or intent of such sections or articles nor in any way affect this Agreement.

23. PRONOUNS.

The pronouns and relative words used herein shall be interpreted in accordance with the intent of this Agreement, such that the pronouns shall be read as if written in the masculine, feminine, or neuter, singular or plural, respectively, wherein such construction is necessary for proper interpretation of the terms of this Agreement.

24. ADDENDA.

The attached exhibits (and any and all other exhibits which may be initialed by the parties hereafter) have been agreed to by the parties and are hereby incorporated by reference, it being the intention of the parties that they shall become a binding part of this Agreement as if fully set forth herein. Further, any and all references to "Agreement" in this Agreement shall be deemed to include all such exhibits.

25. BUSINESS ASSOCIATE PROVISIONS.

    A.      Definitions

    1.      Terms used, but not otherwise defined, in this Section shall have the same meaning as those terms in 45 CFR 160.103 and 164.103, 304 and 501. Specific definitions of terms in this Section are:

    (a)      "Affiliate" shall mean any corporation, partnership or other legal entity directly, or indirectly, owned or controlled by, or which owns or controls, or which is under common ownership or control with COFINITY.

    (b)      "Agreement" shall mean this HCP Agreement with COFINITY.

    (c)      "Business Associate" shall mean COFINITY.

    (d)      "Covered Entity" shall mean **University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC** under Tax Identification Number **382376857**.

    (e)      "Individual" shall have the same meaning as the term "individual" in 45 CFR 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR 164.502(g).

    (f)      "Privacy Rule" shall mean the Standards for Privacy of Individually, Identifiable Health Information at 45 CFR part 160 and part 164, subparts A and E.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

(g)     "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.

(h)     "Security Incident" shall have the same meaning as the term "security incident" in 45 CFR 164.304, limited to security incidents that involve electronic PHI created or received by Business Associate from or on behalf of Covered Entity.

(i)     "Security Rule" shall mean the Standards for the Protection of Electronic Protected Health Information at 45 CFR parts 160 and 164, subpart C.

(j)     Secretary" shall mean the Secretary of the Department of Health and Human Services or his/her designee.


B.      Obligations and Activities of Business Associate

        1.      Business Associate agrees:

(a)     not to use or disclose PHI other than as permitted or required by this Section or as required by law and that it will use appropriate safeguards to prevent unauthorized use or disclosure of the PHI.

(b)     to implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of electronic PHI.

(c)     to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Section.

(d)     to report to Covered Entity any use or disclosure of PHI unauthorized by this Section or any security incident of which it becomes aware.

(e)     to ensure that any COFINITY agent, including a subcontractor, to whom it provides PHI agrees to the same restrictions and conditions that apply through this Section to Business Associate with respect to such information.

(f)     to provide reasonable access, at the request of Covered Entity, to PHI in a Designated Record Set, to Covered Entity in order to meet the requirements under 45 CFR 164.524.

(g)     to make any amendment(s) to PHI in a Designated Record Set that the Covered Entity directs or agrees to pursuant to 45 CFR 164.526 at the request of Covered Entity or an Individual, and in a reasonable time and manner designated by Covered Entity.

(h)     to make internal practices, books, and records relating to the use and disclosure of PHI available to the Covered Entity, or at the request of the Covered Entity to the Secretary, in a reasonable time and manner designated by the Covered Entity or the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule or the Security Rule.

(i)     to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.

(j)     to provide to Covered Entity or an Individual, in a reasonable time and manner, information collected in accordance with subsection B.1.(i) to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.


C.      Permitted Uses and Disclosures by Business Associate

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

1.   General Use and Disclosure:

Except as otherwise limited in this Section, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Covered Entity to effectuate the purpose and intent of this Agreement provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity.

2.   Specific Use and Disclosure:

Except as otherwise permitted in this Section, this Agreement or as required by law, Business Associate may use or disclose PHI:

(a)     for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate, provided that it obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

(b)     to provide Data Aggregation services to Covered Entity as permitted by 42 CFR 164.504(e)(2)(i)(B).

D.     Obligations of Covered Entity

1.     Covered Entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Covered Entity and shall provide Business Associate with:

(a)     notice of privacy practices that Covered Entity produces in accordance with 45 CFR 164.520, as well as any changes to such notice.

(b)     any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures.

(c)     notice of any restriction to the use or disclosure of PHI that Covered Entity has agreed to in accordance with 45 CFR 164.522.

E.     Term and Termination

1.     Term. The obligation of this Section shall be effective upon complete execution of this Agreement and shall terminate when all of the PHI is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy PHI, protections are extended to such information, in accordance with the termination provisions in this Section.

2.     Termination for Cause. If Business Associate has breached a material term of this Section, Covered Entity shall provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement. If Business Associate does not cure the breach or end the violation within the time specified by the Covered Entity, the Covered Entity may immediately terminate this Agreement if the breach is material to the terms of this Section.

3.     Effect of Termination.

a.     Except as provided in paragraph b. of this subsection, upon notice of termination of this Agreement, for any reason, Business Associate shall return or destroy all PHI. This provision shall apply to PHI that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the PHI.

b.     In the event that Business Associate determines that returning or destroying the PHI is infeasible, Business Associate shall provide to Covered Entity notification that return or destruction is infeasible. Business Associate shall extend the protections of this Section to

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

F.     Miscellaneous

1.     Regulatory References. A reference in this Section to a section in the Privacy or Security Rule(s) means the section as in effect or as amended, and for which compliance is required.

2.     Assignment.     Covered Entity acknowledges that the duties and obligations under this Section may be performed by, or assigned to, an Affiliate and that in the event Covered Entity contracts with an Affiliate that will perform services covered hereunder, this Section shall apply to such Affiliate.

3.     Amendment. The Parties agree to take such action as is necessary to amend this Section from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy and/or Security Rule(s) and the Health Insurance Portability and Accountability Act.

4.     Survival. The respective rights and obligations of Business Associate under subsection E above shall survive the termination of this Agreement.

The parties hereto have executed this Agreement on the date first above written.


"HCP"

By: _____
       Nick Green (Aug 26, 2013)

Its:  Administrator

"COFINITY"

Cofinity, Inc., a Delaware corporation

By: _____
       Suzanne Hall (Aug 26, 2013)

Its:  Network Market Head


University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

MASTER PAYMENT SCHEDULE

1) For covered services under a self funded health benefit plan, or group or individual health care insurance policy, or other indemnity plan under which an Insurer provides specific health benefits for a Patient, the Master Payment Schedule shall be set at 110% of the Master Payment Schedule for southeast Michigan.

2) For covered services which are covered under Worker's Compensation, including Aetna Worker's Comp Access, LLC (AWCA), HCP shall accept as payment in full the lesser of 90% of the state of Michigan Worker's Compensation fee schedule, or billed charges.

3) For covered services which are covered under an auto insurance plan or laws, HCP shall accept as payment in full the lesser of:

    1)  85% of billed charges, or

    2)  the State of Michigan auto fee schedule, in the event that the state of Michigan implements an auto fee schedule for health services related to auto policies.

University Neurosurgical Associates PC dba Michigan Head and Spine Institute PC
Effective 10/1/13

