UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Head and Spine Institute,

     Plaintiff,

v.                            Case No. 17-13815

Liberty Mutual Insurance Company,    Sean F. Cox
Liberty Mutual Fire Insurance Company,   United States District Court Judge

     Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIMS**

    Under Michigan's No-Fault Act, insurers need only reimburse medical providers for their "reasonable" charges. This suit arises from the use of a FAIRHealth database by Defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively "Liberty") to determine whether a bill submitted for reimbursement is "reasonable." Liberty uses the FAIRHealth database as follows. Medical providers submit bills for covered treatments they have provided to Liberty's policyholders. A third-party bill reviewer compares the bills against the database, which contains information about the price that other medical providers have charged for that service in that provider's geographic area. The database then caps the charges at a predetermined percentile mark. Liberty caps its charges at the 80th percentile mark, which means that the database determines that 80% of the charges for a given treatment in the relevant area are likely to fall at or below a certain amount. If the submitted bill is less than the 80th percentile benchmark, Liberty pays the bill. But if the submitted bill is greater than the 80th percentile mark,

Liberty only pays up to the 80th percentile mark.

Plaintiff Michigan Head & Spine Institute ("MHSI") alleges that Liberty uses this "flawed and secret" database to illegally reduce reimbursements that MHSI is entitled to under Michigan's No-Fault Act.  MHSI seeks $442,150.05—the balance of its unpaid fees—and a declaratory judgment stating that this system of determining reasonable charges is unlawful.  In response, Liberty argues that a previous Illinois class-action settlement bars MHSI from bringing this claim or challenging Liberty's use of the FAIRHealth database.  Liberty counterclaims for money damages for breach of the covenants contained in the Illinois settlement stipulation and a declaratory judgment stating that the previous settlement bars MHSI from filing lawsuits like this one.

Liberty has moved for summary judgment on all claims and counterclaims.  For the reasons below, the Court will grant Liberty's motion for summary judgment as to MHSI's claims and deny Liberty's motion for summary judgment as to Liberty's counterclaims.

## BACKGROUND

Liberty's use of the FAIRHealth database has been challenged at least twice before.  The first case, which was filed in Illinois state court, resulted in a class-action settlement that Liberty argues controls in this case. *See Lebanon Chiropractic Clinic, P.C. v. Liberty Mut. Ins. Co.,* 2016 IL App (5th) 150111-U*, 2016 WL 546909; *See also* (D.E. 12-11) ("*Lebanon")*. The second case resulted in a declaratory judgment stating that Lebanon bound Massachusetts medical providers and that it was entitled to full faith and credit in that state. *See Liberty Mut. Ins. Co. v. Peoples Best Care Chiropractic & Rehab., Inc.*, No. 1684CV01239BLS2, 2017 WL 2427562, (Mass. Super. Apr. 10, 2017), *judgment entered* (Mass. Super. 2017)**.** (*"Peoples Best").*

**I.** *Lebanon*

On June 25, 2014, Lebanon Chiropractic P.C., filed a putative class action against Liberty in the Illinois Circuit Court of St. Clair County. (D.E. 12-5, PageID 647).  Lebanon alleged that Liberty's system for determining the reasonableness of charges (1) violated Liberty's contractual obligations, as set out in the relevant insurance policies, (2) violated the Illinois Consumer Fraud and Deceptive Practices Act, and the substantially similar laws of other states (including Michigan), and (3) unjustly enriched Liberty.

On October 30, 2014, the parties in *Lebanon* entered into a Stipulation of Settlement, in which they agreed that, for claims arising from treatments rendered after October 31, 2014, Liberty would pay the claims pursuant to a negotiated formula:

> Liberty shall pay or reimburse a Medical Provider's usual and customary charge for a Covered Treatment (subject to applicable Policy Limits) at the lowest of (a) the charge billed by the Medical Provider (the "Billed Charge"), (b) **the eightieth percentile charge for that Covered Treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth database or another similar database** (the "Eightieth Percentile Charge"), (c) the amount authorized by a state mandated fee schedule or by another applicable law or regulation (the "Fee Schedule Charge"), or (d) the amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party (the "PPO Charge").