# EXHIBIT D



# Cofinity Auto Network
# Payer Report

03/25/2014

- Payers listed are in alphabetical order
- Group name is after payer
- Verification telephone number by group
- Contact Cofinity Customer Service 1-800-831-1166 with questions

| | Term Date (if any) | | Term Date (if any) | | Term Date (if any) |
|---|---|---|---|---|---|
| **ALLSTATE-MITCHELL-GRAND RAPIDS** | | **3200 EAGLE PARK** | | **GRAND RAPIDS**   **MI** | **49525** |
| ALLSTATE MITCHELL-GRAND RAPIDS | (248) 994-9400 | ALLSTATE-MITCHELL GRAND RAPIDS | (248) 994-9400 | | |
| **ASU GROUP - RECOVERY UNLIMITED** | | **2120 UNIVERSITY PARK DR** | | **OKEMOS**   **MI** | **48864** |
| AMERICAN COUNTRY | (800) 968-7858 | AMERISURE INSURANCE CO IN PIP | (800) 968-7858 | ASU GROUP - HFN AUTO | (517) 381-7710 |
| ASU GROUP - RECOVERY UNLIMITED | (517) 381-7710 | ASU GROUP -IHP AUTO | (517) 381-7710 | ASU MI NON-PAR - IHP-USAMCO | (517) 381-7710 |
| CITIZENS INSURANCE CO IN PIP | (800) 968-7858 | FOUNDERS INSURANCE CO - IN | (800) 968-7858 | INDIANA FARMERS INS IN PIP | (800) 968-7858 |
| INDIANA FARMERS INSURANCE | (517) 381-7710 | MEDICASE MANAGEMENT INC IN PIP | (800) 968-7858 | MICHIGAN MILLERS - ASU | (800) 968-7858 |
| NORTHERN MUTUAL INSURANCE - AU | (800) 968-7858 | PARTNER MUTUAL INS - AUTO | (517) 381-7710 | PEKIN INSURANCE IN PIP | (800) 968-7858 |
| STRATFORD INS CO - ASU | (800) 968-7858 | WOLVERINE MUTUAL INS | (800) 968-7858 | | |
| **AUDIT ASSOC - P C E** | | **28530 ORCHARD LAKE RD**   **STE 101** | | **FARMINGTON HILLS**   **MI** | **48334** |
| AUDIT ASSOC - PCE - AUTO | (517) 886-1517 | MICHIGAN PROPERTY & CASUALTY | (517) 886-1517 | | |
| **AUTO INJURY SOLUTIONS-CO** | | **6451 MERRITT BOULEVARD**   **SUITE A** | | **DAPHNE**   **AL** | **36526** |
| CONCENTRA - DENVER | (800) 989-0203 | | | | |
| **AUTO INJURY SOLUTIONS-IN** | | **6451 MERRITT BOULEVARD**   **SUITE A** | | **DAPHNE**   **AL** | **36526** |
| CONCENTRA INDIANAPOLIS | (800) 989-2203 | | | | |
| **BRISTOL WEST** | | **2525 LAKE PARK BLVD** | | **WEST VALLEY CITY**   **UT** | **84120** |
| BRISTOL WEST | ( ) - | BRISTOL WEST-INGENIX | ( ) - | | |
| **BRISTOL WEST MITCHELL** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO**   **CA** | **92122** |
| BRISTOL WEST MITCHELL | (800) 424-1132 | | | | |
| **BROWN REVIEW** | | **29866 TELEGRAPH ROAD** | | **SOUTHFIELD**   **MI** | **48034** |
| ACE AMERICAN INSURANCE COMPANY | (248) 357-2195 | BROWN REVIEW | (248) 357-2195 | BROWN REVIEW - GEICO | (248) 357-2195 |
| BROWN REVIEW FREMONT | (248) 357-2195 | BROWN REVIEW MANAGEMENT | (248) 357-2195 | BROWN REVIEW MGMT-IHP-AUTO | (248) 357-2195 |
| CHARTIS INSURANCE | (248) 357-2195 | CITY OF DETROIT | (248) 357-2195 | DAVID MORSE & ASSOC | (248) 357-2195 |
| ESIS - BROWN REVIEW | (248) 357-2195 | FRONTIER ADJUSTERS | (248) 357-2195 | GALLAGHER BASSETT BROWN | (248) 357-2195 |
| GREAT LAKES CASUALTY | (248) 357-2195 | MICHIGAN MUNICIPAL RISK MANAGE | (248) 357-2195 | NORTHPOINTE INSURANCE | (248) 357-2195 |

Term Date (if any) | Term Date (if any) | Term Date (if any) | Term Date (if any)

| SOUTH VALLEY CLAIMS INC | (248) 357-2195 | SOUTHERN MI INSURANCE | (248) 357-2195 | VERICLAIM | (248) 357-2195 |

**CARE WORKS - FAIR ISAAC** — 5935 CORNERSTONE CT — WEST SAN DIEGO — CA — 92121

| CARE WORKS - FAIR ISAAC | (888) 627-7586 | CAREWORKS - FI-MI | (888) 627-7586 | | |

**CHEROKEE INSURANCE - AUTO** — 342 MOUND RD — STERLING HEIGHTS — MI — 48310

| CHEROKEE  INSURANCE-AUTO | (800) 201-0450 | CHEROKEE INSURANCE - AUTO | (800) 201-0450 | | |

**CITIZENS ALLMERICA** — 808 HIGHLANDER WAY — HOWELL — MI — 48843

| CITIZENS ALLMERICA | (517) 540-3982 | CITIZENS ALLMERICA-NOT ACTIVE | (517) 540-3982 | 09/29/2005 | |

**CITIZENS INSURANCE** — 808 HIGHLANDER WAY — HOWELL — MI — 48844

| CITIZENS ALLMERICA 2 | (978) 266-5209 | CITIZENS INSURANCE | (517) 540-3982 | CITIZENS INSURANCE  MI IHP USA | (978) 266-5209 |
| CITIZENS INSURANCE-IHP-HFN-MI | (978) 266-5209 | CITIZENS INSURANCE-IHP-MI | (978) 266-5209 | | |

**CONCENTRA PITTSBURGH** — 720 COOL SPRINGS BLVD — SUITE 300 — FRANKLIN — TN — 37067

| CONCENTRA PITTSBURGH | (800) 333-8508 | | | | |

**CONCENTRA-AUTO INJURY SOLUTIONS** — 5080 SPECTRUM DRIVE — SUITE 1200 TOWER — ADDISON — TX — 75001

| AIS - ACIC AMERICAN COMMERCE I | (800) 989-2203 | AIS - ALLSTATE INSURANCE | (800) 989-2203 | AIS - AMERICAN COMMERCE INSURA | (800) 989-2203 |
| AIS - AVIS | (800) 989-2203 | AIS - CENTURY | (800) 989-2203 | AIS - COMMERCE MA | (800) 989-2203 |
| AIS - COUNTRYWAY INSURANCE | (800) 989-2203 | AIS - GEICO | (800) 989-2203 | AIS - MAPFRE | (800) 989-2203 |
| AIS - METROPOLITAN AUTO | (800) 989-2203 | AIS - PRESERVER | (800) 989-2203 | AIS - SCOTTSDALE INS. | (800) 989-2203 |
| AIS - SENTRY | (800) 989-2203 | AIS - STATE WIDE INSURANCE | (800) 989-2203 | AIS - TOWER NATIONAL GROUP | (800) 989-2203 |
| AIS - TRAVELERS | (800) 989-2203 | AIS - WORKMENS INS. | (800) 989-2203 | AIS - ZURICH | (800) 989-2203 |
| AIS CANAL INSURANCE | (800) 989-2203 | AIS CENDANT | (800) 989-2203 | AIS MUTUAL OF ENUMCLAW | (800) 989-2203 |
| AIS SAFECO | (303) 425-7404 | AIS SAFECO | (317) 262-6106 | 01/01/2014 AIS SEDGWICK | (800) 989-2203 |
| AIS USAA | (800) 989-2203 | AIS-SEDGWICK-AMEX | (800) 989-2203 | CONCENTRA ALABAMA | (800) 989-2203 |
| FARMERS MUTUAL OF NE | (800) 989-2203 | FIRST KEYSTONE | (800) 989-2203 | GEICO | (800) 989-2203 11/30/2012 |
| HERTZ-AIS | (800) 989-2203 | INFINITY | (800) 989-2203 | MOFB | (800) 989-2203 |
| NATIONWIDE INSURANCE | (800) 989-2203 | OHIO SECURITY | (800) 989-2203 | SCOTTSDALE INSURANCE COMPANY | (800) 989-2203 |
| WEST AMERICAN | (800) 989-2203 | | | | |