(D.E. 12-7, PageID 706-707) (emphasis added).

Lebanon stipulated that Liberty's payment of claims according to this formula "does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or reasonable charges for Covered Treatments." (D.E. 12-7, PageID 708).  Further, Lebanon agreed to "refrain from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency, or arbitrator, any challenge of any kind to Liberty's payment of Future Claims in accordance with [the formula]." (D.E. 12-7 PageID 708).

The Stipulation included subclasses of policyholders, claimants, and medical providers in 38 states, including Michigan. (D.E. 12-7 PageID. 703-705).  The "Provider Subclass" was defined as "every person who, during the Class Period, (i) provided Covered Treatment to a member of the Claimant Subclass, (ii) sought payment for that Covered Treatment under the MedPay and/or PIP Coverage provided by a Subject Policy, and (iii) received from Liberty as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment." (D.E. 12-7, PageID 704-705).  For class members residing in Michigan, the "Class Period" was "June 25, 2010 through October 31, 2014." (D.E. 12-7, PageID 700).

On October 31, 2014, the Illinois circuit court preliminarily approved the settlement and the plan for distributing notice.  On December 2, 2014, the court modified the class settlement schedule, and approved a Individual Notice Form and a Claim Form for the Provider Class. (D.E. 12-10, PageID 756, 760, 768-769).  The court also ordered Liberty and its claims administrator to establish and maintain a toll-free phone number and a website containing the court's orders, the class notices, the claim forms, and a "Detailed Notice." (D.E. 12-10, PageID 756).

The Individual Notice Form for Provider Class members included a section titled "What Are Your Other Options?" (D.E. 12-10, PageID 760).  This section outlined the option and effects of opting-out of the settlement:

> If you don't want a payment from this settlement, and you don't want to be legally bound by it, you must exclude yourself by January 22, 2015 or you won't be able to sue Liberty about the claims in this case ever again. If you ask to be excluded, you can't get a payment from this settlement. If you stay in the settlement, you may object to it by January 22, 2015. The detailed notice explains how to exclude yourself or object.

4

MHSI submitted bills to Liberty for services provided during Michigan's Class Period. (D.E. 14, Page ID 943) ("MHSI does not dispute that it submitted PIP bills to Liberty Mutual for services provided between June 25, 2010 and October 21, 2014").  For at least some of these bills, Liberty utilized a computerized bill-review process, determined that the charges submitted exceeded the reasonable amount for these services, and paid MHSI at the 80th percentile mark, as reflected in the FAIRHealth database rather than the higher amount. (D.E. 12-2, PageID 615) (Affidavit of Preston Fisher, Claims Manager for Liberty).  Liberty identified MHSI as a Provider class member and mailed notice of the settlement to MHSI's present address. (D.E. 12-9, PageID 752)

MHSI admits that it "first received notice of the [*Lebanon*] lawsuit when it received Legal Notice of Class Action Settlement involving Liberty Policies on or about December 20, 2014." (D.E. 14, PageID 943).

Over 560 entities and/or individuals opted-out of the Provider Subclass. (D.E. 12-15, PageID 860, 864).  MHSI did not opt-out. (D.E. 12-9, PageID 753).

On February 17, 2015, the Illinois court held a hearing to consider objections and final approval of the settlement.  The court heard objections from a Massachusetts attorney, who argued that (1) the proposed settlement unilaterally altered the terms of insurance polices because it allowed Liberty to "balance bill" for the existing unpaid balances, (2) the proposed settlement did not allow sufficient time for providers to submit previously rejected bills for a refund, (3) the class representative did not adequately represent Massachusetts class members, and (4) class counsel had a conflict of interest.