**CONTINENTAL CASUALTY CO. MITCHELL** — 6220 GREENWICH DRIVE — SAN DIEGO — CA — 92112

| CONTINENTAL CASUALTY CO MITCH | (  )   - | CONTINENTAL CASUALTY CO. MITCHELL | (  )   - | | |

**CORVEL - CHICAGO LOOP** — 38705 7 MILE RD — STE 230 — LIVONIA — MI — 48152

| CORVEL - CHICAGO LOOP | (312) 456-6060 | | | | |

**CORVEL - CINCINNATI** — 38705 7 MILE RD — STE 230 — LIVONIA — MI — 48152

| CORVEL - CINCINNATI | (513) 794-4040 | | | | |

**CORVEL - CLEVELAND** — 7530 LUCERNE DR — SUITE 400 — CLEVELAND — OH — 44130

| | | | | | |
|---|---|---|---|---|---|
| CORVEL - CLEVELAND | (440) 885-7377 | | | | |
| **CORVEL - DOWNERS GROVE** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - DOWNERS GROVE | (630) 874-7300 | | | | |
| **CORVEL - FLORHAM PARK** | | **2010 MAIN STREET** | **SUITE 600** | **IRVINE** | **CA**   **92614-8427** |
| CORVEL - FLORHAM PARK | (973) 377-0110 | CORVEL - FLORHAM PARK | (315) 453-8730 | | |
| **CORVEL - INDIANAPOLIS** | | **301 PENNSYLVANIA PKWY** | **STE 200** | **INDIANAPOLIS** | **IN**   **46280** |
| CORVEL - INDIANAPOLIS | (317) 816-6996 | | | | |
| **CORVEL - LAS COLINAS** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - LAS COLINAS | (972) 239-1391 | | | | |
| **CORVEL - LIVONIA** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - LIVONIA | (248) 412-6000 | | | | |
| **CORVEL - MATTOON** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - MATTOON | (217) 234-2006 | | | | |
| **CORVEL - MILWAUKEE** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - MILWAUKEE | (800) 275-0064 | | | | |
| **CORVEL - MINNEAPOLIS** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - MINNEAPOLIS | (612) 436-2486 | | | | |
| **CORVEL - NORRISTOWN** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - NORRISTOWN | (610) 676-0200 | | | | |
| **CORVEL - PHOENIX** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - PHOENIX | (602) 287-8722 | | | | |
| **CORVEL - ST LOUIS** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - ST LOUIS | (314) 835-1100 | | | | |
| **CORVEL - SYRACUSE** | | **251 SALINA MEADOWS PWKY** | **STE 240** | **NORTH SYRACUSE** | **NY**   **13212** |
| CORVEL - SYRACUSE | (800) 346-6333 | CORVEL - SYRACUSE | (866) 727-9264 | | |
| **CORVEL - TAMPA** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - TAMPA | (813) 287-2920 | | | | |
| **CORVEL - WEST DES MOINES** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - WEST DES MOINES | (515) 225-9668 | | | | |
| **CORVEL COLUMBIA** | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI**   **48152** |
| CORVEL - COLUMBIA | (803) 750-1518 | | | | |
| **CORVEL HANOVER** | | **440 LINCOLN STREET** | **SUITE 362** | **WORCHESTER** | **MA**   **01653** |

| | Term Date (if any) | | | | | Term Date (if any) |
|---|---|---|---|---|---|---|
| CORVEL - HARTFORD | (508) 855-5579 | CORVEL HANOVER | (508) 855-5579 | | | |
| **CORVEL- HARRISBURG** | | **600 WILSON** | **SUITE 100** | **MECHANICSBURG** | **PA** | **17055** |
| CORVEL - HARRISBURG | ( ) - | CORVEL-HARRISBURG | ( ) - | | | |
| **CORVEL HARTFORD** | | **333 EAST RIVER DRIVE** | **SUITE 501** | **EAST HARTFORD** | **CT** | **06108** |
| CORVEL - HARTFORD | (860) 904-4815 | CORVEL HARTFORD | (860) 904-4815 | | | |
| **CORVEL JACKSONVILLE** | | **10151 DEERWOOD PARK BLVD** | **BIDG 300** | **JACKSONVILLE** | **FL** | **32256** |
| CORVEL - JACKSONVILLE | (904) 240-3500 | CORVEL JACKSONVILLE | (904) 240-3500 | | | |
| **CORVEL- NASHVILLE** | | **810 CRESCENT CENTRE DR** | **SUITE 100** | **FRANKLIN** | **TN** | **37067** |
| CORVEL - NASHVILLE | (615) 371-8828 | | | | | |
| **CORVEL-RICHMOND** | | **9030 STONY POINT PARKWAY** | **SUITE 470** | **RICHMOND** | **VA** | **23235** |
| CORVEL - RICHMOND | (804) 267-2982 | CORVEL-RICHMOND | (804) 267-2982 | | | |
| **COVENTRY HLTH CARE KING OF PRUSSIA** | | **700 AMERICAN AVE** | **SUITE 201** | **KING OF PRUSSIE** | **PA** | **19406** |
| COVENTRY HL CR KING OF PRUSSIA | (800) 221-2836 | COVENTRY-HERTZ | (800) 333-8508 | COVENTRY-MOTORIST MUTUAL | (800) 333-8508 | |
| **COVENTRY HLTH CARE-TAMPA** | | **3611 QUEEN PALM DR** | **SUITE 200** | **TAMPA** | **FL** | **33619** |
| COVENTRY HLTH CARE-TAMPA | (813) 663-3724 | COVENTRY-KEMPER INSURANCE | (800) 333-8508 | | | |
| **DUMMY PAYER - AUTO** | | | | | | |
| DUMMY GROUP - AUTO | (888) 888-8888 | | | | | |
| **EMC MITCHELL** | | **110 THEORY** | | **IRVINE** | **CA** | **92617** |
| EMC MITCHELL | (515) 345-2068 | | | | | |
| **ENCOMPASS - MITCHELL** | | **9889 WILLOW CREEK** | | **SAN DIEGO** | **CA** | **92131** |
| ENCOMPASS MITCHELL | (800) 895-8539 | 01/31/2007 ENCOMPASS MITCHELL | (800) 895-8539 | | | |
| **FARMERS PERSONAL** | | **1400 AMERICAN LANE** | **T1 - 13TH FLOOR** | **SCHAUMBURG** | **IL** | **60196** |
| FARMERS PERSONAL | (614) 734-3362 | | | | | |
| **FCCI INSURANCE GROUP** | | **6300 UNIVERSITY PKWY** | | **SARASOTA** | **FL** | **34240** |
| FCCI INSURANCE GROUP | (941) 907-7846 | | | | | |
| **FRANKENMUTH - PCE** | | **1 MUTUAL AVE** | | **FRANKENMUTH** | **MI** | **48787-0001** |
| FRANKENMUTH - PCE | (800) 234-4433 | FRANKENMUTH PCE | (800) 234-4433 | | | |
| **FRANKENMUTH MITCHELL** | | **110 THEORY** | | **IRVINE** | **CA** | **92617** |
| FRANKENMUTH MITCHELL | (800) 424-1132 | | | | | |
| **FRANKENMUTH MUTUAL** | | **39500 HIGH POINT BLVD** | **STE 400** | **NOVI** | **MI** | **48375** |
| FRANKENMUTH MUT | (800) 234-4433 | 07/15/2006 FRANKENMUTH MUTUAL | (800) 234-4433 | | | |
| **GENEX GROUP** | | **1051 PERIMETER DR** | | **SCHAUMBERG** | **IL** | **60173** |