The Illinois court also heard objections from a Massachusetts chiropractor, who argued that

(1) the proposed settlement was not fair to absent class members because, under his state's law, computerized bill review data is inadmissible, and therefore, Massachusetts class members were likely to recover 100% of their charges if the claims were litigated in Massachusetts, (2) the proposed settlement violated his rights under Massachusetts's PIP statute, (3) the class representative did not adequately represent Massachusetts providers, (4) the proposed settlement placed an onerous burden on class members because it required too much paperwork in too short a time, and (5) the proposed settlement would unilaterally change insurance policies.

On February 23, 2015, the court entered a Final Judgment, overruling all objections and approving all provisions and terms of the Stipulation and proposed Class Settlement.  The court made the following specific findings about notice, adequacy of representation, and fairness:

- "The Court previously found and now reaffirms that dissemination of the Class Notice in accordance with the terms of the [Preliminary] Order constitutes the best notice practicable under the circumstances." (D.E. 12-11, PageID 788).

- "The evidence confirming disseminations and content of the Class Notice, including testimony of [a] nationally recognized notice expert...demonstrates that the parties complied with this Court's orders regarding class notice, that the notice given informed members of the Settlement Class of the pendency and terms of the proposed Settlement, of their opportunity to request exclusion from the Settlement Class, and of their right to object to the terms of the proposed Settlement, that the notice given was the best notice practical under the circumstances, and that it constituted valid, due and sufficient notice to the members of the Settlement Class." *Id.*

- "The Court further finds and concludes that the notice program described in the Order and completed by the parties complied fully with the requirements of due process, the Illinois Rules of Civil Procedure, and all other applicable laws." *Id.*

- "Plaintiff Lebanon Chiropractic Clinic, P.C... and Class Counsel will fairly and adequately protect the interests of the Settlement Class." (D.E. 12-11, PageID 789).

- "The Court finds that the Proposed Settlement is fair, reasonable, and adequate as to the Settlement Class Members...as a result of discovery, due diligence, and the absence of material objections sufficient to deny approval." *Id.*

The Court ordered Liberty to pay future claims in accordance with the formula set forth in the Stipulation of Settlement. (D.E. 12-11, PageID 792).  It also stated that "Liberty's payment of Future Claims in accordance with [the formula] does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or *reasonable* charges for Covered Treatments," and that "every Settlement Class Member is forever barred and permanently enjoined from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency, or arbitrator, any challenge of any kind to Liberty's payment of Future claims in accordance with [the negotiated formula]." (D.E. 12-11, PageID 793) (emphasis added).

On February 9, 2016, the Appellate Court of Illinois affirmed the trial court's Final Judgment.  The Appellate Court concluded that the trial court had complied with the relevant class-action notice and adequacy of representation requirements, which are defined in *Miner v. Gillette Co.*, 87 Ill.2d 7, 12-14 (1981) and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985),  when it exercised personal jurisdiction over nonresident class members.  Thus, "the [Illinois trial court]

court had jurisdiction over all class members who did not opt out of this multistate settlement." (D.E. 12-6, PageID 685).

The Appellate Court also addressed an argument that the *Lebanon* settlement could not include the State of Washington because it is a no-fault state and "Washington providers have rights and causes of action for relief [namely, injunctive relief for future violations of the Insurance Code,] under the Washington Consumer Protection Act not possessed or available to Lebanon as an Illinois provider." (D.E. 12-6, PageID 687).  In response, the Appellate Court stated,

> Although [appellant] argues that Washington law provides for payment of all "reasonable" charges incurred as a result of a covered accident, that does not necessarily mean that the provider will automatically recover more than what was provided for under the terms of the settlement. As noted by the Washington court in *Kerbs*, the determination of what constitutes a reasonable charge is for the finder of fact. **In addition, the settlement does not purport to adjudicate any claim under any state's law**. **Instead, it sets forth a negotiated settlement that will apply to all claimants who do not opt out**. Furthermore, it is well-settled law in Illinois that a class action may be maintained despite conflicting or differing state law.

(D.E. 12-6, PageID 688).