| Term Date (if any) | | | | Term Date (if any) | | | Term Date (if any) |
|---|---|---|---|---|---|---|---|
| CRAWFORD AND COMPANY | (847) 619-9000 | FREMONT MUTUAL | (847) 619-9000 | GENEX GROUP | (800) 240-0809 | | |
| **GENEX HERTZ CLAIMS MANAGEMENT** | | **1051 PERIMETER DR** | | **SCHAUMBERG** | **IL** | | **60173** |
| GENEX HERTZ CLAIM MANAGEMENT | (888) 464-3639 | HERTZ - GENEX | (888) 464-3639 | | | | |
| **GENEX SECURA** | | **1051 PERIMETER DRIVE** | **SUITE 600** | **SCHAUMBURG** | **IL** | | **60173** |
| GENEX SECURA | (920) 996-6304 | SECURA INSURANCE GENEX | (920) 996-6304 | | | | |
| **HARTFORD MITCHELL** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | | **92122** |
| HARTFORD MITCHELL | (800) 424-1132 | | | | | | |
| **HEALTHSMART** | | **222 W LAS COLINAS BLVD** | **SUITE 600** | **IRVING** | **TX** | | **75039** |
| HEALTHSMART | (866) 659-9315 | | | | | | |
| **KEMPER MITCHELL** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | | **92122** |
| KEMPER DIRECT | (800) 835-0219 | KEMPER MITCHELL | (800) 835-0219 | KEMPER-MITCHELL | (800) 835-0219 | | |
| **MANAGEABILITY 1** | | **39500 HIGH POINTE** | **SUITE 400** | **NOVI** | **MI** | | **48375** |
| AMERICAN COUNTRY | (248) 348-8200 | BRISTOL WEST INSURANCE | (248) 348-8200 | CHURCH INSURANCE CO OF VT | (248) 348-8200 | | |
| ESURANCE | (248) 348-8200 | FOREMOST INSURANCE | (248) 348-8200 | FOUNDERS INSURANCE | (248) 348-8200 | | |
| FREMONT INSURANCE CO | (248) 348-8200 | GAB ROBBINS INC | (248) 348-8200 | GENERAL CASUALTY | (248) 348-8200 | | |
| L W NORMAN AND ASSOC | (248) 348-8200 | MANAGEABILITY 1 | (248) 348-8200 | MICHIGAN MUNICIPAL RISK MANAGEMENT AUTH | (248) 348-8200 | | |
| MPCGA - MI | (248) 348-8200 | MPCGA - OH | (248) 348-8200 | NATIONWIDE | (248) 348-8200 | 01/01/2011 | |
| STRONG RICH RESCHLI | (248) 348-8200 | | | | | | |
| **MAXCIS INC** | | **4843 CASCADE PKWY SE** | | **GRAND RAPIDS** | **MI** | | **49546** |
| MADSIF PROPERTY & CASUALTY | (616) 285-0060 | MAXCIS INC | (616) 285-0060 | | | | |
| **MCMC - NASHVILLE** | | **701 TECHNOLOGY DRIVE** | **SUITE 100** | **CANONSBURG** | **PA** | | **15317** |
| MCMC - NASHVILLE | (888) 350-1150 | MCMC - NASHVILLE - MI | (888) 350-1150 | MCMC - NASHVILLE - OH | (888) 350-1150 | | |
| **MCMC-AMERISURE** | | **160 TECHNOLOGY DRIVE** | **SUITE 201** | **CANONSBURG** | **PA** | | **15317** |
| AMERISURE - MCMC | (248) 615-9000 | | | | | | |
| **MCMC-CINCINNATI INS** | | **701 TECHNOLOGY DRIVE** | **SUITE 100** | **CANONSBURG** | **PA** | | **15317** |
| CINCINNATI INSURANCE | (888) 350-1150 | YORK CLAIMS SERVICE | (888) 350-1150 | | | | |
| **MEDAUDIT - P C E** | | **800 CAMBRIDGE STREET** | **SUITE 240** | **MIDLAND** | **MI** | | **48642** |
| FARM BUREAU - MEDAUDIT | (989) 631-3707 | MEDAUDIT | (989) 631-3707 | MEDAUDIT - P C E | (989) 631-3707 | | |
| R F MATTEI - MEDAUDIT | (989) 631-3707 | | | | | | |
| **METLIFE MITCHELL** | | **700 QUAKER LANE** | | **WARWICK** | **RI** | | **02886** |
| METLIFE MITCHELL | ( ) - | | | | | | |
| **MITCHELL - A I G** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | | **92122** |

| | Term Date (if any) | | | | | Term Date (if any) |
|---|---|---|---|---|---|---|

| A I G - MITCHELL | (877) 886-0916 | AIG MITCHELL | (877) 886-0916 | | | |
|---|---|---|---|---|---|---|
| **MITCHELL - ESURANCE** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| ESURANCE | (858) 408-8622 | ESURANCE - MITCHELL | (858) 408-8622 | ESURANCE MI NON PAR IHP USAMCO | (858) 408-8622 | |
| ESURANCE MI NON-PAR - HFN | (858) 408-8622 | ESURANCE MI NON-PAR - IHP | (858) 408-8622 | | | |
| **MITCHELL-AAA** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| AAA - MITCHELL | (800) 497-4036 | AAA MI NON-PAR - IHP | (800) 497-4036 | AAA MI NON-PAR - IHP-HFN | (800) 497-4036 | |
| AAA MI NON-PAR - IHP-USAMCO | (800) 497-4036 | AAA MITCHELL | (800) 497-4036 | | | |
| **MITCHELL-ALLSTATE** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| ALLSTATE MITCHELL | (248) 994-9400 | | | | | |
| **MITCHELL-AMERIPRISE FINANCIAL** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| AMERIPRISE FINANCIAL MITCHELL | (920) 330-5090 | AMERIPRISE FINANCIAL-MITCHELL | (920) 330-5090 | AMERIPRISE FLORIDA | (920) 330-5090 | |
| AMERIPRISE HFN FLORIDA | (920) 330-5090 | AMERIPRISE HFN KENTUCKY | (920) 330-5090 | AMERIPRISE HFN NEW YORK | (920) 330-5090 | |
| AMERIPRISE HFN OREGON | (920) 330-5090 | AMERIPRISE HFN PENNSYLVANIA | (920) 330-5090 | AMERIPRISE HFN UTAH | (920) 330-5090 | |
| AMERIPRISE HFN WASHINGTON | (920) 330-5090 | AMERIPRISE KENTUCKY | (920) 330-5090 | AMERIPRISE MI NON PAR IHP USAM | (920) 330-5090 | |
| AMERIPRISE MI NON-PAR - HFN | (920) 330-5090 | AMERIPRISE MI NON-PAR - IHP | (920) 330-5090 | AMERIPRISE NEW YORK | (920) 330-5090 | |
| AMERIPRISE OREGON | (920) 330-5090 | AMERIPRISE PENNSYLVANIA | (920) 330-5090 | AMERIPRISE USAMCO FL | (920) 330-5090 | |
| AMERIPRISE USAMCO KY | (920) 330-5090 | AMERIPRISE USAMCO NY | (920) 330-5090 | AMERIPRISE USAMCO OR | (920) 330-5090 | |
| AMERIPRISE USAMCO PA | (920) 330-5090 | AMERIPRISE USAMCO UT | (920) 330-5090 | AMERIPRISE USAMCO WA | (920) 330-5090 | |
| AMERIPRISE UTAH | (920) 330-5090 | AMERIPRISE WASHINGTON | (920) 330-5090 | AMERPRISE FINANCIAL - MITCHELL | (920) 330-5090 | |
| CITIZENS ALLMERICA | (920) 330-5090 | 12/31/1999 | | | | |
| **MITCHELL-FARMERS INS 21ST CENTURY** | | **4680 WILSHIRE BLVD** | | **LOS ANGELES** | **CA** | **90010-3807** |
| ESURANCE | (818) 370-4741 | FARMER'S MI NON-PAR - HFN | (818) 370-4741 | FARMERS INS 21TH CENTURY-MITC | (818) 370-4741 | |
| FARMERS MI NON PAR IHP USAMCO | (818) 370-4741 | FARMER'S MI NON-PAR - IHP | (818) 370-4741 | | | |
| **MITCHELL-GMAC** | | **500 W. 5TH STREET** | | **WINSTON SALEM** | **NC** | **92122** |
| GMAC  MI NON-PAR - IHP-USAMCO | (314) 813-2905 | GMAC INSURANCE - MITCHELL | (314) 813-2905 | GMAC MI NON-PAR - HFN | (314) 813-2905 | |
| GMAC MI NON-PAR - IHP | (314) 813-2905 | NGIC MITCHELL | (314) 813-2905 | | | |
| **MITCHELL-GRANGE** | | **9889 WILLOW CREEK ROAD** | | **SAN DIEGO** | **CA** | **92131** |
| GRANGE  MI NON-PAR - IHP | (800) 835-0219 | GRANGE MI NON PAR IHP USAMCO | (800) 835-0219 | GRANGE MI NON-PAR - IHP HFN | (800) 835-0219 | |
| GRANGE MUTUAL CASUALTY COMPANY | (800) 835-0219 | GRANGE-MITCHELL | (800) 835-0219 | | | |
| **MITCHELL-MERCURY INSURANCE** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| MERCURY INSURANCE - MITCHELL | (847) 816-4345 | MERCURY INSURANCE - MITCHELL | (847) 816-4331 | MERCURY INSURANCE MITCHELL | (847) 816-4345 | |
| **MITCHELL-PROGRESSIVE** | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** |
| PROGRESSIVE MI NON-PAR - IHP | (800) 330-9217 | PROGRESSIVE MI NON-PAR IHP HFN | (800) 330-9217 | PROGRESSIVE MITCHELL | (800) 330-9217 | |
| PROGRESSIVE NON PAR IHP USAMCO | (800) 330-9217 | | | | | |