Finally, the Appellate Court found that the trial court did not abuse its discretion in certifying the settlement class and in finding that the settlement was fair, reasonable, and adequate. (D.E. 12-6, PageID 688-695).

No further appeal was filed. ((D.E. 13, PageID 928).  The five-year period in which Liberty must pay PIP claims according to the negotiated formula goes until early 2021. *Id.*

### B. *Peoples Best*

After the *Lebanon* appeal, and in response to over 30 lawsuits from one chiropractor, Liberty sought a declaration that *Lebanon* was entitled to full faith and credit in Massachusetts and bound the defendants, who had not opted-out of the settlement. *Liberty Mut. Ins. Co. v. Peoples Best Care*

*Chiropractic & Rehab., Inc.*, No. 1684CV01239BLS2, 2017 WL 2427562, at *1 (Mass. Super. Apr. 10, 2017), *judgment entered*, (Mass. Super. 2017). The Defendants asserted counterclaims seeking to bar Liberty from implementing *Lebanon*. *Id.* The Court granted summary judgment on all claims in favor of Liberty.

The Court found that the "undisputed facts show that the Illinois final order and judgment is entitled to full faith and credit in Massachusetts and that Defendants, as members of the plaintiff class in the Illinois proceeding, are bound by that order and by the covenant not to sue Liberty." *Id.* at *2. The Court noted that "the record shows, and the Illinois appellate court found, that all of [the necessary] due process requirements were satisfied in this case" and that "nothing in the settlement agreement...modifies Liberty's obligations under the standard policy to pay 'reasonable expenses.' To the contrary, the approved settlement merely reflects an agreement as to how Liberty may go about determining whether payment requests are reasonable or not." *Id.* at *3-*4.

The Court entered an order, declaring that "(1) the Final Order and Judgment entered in [*Lebanon*] is entitled to full faith and credit in the courts of the Commonwealth of Massachusetts; and (2) Defendants... are bound by the terms of the [*Lebanon*] final Order and Judgment." *Id.* at *5.

## II. The Current Case

On October 27, 2017, MHSI filed its Amended Complaint in this action in Oakland County Circuit Court. (D.E. 1, PageID 191). MHSI, as assignee of its patient's rights, sought to recover bill-reductions which were based on Liberty's use of the FAIRHealth database in 2016 and 2017. (D.E. 1, PageID 184, 186-187). In addition to money damages, MHSI sought a declaration that the FAIRHealth database is unreliable and violates Michigan's No-Fault Act. (D.E. 1, PageID 189). On November 27, 2017, Liberty removed the case to this Court. (D.E. 1, PageID 3). The next day,

Liberty filed its Answer and Counterclaims. (D.E. 2, PageID 387). In its Counter Claims, Liberty seeks: (1) monetary damages resulting from MHSI's violation of the covenant not to sue in the *Lebanon* Stipulation, and (2) a declaratory judgment that the *Lebanon* Final Judgment bars MHSI from filing suits like the one it filed here.

On May 30, 2018, Liberty filed this motion for summary judgment on all claims and counterclaims. (D.E. 12). MHSI filed a response on June 20, 2018. (D.E. 14). Liberty filed a reply on July 12, 2018. (D.E. 18).

## ANALYSIS

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quotations omitted). If the movant satisfies this burden, the non-moving party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## I.   MHSI's Claims

**A.       Claim for Money Damages Resulting from Liberty's Bill Reductions**

Michigan's No-Fault Act "provides a system of mandatary no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, ("*AAOP*") 257 Mich. App. 365, 373, 670 N.W.2d 569, 575 (2003), *aff'd*, 472 Mich. 91, 693 N.W.2d 358 (2005) (citing M.C.L. § 500.3101 *et seq*.).  "Under personal protection insurance, an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle." M.C.L. § 500.3105(1). The Act provides that personal protection insurance benefits are payable by a no-fault insurer for "[a]llowable expenses consisting of all *reasonable* charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation..." M.C.L. § 500.3107(1). (emphasis added).  The Act also details what the medical provider can charge:

> A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services, and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services, and accommodations in cases not involving insurance.