## MITCHELL-STATE FARM | 6220 GREENWICH DRIVE | SAN DIEGO | CA | 92122

| | | | | | |
|---|---|---|---|---|---|
| STATE FARM MI NON-PAR-IHP | (888) 888-7309 | STATE FARM MI NON-PAR-IHP-HFN | (888) 888-7309 | STATE FARM LA - IHP | (888) 888-7309 |
| STATE FARM LA - IHP-HFN | (888) 888-7309 | STATE FARM MITCHELL | (888) 888-7309 | STATE FARM PA - IHP | (888) 888-7309 |
| STATE FARM PA - IHP-HFN | (888) 888-7309 | STATE FARM S DAKOTA-IHP-HFN | (888) 888-7309 | STATE FARM SOUTH DAKOTA - IHP | (888) 888-7309 |
| STATE FARM-IHP-AK | (888) 888-7309 | STATE FARM-IHP-AL | (888) 888-7309 | STATE FARM-IHP-AR | (888) 888-7309 |
| STATE FARM-IHP-AZ | (888) 888-7309 | STATE FARM-IHP-CO | (888) 888-7309 | STATE FARM-IHP-CT | (888) 888-7309 |
| STATE FARM-IHP-DE | (888) 888-7309 | STATE FARM-IHP-GA | (888) 888-7309 | STATE FARM-IHP-HFN-AK | (888) 888-7309 |
| STATE FARM-IHP-HFN-AL | (888) 888-7309 | STATE FARM-IHP-HFN-AR | (888) 888-7309 | STATE FARM-IHP-HFN-AZ | (888) 888-7309 |
| STATE FARM-IHP-HFN-CO | (888) 888-7309 | STATE FARM-IHP-HFN-CT | (888) 888-7309 | STATE FARM-IHP-HFN-DE | (888) 888-7309 |
| STATE FARM-IHP-HFN-GA | (888) 888-7309 | STATE FARM-IHP-HFN-IA | (888) 888-7309 | STATE FARM-IHP-HFN-ID | (888) 888-7309 |
| STATE FARM-IHP-HFN-IL | (888) 888-7309 | STATE FARM-IHP-HFN-IN | (888) 888-7309 | STATE FARM-IHP-HFN-KY | (888) 888-7309 |
| STATE FARM-IHP-HFN-ME | (888) 888-7309 | STATE FARM-IHP-HFN-MO | (888) 888-7309 | STATE FARM-IHP-HFN-MS | (888) 888-7309 |
| STATE FARM-IHP-HFN-MT | (888) 888-7309 | STATE FARM-IHP-HFN-NE | (888) 888-7309 | STATE FARM-IHP-HFN-NH | (888) 888-7309 |
| STATE FARM-IHP-HFN-NM | (888) 888-7309 | STATE FARM-IHP-HFN-NV | (888) 888-7309 | STATE FARM-IHP-HFN-NY | (888) 888-7309 |
| STATE FARM-IHP-HFN-OH | (888) 888-7309 | STATE FARM-IHP-HFN-OK | (888) 888-7309 | STATE FARM-IHP-HFN-RI | (888) 888-7309 |
| STATE FARM-IHP-HFN-TN | (888) 888-7309 | STATE FARM-IHP-HFN-UT | (888) 888-7309 | STATE FARM-IHP-HFN-WA | (888) 888-7309 |
| STATE FARM-IHP-HFN-WI | (888) 888-7309 | STATE FARM-IHP-HFN-WV | (888) 888-7309 | STATE FARM-IHP-HFN-WY | (888) 888-7309 |
| STATE FARM-IHP-HI | (888) 888-7309 | STATE FARM-IHP-IA | (888) 888-7309 | STATE FARM-IHP-ID | (888) 888-7309 |
| STATE FARM-IHP-IL | (888) 888-7309 | STATE FARM-IHP-IN | (888) 888-7309 | STATE FARM-IHP-KY | (888) 888-7309 |
| STATE FARM-IHP-ME | (888) 888-7309 | STATE FARM-IHP-MO | (888) 888-7309 | STATE FARM-IHP-MS | (888) 888-7309 |
| STATE FARM-IHP-MT | (888) 888-7309 | STATE FARM-IHP-NE | (888) 888-7309 | STATE FARM-IHP-NH | (888) 888-7309 |
| STATE FARM-IHP-NM | (888) 888-7309 | STATE FARM-IHP-NV | (888) 888-7309 | STATE FARM-IHP-NY | (888) 888-7309 |
| STATE FARM-IHP-OH | (888) 888-7309 | STATE FARM-IHP-OK | (888) 888-7309 | STATE FARM-IHP-OR | (888) 888-7309 |
| STATE FARM-IHP-RI | (888) 888-7309 | STATE FARM-IHP-TN | (888) 888-7309 | STATE FARM-IHP-UT | (888) 888-7309 |
| STATE FARM-IHP-WA | (888) 888-7309 | STATE FARM-IHP-WI | (888) 888-7309 | STATE FARM-IHP-WV | (888) 888-7309 |
| STATE FARM-IHP-WY | (888) 888-7309 | | | | |

## MITCHELL-UNITRIN DIRECT | 6220 GREENWICH DRIVE | SAN DIEGO | CA | 92122

| | | | | | |
|---|---|---|---|---|---|
| UNITRIN DIRECT - MITCHELL | (858) 578-6550 | UNITRIN DIRECT/MITCHELL | (858) 578-6550 | UNITRIN MI NON PAR IHP | (858) 578-6550 |
| UNITRIN MI NON PAR IHP HFN | (858) 578-6550 | UNITRIN MI NON PAR IHP USAMCO | (858) 578-6550 | | |

## MSAS-ALPHA REVIEW - MI | 184 SHUMAN BLVD | #300 | NAPERVILLE | IL | 60563

| | | | | | |
|---|---|---|---|---|---|
| AMERICAN COUNTRY INS | (630) 305-8199 | GERMANTOWN MUTUAL | (630) 305-8199 | GRANGE INSURANCE | (630) 305-8199 |
| INTEGRITY MUTUAL INS CO | (630) 305-8199 | LAKE STATES INSURANCE | (630) 305-8199 | MICHIGAN INSURANCE | (630) 305-8199 |
| MICHIGAN P & C GUARANTEE ALPHA | (630) 305-8199 | | | | |

## MSAS-FAIR ISAAC CORPORATION | 5935 CORNERSTONE CT | | WEST SAN DIEGO | CA | 92121

| | | | |
|---|---|---|---|
| FAIR ISAAC CORPORATION | (972) 829-4400 | STATE AUTO INSURANCE COMPANIES | (972) 829-4400 |

| MSAS-GEICO | | ONE GEICO CENTER | | MACON | GA | 31296 |
|---|---|---|---|---|---|---|
| GEICO | (800) 841-9160 | GEICO - FI | (800) 841-9160 | | | |

| MSAS-LIBERTY MUTUAL | | 7110 N FRESNO ST #200 | | FRESNO | CA | 93720-2933 |
|---|---|---|---|---|---|---|
| LIBERTY MUTUAL INSURANCE | (800) 245-1700 | | | | | |

| NATIONWIDE-MITCHELL MEDICAL | | 6220 GREENWICH DRIVE | | SAN DIEGO | CA | 92122 |
|---|---|---|---|---|---|---|
| NATIONWIDE | (800) 835-0219 | 12/05/2011 NATIONWIDE-MITCHELL MEDICAL | (800) 835-0219 | | | |

| PROCURA MANAGEMENT INC | | 2435 BOULEVARD OF THE GEN | ERALS | NORRISTON | PA | 19403 |
|---|---|---|---|---|---|---|
| PROCURA MANAGEMENT INC | ( ) - | PROCURA MANAGEMENT INC-MI | ( ) - | | | |