M.C.L.A. 500.3157.

In short, the No-Fault Act does not require insurers to pay the entire amount of a medical provider's bill. *AAOP*, 257 Mich.App at 577, 670 N.W.2d 569.  Rather, the Act only requires that insurers pay the amount of the bill that is *reasonable*. *Id*. at 575, 670 N.W.2d 569. ("both the amount chargeable to the patient and the amount that an insurer must pay to the health-care provider is

limited, by statute, to a reasonable amount.") (internal citations omitted).  The Act also puts a distinct limit on what the provider can charge (i.e. no more than is *customary* for non-insurance cases).

Under this statutory scheme, an insurer is not liable for any medical expense that is not both reasonable and necessary. *Id*. at 575, 670 N.W.2d 569 (citing *Hofmann v. Auto Club Ins. Ass'n*, 211 Mich.App. 55, 93-94, 535 N.W.2d 529 (1995)). "The reasonableness of the charge is an explicit and necessary element of a claimant's recovery against an insurer, and, accordingly, the burden of proof on this issue lies with the plaintiff." *Id*.; *See also Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 49, 457 N.W.2d 637, 645 (1990) ("In addition, the burden of proof on [the issues of reasonableness and necessity] lies with plaintiff.").  "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser*, 435 Mich. at 50, 457 N.W.2d 637.

The Michigan Legislature "has not defined what is 'reasonable' in this context and, consequently, insurers must determine in each instance whether a charge is reasonable in light of the service or product provided." *AOPP*, 257 Mich.App. at 379, 670 N.W.2d 569.  See also *AOPP v. Auto Club Ins. Assoc*., 176 F.3d 315, 320 (6th Cir. 1999) (noting that the No-Fault Act left open several questions, including "what criteria may be used to determine what is 'reasonable.'").  Medical providers, like MHSI, may challenge an insurer's decision to pay less than the full amount of a bill as a violation of the No-Fault Act, but they bear the burden of establishing the reasonableness of the charges in order to impose liability on the insurer. *AOPP*, 257 Mich.App. at 380, 670 N.W.2d 569.  "[T]he question of whether expenses are reasonable and reasonably

necessary is generally one of fact for the jury..." *Nasser*, 435 Mich. at 55, 457 N.W.2d 637.

Thus, in order for MHSI to receive the unpaid balance on its submitted bills, it must prove that its charges were reasonable. In other words, MHSI must show that Liberty failed to pay all reasonable charges.

At this point, the effect of *Lebanon* becomes relevant. In its motion for summary judgment, Liberty argues that it paid all reasonable charges because it used the negotiated formula from *Lebanon*. Specifically, Liberty argues that MHSI is a *Lebanon* class member and that, by failing to opt-out, MHSI agreed that (1) Liberty could use the *Lebanon* formula, (2) Liberty's use of the *Lebanon* formula did not violate any "duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse usual, customary, or reasonable charges," (3) MHSI would not file a lawsuit or make a claim to the contrary. (D.E. 12, PageID 596-599).

In support of these arguments, Liberty has provided a sworn affidavit from one its claims managers, Preston Fischer, stating that, of the 554 bill-reductions that MHSI challeges, 484 were reduced in accordance with the *Lebanon* formula. (D.E. 18-2, PageID 1085). Since filing its motion for summary judgment, Liberty has provided a supplemental affidavit from Mr. Fischer, stating that, after review of the remaining claims, he determined that 40 had not been paid pursuant to the *Lebanon* formula. (D.E. 21, PageID 1105). Liberty issued checks to MHSI totaling $46,048.09 to make these bill-reductions adhere to *Lebanon*. (D.E. 21, PageID 1105; D.E. 22).[1] Thus, Liberty has offered evidence that it paid MHSI's "reasonable fees," as defined by *Lebanon*.