| REVIEW WORKS | | 21500 HAGGERTY ROAD | STE 250 | NORTHVILLE | MI | 48167 |
|---|---|---|---|---|---|---|
| A I G | (248) 848-5014 | ACE USA SPECIALITY | (248) 848-5014 | ACUITY | (248) 848-5014 | |
| AFFIRMATIVE INSURANCE SERVICES | (248) 848-5014 | ALLSTATE INSURANCE | (248) 848-5014 | ALLSTATE INSURANCE OF CANADA | (248) 848-5014 | |
| ALTERNATIVE SERVICE CORP | (248) 848-5014 | AMERICAN FELLOWSHIP | (248) 848-5014 | AMERICAN MANAGEMENT CORP | (248) 848-5014 | |
| AMICA MUTUAL INSURANCE OHIO | (248) 848-5014 | ASSOCIATED CLAIMS FOR MI NF | (248) 848-5014 | AUTO OWNERS INSURANCE | (248) 848-5014 | |
| AUTO OWNERS OHIO | (248) 848-5014 | BRISTOL WEST INS GROUP | (248) 848-5014 | BROADSPIRE | (248) 848-5014 | |
| CAROLINA CASUALTY INSURANCE | (248) 848-5014 | CHURCH MUTUAL INSURANCE CO | (248) 848-5014 | CITIZENS INSURANCE | (248) 848-5014 | |
| CITY ATTORNEY OFFICE-DEARBORN | (248) 848-5014 | CITY OF DETROIT LAW | (248) 848-5014 | CLEAR WATER INSURANCE CO | (248) 848-5014 | |
| CRAWFORD & COMPANY | (248) 848-5014 | CRUM & FORSTER | (248) 848-5014 | CUSTOM CLAIM SERVICE | (248) 848-5014 | |
| DEEP SOUTH INS | (248) 848-5014 | ELCO ADMINISTRATIVE SERVICES | (248) 848-5014 | FARMERS INSURANCE GROUP | (248) 848-5014 | |
| FCS INDUSTRIES | (248) 848-5014 | FOREMOST INSURANCE | (248) 848-5014 | FOUNDERS INSURANCE RW | (248) 848-5014 | |
| FREEDMAN  LESSING  KUTINSKY | (248) 848-5014 | FRONTIER INSURANCE | (248) 848-5014 | G M A C CO | (248) 848-5014 | |
| GAB ROBBINS | (248) 848-5014 | GALLAGHER BASSETT | (248) 848-5014 | GLEASE & ASSOC | (248) 848-5014 | |
| GRANGE INS - LIVONIA | (248) 848-5014 | GRANGE INSURANCE OHIO | (248) 848-5014 | GREAT LAKES CASUALTY - MI | (248) 848-5014 | |
| GREAT LAKES CASUALTY - OH | (248) 848-5014 | GREAT WEST CASUALTY | (248) 848-5014 | HASTINGS MUTUAL INS | (248) 848-5014 | |
| HORACE MANN INS | (248) 848-5014 | KENT COUNTY | (248) 848-5014 | LIBERTY BELL AGENCY | (248) 848-5014 | |
| LIBERTY MUTUAL INSURANCE | (248) 848-5014 | MCMARTIN WASEK & ASSOC AUTO | (248) 848-5014 | MEADOWBROOK INSURANCE GRP | (248) 848-5014 | |
| MICHIGAN EDUC EMP MUT INS CO | (248) 848-5014 | MICHIGAN GUARANTEE ASSOC | (248) 848-5014 | MIDWEST CLAIMS SERVICE | (248) 848-5014 | |
| NATIONAL INDEMNITY | (248) 848-5014 | NATIONWIDE | (248) 848-5014 | 01/01/2011 NORTH AMERICAN RISK SERVICES | (248) 848-5014 | |
| NORTH POINTE INSURANCE CO | (248) 848-5014 | NORTHLAND INSURANCE | (248) 848-5014 | PHILADELPHIA INSURANCE COMPANIES | (248) 848-5014 | |
| PIONEER - OHIO | (248) 848-5014 | PIONEER STATE MUTUAL INS | (248) 848-5014 | PROGRESSIVE INSURANCE - LIVONA | (248) 848-5014 | |
| REVIEW WKS-CITY OF DETROIT LAW | (248) 848-5014 | REVIEW WORKS | (248) 848-5014 | RLI TRANSPORTATION | (248) 848-5014 | |
| SAFECO AMERICAN STATES IN CO | (248) 848-5014 | 06/01/2013 SCHWARTZ LAW FIRM | (248) 848-5014 | SCOTTS INSURANCE CO | (248) 848-5014 | |
| SECURA | (248) 848-5014 | SEDGWICK CMS | (248) 848-5014 | SELECTIVE INSURANCE AUTO | (248) 848-5014 | |
| SELECTIVE INSURANCE AUTO-OHIO | (248) 848-5014 | SENTRY INSURANCE MI | (248) 848-5014 | SMART-AUTO | (248) 848-5014 | |
| SPECIALTY CLAIMS INC | (248) 848-5014 | ST PAUL FIRE & MARINE INS | (248) 848-5014 | THE GUARANTEE COMPANY OF N.A. | (248) 848-5014 | |
| TITAN INSURANCE | (248) 848-5014 | TRAVELERS INSURANCE | (248) 848-5014 | U S EXPRESS | (248) 848-5014 | |

| | Term Date (if any) | | | Term Date (if any) | | | | Term Date (if any) |
|---|---|---|---|---|---|---|---|---|
| UNITRIN DIRECT INSURANCE-AUTO | (248) 848-5014 | | VRS | (248) 848-5014 | | WAYNE COUNTY | (248) 848-5014 | |
| WESTFIELD COMPANIES | (248) 848-5014 | | WESTFIELD INSURANCE | (248) 848-5014 | | WOLVERINE MUTUAL INSURANCE COM | (248) 848-5014 | |
| ZURICH DIRECT UNDERWRITERS | (248) 848-5014 | | | | | | | |
| **RISING MEDICAL INC** | | | **325 N. LASALLE ST** | **STE.600** | **CHICAGO** | **IL** | **60654** | |
| RISING CHICAGO - AUTO | (414) 615-6077 | | RISING MEDICAL-WESTFIELD INS | (312) 559-8445 | | | | |
| **RISING MEDICAL SOLUTIONS - MEQUON** | | | **125 N. HALSTED ST** | **4TH FLOOR** | **CHICAGO** | **IL** | **60661** | |
| RISING MEQUON | (262) 240-0244 | 11/01/2004 | RISING MEQUON - AUTO | (262) 240-0244 | | | | |
| **SENTRY INSURANCE MITCHELL** | | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** | |
| SENTRY INSURANCE MITCHELL | (800) 835-0219 | | SENTRY MI NON PAR IHP USAMCO | (800) 835-0219 | | SENTRY MI NON-PAR IHP | (800) 835-0219 | |
| SENTRY MI NONPAR IHP HFN | (800) 835-0219 | | | | | | | |
| **STAR TECH MICHIGAN PROPERTY & GUARANTY ASSOC** | | | **P.O. BOX 531266** | | **LIVONIA** | **MI** | **48153-1266** | |
| MI PROP & CAS GUAR ASSOC - OH | (248) 482-0810 | | MI PROP & CASUALTY GUAR ASSOC | (248) 482-0810 | | STAR TECH MI PROPERTY & GUARAN | (248) 482-0810 | |
| **THE COVENANT** | | | **P.O. BOX 2942** | | **CHANDLER** | **AZ** | **85244** | |
| COVENANT AUTO - HFN | (866) 557-8660 | | COVENANT AUTO - IHP | (866) 557-8660 | | THE COVENANT | (866) 557-8660 | |
| **THI-CMS** | | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** | |
| THI CMS | (800) 835-0219 | | THI-CMS | (800) 835-0219 | | THI-CMS MITCHELL | (800) 835-0219 | |
| THI-CMS MITHCELL | (800) 835-0219 | 03/10/2010 | | | | | | |
| **THI-MITCHELL MEDICAL** | | | **6220 GREENWICH DRIVE** | | **SAN DIEGO** | **CA** | **92122** | |
| 307601 | (800) 835-0219 | 01/01/2008 | NATIONWIDE-MITCHELL MEDICAL | (800) 835-0219 | | THI MITCHELL | (800) 835-0219 | |
| THI- MITCHELL | (800) 835-0219 | 12/05/2011 | THI-MITCHELL MEDICAL | (800) 835-0219 | | | | |
| **UNITRIN DIRECT INSURANCE** | | | **502 WEST GERMANTOWN PIKE** | **SUITE 900** | **PLYMOUTH MEETING** | **PA** | **19462** | |
| UNITRIN DIRECT INSURANCE | (610) 276-3904 | | | | | | | |
| **WESTFIELD - CORVEL** | | | **38705 7 MILE RD** | **STE 230** | **LIVONIA** | **MI** | **48152** | |
| CORVEL - WESTFIELD | (330) 887-0855 | | WESTFIELD - CORVEL | (330) 887-0855 | | | | |
| **ZURICH COLUMBUS** | | | **1400 AMERICAN LANE** | **T#2-FLOOR 6** | **SCHAUMBURG** | **IL** | **60196-1056** | |
| FARMERS PERSONAL F.I | (614) 734-3521 | | ZURICH COLUMBUS | (847) 696-4624 | | | | |
| **ZURICH SCHAUMBURG** | | | **1400 AMERICAN LANE** | **TI - 13TH FLOOR** | **SCHAUMBURG** | **IL** | **60196** | |
| ZURICH AUTO F.I. | (847) 969-4624 | | ZURICH SCHAUMBURG | (847) 969-4624 | | | | |

Case 2:17-cv-13615-SFC-DRG   ECF No. 14-2, PageID.1011   Filed 06/20/18   Page 57 of 69

Term Date
(if any)

Term Date
(if any)

Term Date
(if any)

Cofinity® is a brand name of Aetna Inc. The services offered under the Cofinity brand are offered by Cofinity, Inc. and/or other Aetna subsidiaries or Aetna contracted companies.