The significance of Liberty adhering to *Lebanon* turns on two preliminary issues: (1) whether MHSI is a *Lebanon* class member, and (2) whether the *Lebanon* judgment is entitled to

---

[1]It appears that the unaccounted for claims were duplicates. (D.E. 18-2, PageID 1085).

preclusive effect under Illinois law and full faith and credit under federal law.  The answer to these questions is "yes."

### i.   MHSI Does Not Dispute That It Is a *Lebanon* Class Member, That It Received Notice, or That It Failed to Opt-Out

In *Lebanon*, the Policy Subclass was defined as "every person who, during the Class Period, (i) provided Covered Treatment to a member of the Claimant Subclass, (ii) sought payment for that Covered Treatment under the MedPay and/or PIP Coverage provided by a Subject Policy, and (iii) received from Liberty as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because Liberty or one of its agents determined through use of a computerized bill-review system that the charge billed for that treatment exceeded the usual, customary, or reasonable allowance for that treatment." (D.E. 12-7, PageID 704-705).  For class members residing in Michigan, the "Class Period" was "June 25, 2010 through October 31, 2014." (D.E. 12-7, PageID 700).

The parties cannot dispute that MHSI provided covered treatment for covered injures during the class period; MHSI submitted bills to Liberty, and Liberty always paid at least some portion of the bills.  Thus, (i) is satisfied.  MHSI does not dispute that, during the Class Period, it submitted bills to Liberty for services provided during the Class Period. (D.E. 14, PageID 943).  Thus, (ii) is satisfied.  Finally, Liberty has offered an affidavit from Mr. Fischer, who states that Liberty reduced at least some of these bills using the FAIRHealth computerized bill review process because the charges exceeded the "reasonable amount for those services." (D.E. 12-2 , PageID 615).  MHSI has not offered any evidence to contradict this affidavit.  As such, (iii) is satisfied, and MHSI is a member of the "Provider Subclass" as defined by *Lebanon*.

*ii.*    *Lebanon* **is Entitled to Preclusive Effect under Illinois law and Full Faith and Credit under Federal Law**

To be preclusive, and entitled to full faith and credit, a state court judgment must be entitled to preclusive effect under state law and full faith and credit under federal law. *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 419-422 (6th Cir. 2012).

**Preclusive Effect**

Federal courts must give preclusive effect to a state court judgment only if the rendering state court would do the same. *Gooch,* 672 F.3d at 419 (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982)); *See also Hare v. Starr Commonwealth Corp.*, 291 Mich.App. 206, 216 (In Michigan, a sister-state judgment must be "given the same effect that it has in the state of its rendition.")  Under Illinois law, "for the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 335, 665 N.E.2d 1199, 1205 (1996).  Functionally, "*[r]es judicata* bars a second adjudication of the parties' disputes where there has been or *could have been* a former adjudication on the merits, and there is an identity of cause of action and parties or their privies in the two lawsuits." *Deutsche Bank Nat. Trust Co. v. Bodzianowski*, 2016 IL App (3d) 150632, ¶ 17, 64 N.E.3d 697, 700 (2016) (emphasis in original).

MHSI argues that Lebanon is not preclusive because, under Michigan law, insurers are prohibited from relying on auditing databases that reference Medicaid, Medicare, Worker's Compensation, fee schedules, or commercial payors, and that *Lebanon* did not determine whether the FAIRHealth database relies on any of these impermissible sources.  MHSI cites four cases to support this argument.  However, none of these cases reach the conclusion that a medical provider

and an insurer cannot agree to use such a database to determine whether a charge is *reasonable*. *See McGill v. Auto Club Ins. Ass'n*, 207 Mich. App. 402, 408-409 (1994) ("we do not address the issue whether worker's compensation payment schedules are the proper standard for determining reasonable charges); *Hofmann*, 211 Mich. App. at 110 ("[a] *trial court* would not be justified in using amounts that are subject to third-party contractual or statutory limitations as a benchmark for determining the extent of a no-fault insurer's liability for payment of a health-care provider's *customary* charge."); *Munson Med. Center v. Auto Club Ins. Ass'n*, 211 Mich. App. 375, 391 (1996) ("[The insurer's] *unilateral* decision to reimburse Munson according to the worker's compensation scheme cannot be upheld..."); *Mercy Mt. Clemens v. Auto Club Ins. Ass'n*, 219 Mich. App. 46, 53 (1996) ("[D]ata regarding payments made by third-party payors, such as Medicaid, Medicare, or private health insurers...[can] not be used to determine the *customary* charge under [M.C.L.A. 500.3157].) (emphasis added to all).