This material is for information only. Information is believed to be accurate as of the production date; however, it is subject to change.

CONFIDENTIAL LIST: The employer groups and payer listings contain proprietary information and are for the exclusive use of Cofinity, its members, providers and clients in obtaining and providing health care services through the Cofinity network. The sharing, use or reproduction in any format of this information without prior written consent of Cofinity is strictly prohibited and may result in legal action by Cofinity.

Any prior employer group and payer listings distributed by Cofinity should be appropriately destroyed upon receipt of this list.

A payer and group listing does not guarantee that every member associated with the payer or group will have access to Cofinity network providers in all geographic areas. The member ID card has information to verify benefits and eligibility.

(c) 2014 Cofinity
5011 (03/14)

# EXHIBIT E

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

MICHIGAN HEAD & SPINE INSTITUTE, P.C.            Case No. 15-        -NF
                                                 Hon.

                Plaintiff,

v

LIBERTY MUTUAL INSURANCE COMPANY,   and
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                Defendants.

---

MILLER & TISCHLER, P.C.
BY:  MILEA M. VISLOSKY (P69306)
Attorneys for Plaintiff
28470 W. 13 Mile Road, Suite 300
Farmington Hills, MI  48334
(248) 945-1040 / (248) 536-5042 fax
email:  mvislosky@msapc.net

---

A prior lawsuit involving similar issues and the same parties was filed in Oakland County Circuit Court, Case Number: 12-129862-NF, in front of the Honorable Phyllis C. McMillen.  That matter is no longer pending.

*/s/ Milea M. Vislosky*
Milea M. Vislosky (P69306)
Attorneys for Plaintiff

## COMPLAINT AND JURY DEMAND

Plaintiff, MICHIGAN HEAD & SPINE INSTITUTE (hereinafter MHSI), by its attorneys, Miller & Tischler, P.C., for its Complaint, allege as follows:

## INTRODUCTION AND BACKGROUND

1.      Plaintiff, MHSI, consists of 13 neurosurgeons, 7 physiatrists, a neurologist, a neuropsychologist, 2 certified physician assistants, 2 nurse practitioners, and 3 chiropractors, who provide comprehensive medical, therapeutic, diagnostic, and rehabilitative services to

individuals with neck, spine and brain conditions, throughout metro-Detroit and Southeastern Michigan.

2.     MHSI's doctors are leaders in the neurosurgical field, they are highly regarded and hold the top positions in the major hospital systems.

3.     MHSI provided expert care and treatment to various patients that sustained injuries in motor vehicle accidents.  Said patients were insured by Defendant LIBERTY MUTUAL INSURANCE COMPANY and upon information and belief, by LIBERTY MUTUAL FIRE INSURANCE COMPANY (collectively referred to as LIBERTY MUTUAL).

4.     Under Michigan's No-Fault Act, personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation" for "[a]ccidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle."  MCL 500.3107(1)(a) and MCL 500.3105.

5.     The Act further provides that the charge may not exceed the customary charge for the provided service:

> "A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." MCL 500.3157.

6.     In accordance with the Michigan No-Fault Act, MCL 500.3101, *et seq.*, MHSI submitted its usual and customary charges and corresponding medical records for the reasonably necessary medical treatment and services rendered to LIBERTY MUTUAL's insureds, as detailed in **EXHIBIT 1.**

7. During the time period at issue in this litigation from August 4, 2014 through present, MHSI submitted bills related to the specific patients and LIBERTY MUTUAL's insureds ("The Patients"), detailed in **EXHIBIT 1.**

8. Relying upon a secret and flawed database used to audit and slash MHSI's charges, LIBERTY MUTUAL made payments that were a fraction of the total charges.

9. By this Complaint, MHSI is seeking declaratory relief that its charges, as billed, are reasonable and customary, that LIBERTY MUTUAL is responsible for the remaining balance for services MHSI provided LIBERTY MUTUAL's insureds, that the database upon which LIBERTY MUTUAL relies is unreliable and uses flawed data to improperly reduce reimbursement to MHSI in violation of the Michigan No-Fault Act, and LIBERTY MUTUAL's conduct is unreasonable and MHSI is entitled to No-Fault interest and attorney fees.

## THE PARTIES

10. MHSI is a corporation duly organized under the laws of the State of Michigan.

11. MHSI has its principal place of business in Southfield, Oakland County, Michigan.

12. At all times relevant to this Complaint, MHSI was authorized and did conduct business in the State of Michigan.

13. LIBERTY MUTUAL is a corporation organized under the laws of the State of Michigan and at all times has availed itself and conducted business within Oakland County, Michigan.

## JURISDICTION AND VENUE

14. The amount in controversy, exclusive of interest and costs, exceeds $25,000.00.

3

15. Venue is proper in accordance with MCL 600.1621, because the Defendant conducts business in Oakland, Michigan.

## MICHIGAN'S NO-FAULT ACT

16. Paragraphs 1 through 15 are incorporated as if fully restated herein.

17. The Patients (identified in **EXHIBIT 1**) all sustained accidental bodily injury arising out of motor vehicle accidents within the meaning of the Michigan No-Fault Act, MCL 500.3101, *et seq.*

18. The Patients and MHSI, their medical care provider, are entitled to be paid all reasonable charges for all reasonably necessary products, services and accommodations related to their care, recovery and rehabilitation, pursuant to the Michigan No-Fault Act, MCL 500.3107(1)(a).

19. MHSI provided medical services to the Patients and submitted reasonable proof of the fact and the amount of each loss to LIBERTY MUTUAL pursuant to MCL 500.3142.

20. LIBERTY MUTUAL is the No-Fault insurers that is responsible to pay No-Fault benefits to or for the benefit of the Patients, specifically identified in **EXHIBIT 1.**

21. LIBERTY MUTUAL received timely and reasonable proof of the fact and amount of each of MHSI's charges incurred in the medical care and treatment provided to the Patients.

22. MHSI requested payment of its reasonable and customary charges for the medical care and treatment provided to the Patients.

23. LIBERTY MUTUAL has unreasonably withheld and/or delayed full payment to MHSI, relying upon a database that upon information and belief, it has obtained through contracting with a cost-containment company, Mitchell Medical, which purchases data and

4

formats to use the data from Fair Health, Inc., a national collector of medical and dental claims data.

24.     After a determination that a medical procedure or service meets the predicates for payment under the Michigan No-Fault Act, LIBERTY MUTUAL submits the medical bill to Mitchell Medical that utilizes the Fair Health, Inc. database information to determine whether the specific charge or charges are "reasonable and customary" in accordance with the Michigan No-Fault Act.  Reductions occur by computer automation in the Mitchell Medical system, contracted by LIBERTY MUTUAL.

25.     Fair Health, Inc. was created as a purported independent, non-profit organization to develop a nationwide database for consumer reimbursement to replace Ingenix.

26.     Upon information and belief, LIBERTY MUTUAL licenses this database information through Mitchell Medical.

27.     Upon information and belief, there is no review procedure in place at LIBERTY MUTUAL to verify the accuracy of the data in the Fair Health database to confirm that it, and the analysis applied using the data, comports with the Michigan No-Fault Act and case law interpreting same.

28.     While LIBERTY MUTUAL claims that its reductions are based upon what other providers in the geographic area charge for the same or similar services, LIBERTY MUTUAL refuses to produce information regarding the other providers MHSI is being compared against to determine reasonableness of its charges.