Thus, MHSI's cited cases do not address the issue, prohibit only unilateral decisions to use third-party information, or prohibit using third-party information to determine the medical provider's statutory cap on charges (i.e. the customary charge for non-insurance cases) rather than the insurer's obligation to reimburse charges (i.e. only the reasonable charge).

Moreover, the Michigan Court of Appeals has held that an "80th percentile test," like the one provided for in the *Lebanon* order, does not violate the No-Fault Act. *See AOPP*, 257 Mich.App 365, 381, 670 N.W.2d 569 (2003).[2]

---

[2]In *AOPP*, the insurer "recommend[ed] payment of one hundred percent of the charges as long as the charge does not exceed the highest charge for the same procedure charged by eighty percent of other providers rendering the same service." *Id*. 381-382. The Court held that this method of determining reasonableness was not prohibited by the No-Fault Act because it was based on a survey of charges by other providers for the same services.

Finally, MHSI has failed to offer any evidence that the FAIRHealth database, in fact, relies on the allegedly impermissible information. Instead, it merely asks, "[H]ow can MHSI be assured that the database used by Liberty Mutual is composed solely of 'reasonable and customary' charges, and is purged of all Medicare, Medicaid, and Workers Compensation charges?" (D.E. 14, PageID 951). A question does not set forth specific facts to show that there is an issue of material fact. *Liberty Lobby*, 477 U.S. at 252 (1986)

*Lebanon* determined that Liberty's use of the negotiated formula and the FAIRHealth database did not breach its duty to pay reasonable fees.[3] Although MHSI did not actively participate in *Lebanon*, it was still a member of the Provider Subclass, and therefore a party to the action. MHSI is now attempting to litigate whether Liberty's use of the FAIRHealth database is reasonable—the very question that *Lebanon* already answered. Thus, this Court concludes that *Lebanon* is entitled to preclusive effect under Illinois law.[4]

**Full Faith and Credit**

The Constitution's Full Faith and Credit Clause is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984). The Act directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996). "A final judgment of one state, if rendered by a court with adjudicatory authority

---

[3] Even though Michigan's No-Fault Act's use of the word "reasonable," was not adjudicated in *Lebanon*, it could have been. MHSI had the opportunity to object and present its arguments.

[4] Moreover, this conclusion is supported by the fact that the Illinois Appellate Court fully affirmed the *Lebanon* judgment, over arguments similar to the ones raised by MHSI. For the purposes of a *res judicata* argument, the Appellate Court's order is precedential. *See* Illinois Supreme Court Rule 23(e)(1).

over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998). In other words, for *res judicata* purposes, "the judgment of the rendering state gains nationwide force." *Id.* "A judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit." *Matsushita*, 516 U.S. at 374.

"Unlike a defendant in an normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Phillips Petroleum*, 472 U.S. at 810. Thus, "a state may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not posses the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Id.* at 811. To bind an absent class-action plaintiff, the state court must provide "minimal procedural due protection," including (1) notice, (2) an opportunity to be heard and participate in the litigation, whether in person or through counsel, (3) an opportunity to opt-out of the class, and (4) adequate class representation. *Id.* at 812.