29.     Upon information and belief, the Fair Health, Inc. database utilized by LIBERTY MUTUAL to audit medical bills from August 4, 2014 to the present, includes charge data and

information from Medicare, Medicaid, Workers' Compensation and/or other commercial health insurance payers.

30.     By utilizing this database to review claims of MHSI, LIBERTY MUTUAL is in violation of the Michigan No-Fault Act and long-established case law.

31.     LIBERTY MUTUAL's actions in withholding and/or delaying full payment to MHSI is a breach of its statutory and/or contractual obligations to timely provide No-Fault benefits.

32.     LIBERTY MUTUAL's actions in withholding and/or delaying payment subjects it to No-Fault penalty interest, pursuant to MCL 500.3142.

33.     LIBERTY MUTUAL's actions in withholding and/or delaying payment are unreasonable within the meaning of the Michigan No-Fault Act, and subjects it to liability for No-Fault penalty attorney fees, pursuant to MCL 500.3148.

34.     An actual controversy exists between MHSI and LIBERTY MUTUAL with respect to MHSI's right to reimbursement from LIBERTY MUTUAL for its reasonable and customary charges for the reasonably necessary medical treatment, products, services and accommodations rendered to LIBERTY MUTUAL's insureds pursuant to the Michigan No-Fault Act.

35.     MHSI seeks declaratory relief clarifying its rights and LIBERTY MUTUAL's obligations under the Michigan No-Fault Act.

36.     This controversy is between MHSI and LIBERTY MUTUAL, and thus all necessary parties have been named in this action.

WHEREFORE, MHSI respectfully prays for judgment in its favor as follows:

a.     Declare MHSI's full charges, as billed, are reasonable and customary and properly payable in accordance with the Michigan No-Fault Act;

6

b.      Declare LIBERTY MUTUAL responsible for payment of the remaining balance to MHSI and enter judgment in that amount against LIBERTY MUTUAL, in addition to costs, RJA interest and No-Fault penalty interest pursuant to MCL 500.3142;

c.      Declare the database(s) upon with LIBERTY MUTUAL relies in support of the major reductions to MHSI's charges is unreliable, uses flawed and/or improper data to improperly reduce reimbursement to MHSI in violation of the Michigan No-Fault Act;

d.      Declare LIBERTY MUTUAL received reasonable proof of the fact and the amount of loss as to each of MHSI's charges incurred in the medical care and treatment provided to the Patients and that those amounts not paid in full after 30 days are "overdue" pursuant to MCL 500.3142;

e.      Declare LIBERTY MUTUAL's conduct is unreasonable and MHSI is entitled to an award of attorney fees pursuant to MCL 500.3148; and

f.      Grant such additional relief as this Court deems just and proper under Michigan law and the principles of equity.

Respectfully submitted,

MILLER & TISCHLER, P.C.

*/s/ Milea M. Vislosky*
MILEA M. VISLOSKY (P69306)
Attorneys for Plaintiff
28470 W. 13 Mile Road, Suite 300
Farmington Hills, MI  48334
(248) 945-1040 // (248) 536-5042 fax
mvislosky@msapc.net

Dated: August 4, 2015

7

## JURY TRIAL DEMAND

Plaintiff MHSI hereby demands a trial by jury on all claims.

Respectfully submitted,

MILLER & TISCHLER, P.C.

/s/ Milea M. Vislosky
MILEA M. VISLOSKY (P69306)
Attorneys for Plaintiff
28470 W. 13 Mile Road, Suite 300
Farmington Hills, MI  48334
(248) 945-1040 // (248) 536-5042 fax
Dated: August 4, 2015                 mvislosky@msapc.net

8

# EXHIBIT F

## RELEASE OF SPECIFIC CLAIMS FOR PERSONAL PROTECTION INSURANCE BENEFITS

Michigan Head & Spine Institute, P.C. v Liberty Mutual Insurance Company

Claim Number: LA474-028308089-0001

Case No.: 15-148373-NF

Claim Numbers:

| | |
|---|---|
| 028308089-0001 (Al-Wajeh) | 027049180-0001 (McArthur) |
| 027380301-0002 (Bolden) | 031171034-0001 (Page) |
| 030250718-0002 (Chandler) | 029935692-0001 (Patel) |
| 030250718-0001 (Daniels) | 028611851-0001 (Perkins) |
| 029717544-0005 (Dingman) | 030724788-0001 (Raiber) |
| 026597402-0001 (Ellis) | 029938561-0001 (Sharrak) |
| 028368349-0004 (Ford) | 028230314-0003 (Sneed) |
| 027248612-0005 (Grant) | 030586862-0001 (Thill) |
| 023736276-0001 (Gray) | 022308057-0002 (Timpe) |
| 029634038-0001 (Hajjar) | LA47401585974-0002 (Walker) |
| 029925217-0002 (Jackson, Bernard) | 028889199-0001 (Wolney) |
| 30585324 (Jackson, Margaret) | 029216624-0001 (Young) |
| 023641546-0001 (Johnson) | 029064721-0001 (Yopp-Barber) |
| 030373684-0001 (Lewis) | 027380301-0003 (McWright) |
| 030088746-0002 (Mallory, Joseph) | |
| 030088746-0001 (Mallory, Saundra) | |

In consideration of SIXTY-SEVEN THOUSAND AND FIVE HUNDRED DOLLARS ($67,500.00), sufficiency of which is acknowledged, the undersigned, Michigan Head & Spine Institute, P.C. (MHSI), hereby releases Liberty Mutual Insurance Company (Liberty Mutual), and all other persons and organizations associated with it for all of the specific claims concerning personal medical bills payable for losses and damages incurred by the listed patients for the specific dates of service/treatment identified in Exhibit A, through the date of case evaluation - May 12, 2016 only, for products and/or services provided to the following individuals as a result of a their respective motor vehicle accidents, as set forth below:

| | | | |
|---|---|---|---|
| Ali Al-Wajeh | (10/30/2013) | Tanya McArthur | (05/28/2013) |
| Sonja Bolden | (06/10/2013) | Likita McWright | (06/10/2013) |
| Albert Chandler | (07/25/2014) | Willie Page | (12/21/2014) |
| Tracy Daniels | (07/25/2014) | Sangita Patel | (06/07/2014) |
| Julian Dingman | (05/09/2014) | Lacey Perkins | (12/14/2013) |
| Wanda Ellis | (04/13/2013) | Henry Raiber | (09/19/2014) |
| Charles Ford | (11/13/2013) | Leila Sharrak | (06/06/2014) |
| Willie J. Grant | (06/18/2013) | Dia Sneed | (10/26/2013) |
| Eric Gray | (08/15/2012) | David Thill | (09/13/2014) |
| Mike Hajjar | (04/30/2014) | Tiffany Timpe | (03/26/2012) |
| Bernard Jackson | (06/08/2014) | Theresa Walker | (08/10/2013) |
| Margaret Jackson | (09/13/2014) | Brandi Wolney | (01/22/2014) |

| Donald Johnson | (08/03/2012) | Chantae Young | (03/04/2014) |
|---|---|---|---|
| Anthonie Lewis | (08/11/2014) | Ola Yopp-Barber | (02/12/2014) |
| Joseph Mallory | (06/30/2014) | | |
| Saundra Mallory | (06/30/2014) | | |

MHSI understands and agrees that this is the settlement and final disposition of all disputed claims set forth in Exhibit A only, between MHSI and Liberty Mutual with respect to any and all benefits, rights, or privileges to which the undersigned MHSI may be entitled for all products and/or services provided to the above-named individuals through May 12, 2016, only, pursuant to the respective contracts to insure or insurance policies, provisions of the Michigan No-Fault Automobile Insurance Act, MCL 500.3101, *et seq.*, or any other statute of the State of Michigan through May 12, 2016 only for the specific claims identified in Exhibit A.

MHSI understands that settlement of the specific claims identified in Exhibit A does not constitute an admission of liability on behalf of Liberty Mutual.

MHSI declares that they have read this release and understand its terms.

Dated: 8/17/16

REPRESENTATIVE OF MICHIGAN HEAD & SPINE INSTITUTE, P.C.

Witness:

Subscribed and sworn to before me this

17 day of August, 2016

Notary Public   Julie Gabel

Oakland County, Michigan

My Commission Expires: 10/20/2020

JULIE GABEL
Notary Public, State of Michigan
County of Oakland
My Commission Expires Oct. 20, 2020
Acting in the County of _____

AUG 1 9 2016