The record shows that all of these due process requirements were satisfied in *Lebanon*. MHSI does not dispute that it received notice of the proposed *Lebanon* settlement on or about December 30, 2014. (D.E. 14, PageID. 943) ("MHSI first received notice of the lawsuit when it received Legal Notice of Class Action settlement involving Liberty Policies on or about December 30, 2014."). Although MHSI might be right that it "knew nothing of the lawsuit until after it was settled," it still had the opportunity to object to the settlement's terms or opt-out before the settlement was approved by the court. At least some parties in MHSI's exact position objected, and over 560 entities opted-out. MHSI was fully informed about both of these options and declined to

exercise its rights.  Thus, the first three due-process requirements are indisputably satisfied.

MHSI alleges that it "was not adequately represented or represented at all in the *Lebanon* class action." (D.E. 14 PageID 949).  However, it fails to develop this argument or show any evidence that it is true.

Further, the *Lebanon* trial court heard objections from out-of-state medical providers, who argued that they were not adequately represented because of their home state's unique law.  The trial court expressly held that Lebanon and class counsel provided fair and adequate representation for the Settlement class, which included medical providers from Michigan.  This finding was affirmed by the Illinois Appellate Court and recognized by another trial court in Massachusetts.

Because MHSI has failed to offer any evidence that it received inadequate representation in *Lebanon*, it has failed to rebut the presumption that the *Lebanon* judgment is entitled to full faith and credit under federal law.  In accordance with the other courts that have considered this issue, this Court concludes that MHSI received the due process protections that are necessary for *Lebanon* to be entitled to full faith and credit under federal law.

*Lebanon* is entitled to full faith and credit and precludes MHSI's argument that Liberty's use of the FAIRHealth database is impermissible.  MHSI is a member of the *Lebanon* class, and is bound by the order's determination that Liberty's use of the negotiated formula does not breach any duty or obligation under any applicable law or contract requiring Liberty to pay or reimburse reasonable charges.  Liberty has produced evidence that it adhered to the *Lebanon* formula in all of the relevant bill-reductions.  MHSI has produced no evidence to show that Liberty did not adhere to the *Lebanon* formula, or that the bill-reductions otherwise caused Liberty to pay less than a reasonable amount.  Because this showing is a necessary element of MHSI's claim for money

damages, the Court will grant summary judgment in favor of Liberty on this claim.

**B.     MHSI's Claim for Declaratory Judgment**.

MHSI seeks a declaratory judgment that "MHSI's full charges, as billed, are reasonable and customary and properly payable in accordance with the Michigan No-Fault Act" and that "the database upon which Liberty Mutual relies in support of the major reductions to MHSI's charges is unreliable, uses flawed and/or improper data to improperly reduce reimbursement to MHSI, in violation of the Michigan No-Fault Act."  MHSI also seeks a declaration that the non-reimbursed charges are overdo under the No-Fault Act and that it is entitled to attorney fees.

As explained above, Liberty has provided evidence that it paid all "reasonable" charges, as defined by the *Lebanon*, and MHSI does not provide any evidence that its full charges were reasonable or that Liberty violated *Lebanon*.  Therefore, the Court will grant summary judgment in favor of Liberty on this claim.

**II.     Liberty's Counterclaims**

Liberty counterclaims for breach of contract, seeking damages for MHSI's violation of the covenant not to sue that is contained in the *Lebanon* Stipulation.  Liberty also seeks a declaratory judgment stating that *Lebanon* bars MHSI from filing lawsuits like the one it has filed in this action. Liberty has moved for summary judgment on these claims.

As the movant, Liberty has the burden to show that there is no genuine issue of material fact. *Miller*, 866 F.3d at 389.  Liberty does not explain how it is entitled to contractual damages for a breach of a pre-judgment stipulation—to which MHSI was not a party—or how it is entitled to a declaration that an Illinois anti-suit injunction bars MHSI from filing lawsuits in Michigan.  For these reasons, it has not met its burden, and the Court will deny its motion without prejudice.

## CONCLUSION

For the reasons above, the Court ORDERS that Liberty's motion for summary judgment as to MHSI's claims is GRANTED.

IT IS FURTHER ORDERED that Liberty's motion for summary judgment as to its counterclaims is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 1, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 1, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager